TERESA C. CHOW (SBN 237694)
ALEXANDRA R. RAHIMI (SBN 340253)
CIARA N. WESTBROOKS (SBN 348637)
**BAKER & HOSTETLER LLP**
1900 Avenue of the Stars, Suite 2700
Los Angeles, CA 90067-4301
Telephone: (310) 820-8800
Facsimile: (310) 820-8859
Emails: *tchow@bakerlaw.com*
*arahimi@bakerlaw.com*
*cwestbrooks@bakerlaw.com*

SEAN P. KILLEEN (SBN 320644)
**BAKER & HOSTETLER LLP**
600 Montgomery Street, Suite 3100
San Francisco, CA 94111
Telephone: (415) 659-2600
Facsimile: (415) 659-2601
Emails: *skilleen@bakerlaw.com*

*Attorneys for Defendant,*
California Physicians' Service d/b/a Blue Shield of California

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**(OAKLAND DIVISION)**

| | |
|---|---|
| *In re Blue Shield of California Privacy Litigation*<br><br>This Document Relates To:<br><br>All Actions | Case No.: 4:25-cv-03209-YGR<br><br>**DEFENDANT CALIFORNIA PHYSICIANS' SERVICE d/b/a BLUE SHIELD OF CALIFORNIA'S NOTICE OF MOTION AND MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>**Date: February 17, 2026**<br>**Time: 2:00 p.m.**<br>**Dept: Courtroom 1**<br><br>Consolidated Complaint Filed: September 29, 2025 |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on February 17, 2026, at 2:00 p.m., or as soon thereafter as this matter may be heard in Courtroom 1 on the 4th floor of the above-captioned court, located at 1301 Clay Street, Oakland, CA 94612, Defendant California Physicians' Service d/b/a Blue Shield of California ("Defendant") will and hereby moves to dismiss with prejudice the Consolidated Class Action Complaint ("Complaint") of Plaintiffs Rachel Markovitz, Austin Kahn, and Susan Reiman ("Plaintiffs") [Dkt. No. 102].

Defendant respectfully submits this Motion pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) and asks that the Court dismiss the Complaint on the grounds that Plaintiffs lack Article III standing and Plaintiffs fail to allege sufficient facts to plead violation of the Federal Wiretap Act, 18 U.S.C. § 2510, *et seq* ("Wiretap Act").

This Motion is based on this Notice, the Memorandum of Points and Authorities, all pleadings, papers and records on file in this Action, and such other oral argument and documentary evidence as may be presented at or before the time of adjudication of this Motion.

Dated: November 17, 2025,

Respectfully submitted,

**BAKER & HOSTETLER LLP**

By: */s/ Teresa C. Chow*
Teresa C. Chow
Alexandra R. Rahimi
Ciara N. Westbrooks
Sean P. Killeen

*Attorneys for Defendant*
California Physicians' Service d/b/a
Blue Shield of California

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION .......... 8

II. STATEMENT OF ISSUES TO BE DECIDED .......... 9

III. FACTUAL BACKGROUND .......... 9

IV. LAW AND ARGUMENT .......... 11

- A. Legal Standard .......... 11
- B. Plaintiffs Lack Concrete Injury to Establish Article III Standing. .......... 12
- C. Plaintiffs Fail to State a Claim for Wiretapping (Count I) .......... 17
  - i. Plaintiffs Fail to Allege Any Unlawful Interception. .......... 17
  - ii. Plaintiffs fail to Allege Contemporaneous Interception. .......... 20
  - iii. There Can Be No Civil Liability for Allegedly "Procur[ing]" or Aiding and Abetting an Alleged Interception Through Google Analytics or Meta Pixel. .......... 21
  - iv. Plaintiffs Fail to Allege any Plausible Interception of "Contents." .......... 22

IV. CONCLUSION .......... 25


BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 12, 24

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024) ........ 18, 19, 24

*Beckington v. Am. Airlines, Inc.*,
926 F.3d 595 (9th Cir. 2019) ........ 12

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 12

*Burtch v. Milberg Factors, Inc.*,
662 F.3d 212 (3d Cir. 2011) ........ 24

*Byars v. Sterling Jewelers, Inc.*,
No. 5:22-cv-01456, 2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) ........ 12

*In re Carrier IQ, Inc., Consumer Privacy Litig.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) ........ 22

*Chandler v. State Farm Mut. Auto. Ins. Co.*,
598 F.3d 1115 (9th Cir. 2010) ........ 11

*Depot, Inc. v. Caring for Montanans, Inc.*,
915 F.3d 643 (9th Cir. 2019) ........ 12

*Doe 1 v. Chestnut Health Sys., Inc.*,
No. 1:24-CV-01475-JEH-RLH, 2025 WL 1616635 (C.D. Ill. June 6, 2025) ........ 19

*Doe v. Genesis Health Sys.*,
No. 4:23-cv-04209-JEH, 2025 WL 1000192 (C.D. Ill. Mar. 18, 2025) ........ 20

*Doe v. Kaiser Found. Health Plan, Inc.*,
No. 23-cv-02865, 2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) ........ 18

*In re Easysaver Rewards Litig.*,
737 F. Supp. 2d 1159 (S.D. Cal. 2010) ........ 22

*In re Facebook Internet Tracking Litig.*,
263 F. Supp. 3d 836 (N.D. Cal. 2017), *aff'd in part, rev'd in part, and remanded by* 956 F.3d 589 (9th Cir. 2020) ........ 17, 23

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*In re Facebook Privacy Litig.*,
791 F. Supp. 2d 705 (N.D. Cal. 2011) .......... 17

*In re Google Cookie Placement Consumer Privacy Litig.*,
806 F.3d 125 (3rd Cir. 2015) .......... 17, 18

*In re Google Inc. Gmail Litig.*,
No. 13-MD-02430, 2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) .......... 21

*Goulart v. Cape Code Healthcare, Inc.*,
No. 25-10445-RGS, 2025 WL 1745732 (D. Mass. June 24, 2025), No. 25-1672 (1st Cir. July 23, 2025) .......... 20

*Hartley v. Urb. Outfitters, Inc.*,
740 F. Supp. 3d 410 (E.D. Pa. 2024) .......... 16

*Herzer v. Redstone*,
No. 17-CV-7545 PSG, 2018 WL 5094933 (C.D. Cal. July 10, 2018) .......... 22

*Hughes v. Vivint, Inc.*,
Case No. 2024 WL 5179916, 2024 WL 5179916 (C.D. Cal. July 12, 2024), 2024 WL 5179917 (C.D. Cal. Aug. 5, 2024) .......... 13, 16

*John Roe, et al. v. Amgen Inc.*,
No. 2:23-cv-07448-MCS-SSC, 2024 WL 2873482 (C.D. Cal. June 5, 2024) .......... 17

*Karen McManus v. Tufts Med. Ctr., Inc.*,
No. 25-cv-10008-ADB, 2025 WL 2778025 (D. Mass. Sept. 29, 2025) .......... 20

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) .......... 19

*Khamooshi v. Politico LLC*,
786 F. Supp. 3d 1174 (N.D. Cal. 2025) .......... 16

*Kirch v. Embarq Mgmt. Co.*,
702 F.3d 1245 (10th Cir. 2012) .......... 21, 22

*Kishnani v. Royal Caribbean Cruises Ltd.*,
No. 25-cv-01473, 2025 WL 1745726 (N.D. Cal. June 24, 2025) .......... 16, 23

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) .......... 20

*Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025) .......... 19

*Licea v. Am. Eagle Outfitters, Inc.*,
659 F. Supp. 3d 1072 (C.D. Cal. 2023) .......... 21


BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Lightoller v. Jetblue Airways Corp.*,
No. 23-cv-00361, 2023 WL 3963823 (S.D. Cal. June 12, 2023)........................................ 12, 13

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)........................................................................................................ 12

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021)........................................................................... 21

*Maya v. Centex Corp.*,
658 F.3d 1060 (9th Cir. 2011)......................................................................................... 16

*Mikulsky v. Bloomingdale's, LLC*,
No. 3:23-cv-00425-L-VET, 2024 WL 337180 (S.D. Cal. Jan. 25, 2024) ........................ 23, 25

*Mikulsky v. Noom, Inc.*,
682 F. Supp. 3d 855 (S.D. Cal. 2023)............................................................................. 16

*Mintz v. Mark Bartelstein & Assocs. Inc.*,
906 F. Supp. 2d 1017 (C.D. Cal. 2012)........................................................................... 21

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016)....................................................................................... 17, 23

*Nienaber v. Overlake Hosp. Med. Ctr.*,
733 F. Supp. 3d 1072 (W.D. Wash. 2024)............................................................. 18, 19, 23

*NovelPoster v. Javitch Canfield Grp.*,
140 F. Supp. 3d 938 (N.D. Cal. 2014)............................................................................. 21

*Peavy v. WFAA-TV, Inc.*,
221 F.3d 158 (5th Cir. 2000)........................................................................................... 21

*Pena v. GameStop, Inc.*,
670 F. Supp. 3d 1112 (S.D. Cal. 2023)...................................................................... 18, 19

*Planned Parenthood Fed'n of Am., Inc. v. Newman*,
51 F.4th 1125 (9th Cir. 2022)........................................................................................... 18

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025)...................................................................................... 13, 14

*Rodriguez v. Culligan International Company*,
No. 25-CV-00225-AJB-KSC, 2025 WL 3064113 (S.D. Cal. Nov. 3, 2025).......................... 15

*Rodriguez v. Google LLC*,
No. 20-cv-04688, 2021 WL 2026726 (N.D. Cal. May 21, 2021)........................................... 21

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017)............................................................................. 23

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018) ........ 23

*Spokeo, Inc. v. Robbins*,
578 U.S. 330 (2016) ........ 12, 14

*Sussman v. Am. Broad. Cos.*,
186 F.3d 1200 (9th Cir. 1999) ........ 18

*Sweat v. Houston Methodist Hosp.*,
No. H-24-775, 2025 WL 2697111 (S.D. Tex. Sept. 22, 2025) ........ 20

*Torres v. Prudential Financial, Inc.*,
No. 22-cv-7465, 2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) ........ 21

*In re Toys R Us, Inc., Privacy Litig.*,
No. 00-CV-2746, 2001 WL 34517252 (N.D. Cal. Oct. 9, 2001) ........ 22

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ........ 12

*Weston v. Lefiti*,
No. 23-cv-0896-L-DDL, 2023 WL 8458249 (S.D. Cal. Dec. 5, 2023) ........ 22

*Zarif v. Hwareh.com, Inc.*,
789 F. Supp. 3d 880 (S.D. Cal. 2025) ........ 19

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014) ........ 23, 25

**Statutes**

18 U.S.C. § 2510(8) ........ 22

18 U.S.C. § 2511 ........ 18

18 U.S.C. § 2511(2)(d) ........ 17

18 U.S.C. § 2520 ........ 21

18 U.S.C. § 2520(a) ........ 21

**Rules**

Federal Rule of Civil Procedure 12(b)(1) ........ 11

Federal Rule of Civil Procedure 12(b)(6) ........ 12

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs bring this putative class action against Defendant California Physicians' Service d/b/a Blue Shield of California ("Defendant" or "Blue Shield") on the flawed premise that Blue Shield's alleged use of Google Analytics and Meta Pixel—widely adopted and standard website technologies—constitutes an illegal wiretap. Plaintiffs allege that when they visited Blue Shield's website, blueshieldca.com (the "Website"), to register for accounts and find doctors, various data points, such as device information, IP addresses, and records of their views, clicks, and Website searches were sent to Google LLC ("Google") and Meta Platforms, Inc. ("Meta") without their consent. Compl. ¶¶ 126, 130, 141, 145, 156, 160. While Plaintiffs' application of a decades-old wiretapping statute to modern internet technology is plainly absurd, the Complaint suffers from an even more fundamental defect. Plaintiffs fail to allege any actual harm they suffered resulting from the purported misconduct—no identity theft, no financial loss, and no concrete damages of any kind. Given these deficiencies, the Complaint lacks merit and should be dismissed for these reasons:

*First*, Plaintiffs have not alleged a concrete injury sufficient to establish Article III standing. The Complaint does not plausibly demonstrate that any actionable disclosure of personal information occurred analogous to any harm traditionally recognized as the basis for a lawsuit, including intrusion upon seclusion or public disclosure of private facts. Because a concrete injury is required to establish Article III standing, the absence of any such injury is fatal to the Complaint.

*Second*, Plaintiffs' Wiretap Act claim fails because Blue Shield was a party to the alleged communications and thus exempt under the statute's one-party consent rule. And the Complaint fails to allege facts that would support application of the crime-tort exception, which demands a separate unlawful purpose beyond the alleged interception. The claim likewise cannot proceed on an "aiding and abetting" theory of liability, which is not recognized under the Federal Wiretap Act. Finally, Plaintiffs' Wiretap Act Claim fails because Plaintiffs cannot allege any actual "contents," as opposed to mere record information, were disclosed.

For these reasons, and as further explained below, this Court should grant Blue Shield's Motion and dismiss Plaintiffs' Complaint with prejudice.

## II. STATEMENT OF ISSUES TO BE DECIDED

1. Have Plaintiffs alleged a concrete injury sufficient to establish Article III standing?

2. Have Plaintiffs satisfied the Rule 12(b)(6) standard for their Federal Wiretap Act Claim by alleging unlawful interception of the contents of their communications and alleging that Blue Shield is liable for any alleged interception, despite being a party to the alleged communications?

## III. FACTUAL BACKGROUND

Plaintiffs allege that Blue Shield "provide[s] health, dental, vision, Medicare and Medicaid health care service plans to California consumers" and "is a major health plan organization with around 6 million members" and "over 6,500 employees." Compl. ¶ 13. Blue Shield is not a provider of healthcare, nor do Plaintiffs allege it is. Plaintiffs allege that software implemented on Blue Shield's Website permits certain information to be transmitted from a user's web browser to third parties like Google and Meta. *Id.* ¶¶ 3-4.

Plaintiffs advance the legal conclusions that Blue Shield "intercepted" or assisted Google and Meta with "intercepting" Plaintiffs' communications, resulting in disclosure of their "sensitive and confidential communications," "specific data," and "sensitive PII and PHI" to Google and Meta. *See, e.g., id.* ¶¶ 35, 48, 57, 78, 87, 111, 136. Yet the facts alleged in the Complaint do not support these conclusory allegations. Speculating about a hypothetical "user" who visits the Website, Plaintiffs allege that when "a user" visits the Website and "searches for a specific term on the website's Find a Doctor search bar, Google Analytics attaches a string of code to the resulting web address, causing the user's search terms to be sent not only to the website, but also to Google." *Id.* ¶ 32. Although the Complaint includes screenshots taken at an *unknown* date and time, by an *unidentified* visitor purportedly showing that Blue Shield shared search inputs with Google, Plaintiffs do not explain how these search inputs comprise substantive medical information. Compl. ¶¶ 53-54. That a user searched for a doctor does not mean that user scheduled an appointment with that doctor, received treatment, or has any medical conditions related to that doctor's specialty.

Likewise, for Meta, Plaintiffs allege "the Meta Pixel places cookies on users' web browsers and associates each user's cookies with unique identifiers." *Id.* ¶ 66. Through the Meta Pixel, Plaintiffs allege website owners "*like* Blue Shield" share "event data" with the Meta Pixel, which



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

consists of "action[s] taken by a user on the website," including page views, searches, clicks, and the completion of forms or registrations. *Id.* ¶¶ 67-70. Again, Plaintiffs provide screenshots taken on an unknown date by an unknown user, purporting to show three third-party cookies enabled on the Blue Shield Website. *See id.* ¶ 101. While Plaintiffs allege that the Meta cookies resulted in "confidential communications regarding their health insurance plan [to be] transmitted to Meta," this allegation can only refer to "event data," form entries, and searches because no "communications" between Plaintiffs and Blue Shield are described. *Id.* ¶ 105. For example, Plaintiffs do not make any factual allegations that would support the conclusion that any specific communication between a Plaintiff and any physician or medical staff was transmitted to Google or Meta. Instead, Plaintiffs freely use the word "communications" throughout the Complaint, speculating and/or giving the false impression that the contents of actual patient-doctor communications could theoretically be shared with Google or Meta. *See, e.g., id*. ¶¶ 3, 4, 7, 26, 32, 34, 48 55-58, 60, 67, 77-78, 86-87, 94, 102-104, 111, 121, 170, 191-209. But Plaintiffs do not allege any facts showing that the contents of any of their patient-doctor communications have ever been (or even could be) disclosed to Google or Meta. *See generally* Compl. This is because Blue Shield is a health plan provider, rather than a provider of health care. Thus, Plaintiffs do not receive treatment on the Blue Shield website.

Plaintiffs' explanation of the possible functioning of Google Analytics and Meta Pixel remains purely hypothetical. Plaintiffs provide a lengthy description of the alleged capabilities of Google Analytics, Compl. ¶¶ 30-61, and the Meta Pixel, Compl. ¶¶ 63-111. But Plaintiffs' limited allegations relating to *their* experience on the Blue Shield Website are woefully deficient. Plaintiffs allege they used the Website "to schedule and receive treatment and specialty referrals for medical symptoms and conditions," "file a claim, make payments, review billing statements," and use the "Find a Doctor" webpage to "search for specialists." *Id.* ¶ 127, 128, 142, 143, 157, 158. But they plead no facts showing any of *their* information, much less the specific contents of their medical claims, bills, or benefits, was transmitted to Google or Meta as a result of their alleged Website activity. Plaintiffs do not and cannot allege any facts related to the "contents" of any



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

"communications" they claim to have shared with Blue Shield. This becomes clear when one considers that the "Find a Doctor" webpage merely identifies doctors in Blue Shield's networks.

Plaintiffs further plead they "had no notice" of the alleged tracking. *Id.* ¶ 56. But this allegation is contravened by their cites to Blue Shield's privacy policy, which "referenced its use of 'tracking technologies' on its site" and "stat[ed] that its website automatically gathered identifying information, including 'internet protocol (IP) addresses, browser type[s] . . . [and] device identifier[s]' which it 'may combine . . . with other information we collect about you' to 'improve marketing, analytics, or site functionality.'" *Id.* ¶¶ 58, 59. Plaintiffs claim this did not inform them that "Blue Shield was sharing their sensitive medical information." *Id.* ¶ 59. But Plaintiffs never explain what "sensitive medical information" Blue Shield shared. Ostensibly, "sensitive medical information" refers to Plaintiffs' page views, clicks, and search terms.

As a result of Blue Shield's use of Google Analytics and the Meta Pixel, Plaintiffs allege they suffered numerous intangible privacy harms, including

> (i) invasion of privacy; (ii) statutory damages; (iii) the continued and ongoing risk to [their] PII and PHI, which remains in Blue Shield's possession and is subject to further disclosure so long as it fails to undertake appropriate and adequate measures to protect the personal information in its possession, and associated costs; (iv) the continued and ongoing risk of harassment, and targeted advertisements specific to Plaintiff[s'] medical conditions and other confidential information he communicated to Blue Shield via its website; (v) time spent reviewing and responding to the Notice of Data Breach sent by Blue Shield; and (vi) the emotional distress, shame, and embarrassment of having [their] personal health information revealed to Google and other third parties without [their] knowledge or consent.

Compl. ¶¶ 137, 152, 167. Plaintiffs assert one cause of action for violation of the Federal Wiretap Act on behalf of themselves and a putative class of "[a]ll United States residents who, during the Class Period, were Blue Shield enrollees and had their PII and/or PHI disclosed to Google and/or Meta via the Blue Shield website." *Id.* ¶ 171.

## IV. <u>LAW AND ARGUMENT</u>

### A. <u>Legal Standard</u>

Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes the dismissal of an action for lack of subject-matter jurisdiction. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). The plaintiff bears the burden of establishing standing under Article III of the Constitution, which requires an "injury in fact" that is "concrete and particularized" and "actual

or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (int. cit. omitted). The injury must be "fairly traceable to the challenged action of the defendant," and it must be likely "that the injury will be redressed by a favorable decision." *Id.* at 560-61.

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal if a complaint fails to state a claim upon which relief can be granted. To survive a motion to dismiss, the complaint "must contain sufficient 'well-pleaded, nonconclusory factual allegation[s],' accepted as true, to state 'a plausible claim for relief.'" *Beckington v. Am. Airlines, Inc.*, 926 F.3d 595, 604 (9th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679–80 (2009)). Factual allegations must be enough to raise a right to relief above the speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Dismissal is appropriate when the complaint lacks a "cognizable legal theory" or sufficient factual allegations to "support a cognizable legal theory." *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 652–53 (9th Cir. 2019).

**B. Plaintiffs Lack Concrete Injury to Establish Article III Standing.**

To establish Article III standing, Plaintiffs must show they "suffered an injury in fact that is concrete, particularized, and actual or imminent." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423, 426 (2021) ("Article III standing requires a concrete injury even in the context of a statutory violation.") (quoting *Spokeo, Inc. v. Robbins*, 578 U.S. 330, 341 (2016))). The Supreme Court "has rejected the proposition that a plaintiff 'automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *TransUnion*, 594 U.S. at 426. In other words, "***an injury in law is not an injury in fact***." *Id.* at 427 (emphasis added). A harm is "concrete" only if the injury bears a "close relationship" to a harm "traditionally" recognized as providing a basis for a lawsuit. *Id.* at 425. Naked assertions of harm that is "traditionally recognized as providing a basis for a lawsuit in American courts," are not enough. *Id.* at 417.

Accordingly, to establish Article III standing in privacy cases, Plaintiffs must not only "identify [the] specific personal information" that they allege was intercepted by a third party, but how the alleged interception "implicates a protectable privacy interest[.]" *Byars v. Sterling Jewelers, Inc.*, No. 5:22-cv-01456, 2023 WL 2996686, at *3 (C.D. Cal. Apr. 5, 2023); *Lightoller v.*





BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Jetblue Airways Corp.*, No. 23-cv-00361, 2023 WL 3963823, at *4 (S.D. Cal. June 12, 2023) ("Plaintiff has failed to adequately allege that she suffered any concrete harm that bears a close relationship to the right to control personal information, meaning Plaintiff has failed to establish an injury in fact."); *Hughes v. Vivint, Inc.*, Case No. 2024 WL 5179916, 2024 WL 5179916, at *4 (C.D. Cal. July 12, 2024), adopted, 2024 WL 5179917 (C.D. Cal. Aug. 5, 2024) (motion to dismiss granted for lack of injury-in-fact from defendant's use of "TikTok Software" on its website).

The Ninth Circuit's recent decision in *Popa*—a single-issue appeal considering the sole question of whether the plaintiff alleged a "concrete" injury for standing purposes—confirmed that *Spokeo* and *TransUnion* require "a plaintiff to demonstrate more than just a statutory violation when evaluating whether a plaintiff has alleged a concrete injury. *Popa v. Microsoft Corp*., 153 F.4th 784, 793 (9th Cir. 2025). In *Popa*, the plaintiff alleged defendant used third-party technology to capture user interactions, including some "30 different categories" of information such as "the date a user visited the website, the device the user accessed the website on, the type of browser [used], the [device's] operating system [], the country where the user accessed the website from, a user's mouse movements, a user's screen swipes, text inputted by the user on the website, and how far down a webpage a user scrolls," in violation of statutory and common law privacy laws. *Id*. at 786.

Summarizing the Supreme Court's teachings in *Spokeo* and *TransUnion*, the Ninth Circuit explained that for alleged data privacy violations to confer standing, courts must "assess whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts," i.e., "whether plaintiffs have identified a close historical or common-law analogue for their asserted injury." *Id*. at 789 (quotation marks and citations omitted). Although *Spokeo* "does not require an exact duplicate in American history and tradition," the decision "is not an open-ended invitation for federal courts to loosen Article III based on contemporary, evolving beliefs about what kinds of suits should be heard in federal courts." *Id.* (quotation marks and citations omitted).

In an attempt to establish that she had incurred a cognizable injury as a result of defendant's use of online tracking technologies, plaintiff in *Popa* identified two relevant common law tort analogues: intrusion upon seclusion and public disclosure of private facts. *Id*. at 791. The Ninth

Circuit found neither apt because both torts involved an element of conduct that would be highly offensive to a reasonable person. *Id.* The former requires "an intentional interference" with a plaintiff's "interest in solitude or seclusion, either as to his person or as to his private affairs or concerns, of a kind that would be highly offensive to a reasonable man," and the latter requires that a defendant "gives publicity" to a matter that concerns "the private life of another" and that the "information is highly offensive to a reasonable person." *Id.* (quotation marks and citations omitted). The Ninth Circuit found the plaintiff in *Popa* identified no such information that was collected by defendant's technology; instead, the court likened the recording of the plaintiff's website interactions to "a store clerk's observing shoppers in order to identify aisles that are particularly popular or to spot problems that disrupt potential sales." *Id*. The court also noted the differences between plaintiff's alleged injuries and those resulting from the Restatement's hypothetical examples of the traditional privacy torts, such as "taking intimate pictures" through an upstairs bedroom window with a telescopic lens (as an example of intrusion upon seclusion) and the unauthorized publication of a photograph of a woman nursing her child (as an example of public disclosure of private facts). Finally, relying on *Spokeo*, the court rejected plaintiff's argument that the statutory violations she alleged, by creating a private right of action, necessarily conferred standing. *Id*. at 792-94. Rather, it noted, "'Article III standing requires a concrete injury even in the context of a statutory violation.'" *Id*. at 792 (quoting *Spokeo*, 578 U.S. at 341).

Plaintiffs' alleged intangible privacy injuries derive from the alleged improper collection, use, and/or disclosure of non-sensitive information of Blue Shield Website users and enrollees: (i) IP addresses, (ii) URLs; (iii) Button Click Data and Event Data (completing registration, making a search, viewing content); (iv) form field values; (v) search inputs and selections; and (vi) browser and device type and settings. Compl. ¶ 32, 33, 39, 50, 52, 66, 69, 196. Plaintiffs do not (and cannot) allege that their sensitive medical information such as diagnoses, treatment information, medical records, or any communication between a Plaintiff and any physician or medical staff was captured or disclosed by any code on the Blue Shield Website. Likewise, just as in *Popa*, the only two common law invasion of privacy torts that could potentially provide analogues to Plaintiffs' alleged injuries are claims for intrusion upon seclusion and public disclosure of private facts. The alleged



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

collection and limited disclosure of the non-sensitive information in this case cannot give rise to an injury analogous to those redressed by these torts.

While Plaintiffs allege that any use of Google Analytics or the Meta Pixel were "highly offensive" due to the "sensitive nature" of the information, Plaintiffs have failed to identify any information so sensitive that its disclosure would be highly offensive. Compl. ¶ 209. *See Rodriguez v. Culligan International Company*, No. 25-CV-00225-AJB-KSC, 2025 WL 3064113 at *3 (S.D. Cal. Nov. 3, 2025) (applying *Popa* to determine plaintiff lacked standing despite allegations that defendant website installed 35 "tracking beacons" on plaintiff's internet browser).

Plaintiffs' ability to allege a concrete injury to their substantive privacy rights grows even weaker considering the context of *Plaintiffs'* visits to Blue Shield's Website, rather than Plaintiffs' allegations of what information *could* be collected by Google Analytics or the Meta Pixel. *See* Compl. ¶ 127 ("Plaintiff Kahn searched for specialists for his specific and sensitive healthcare needs on the 'Find a Doctor' webpage. He also shopped or searched for alternative plans and reviewed his Explanation of Benefits."); Compl. ¶ 143 ("Plaintiff Markovitz used the Blue Shield website to schedule and receive treatment and specialty referrals for medical symptoms and conditions. She was referred to and receive medical treatment, communications, and/or information in relation to her symptoms through the Blue Shield website."); Compl. ¶ 158 (same, for Plaintiff Reiman).

Plaintiffs claim "[u]pon entering their private information and intimate health data, [their] requests and the contents of [their] communications on Blue Shield's website were automatically sent to Google and Meta." Compl. ¶ 130, 145, 160. But Plaintiffs' descriptions of their activity on the Blue Shield website are devoid of factual context about what pages Plaintiffs accessed, when the access occurred, or what search terms or fields Plaintiffs completed. As a result, Plaintiffs fail to establish that any "private information" or "intimate health data" was transmitted to, much less collected by Google Analytics or the Meta Pixel. And the Complaint fails to explain how Plaintiffs' activity on the Blue Shield Website—even if it was even collected by Google or Meta—could be attributable to Plaintiffs.

Although the Complaint includes undated screenshots purportedly showing Website code taken at an *unknown* date and time, by an *unidentified* visitor, they otherwise fail to identify the

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

specific webpage from which the code was allegedly taken or adequately explain what the code signifies. *See* Compl. ¶¶ 53-54. More importantly, Plaintiffs do not allege that the code corresponds to or even resembles *their* interactions with the Website. Instead, Plaintiffs rely heavily upon broad, generic allegations about Google Analytics and the Meta Pixel, including how these technologies allegedly function and what data they might be able to collect. *See* Compl. ¶¶ 31-32; 63-74. Such speculation cannot establish concrete injury because it does not show what, if anything, was actually collected from Plaintiffs or that it caused them harm. *See Kishnani v. Royal Caribbean Cruises Ltd.*, No. 25-cv-01473, 2025 WL 1745726, at *4-5 (N.D. Cal. June 24, 2025) (allegation that a defendant "could gain" from a technology does not plead concrete injury).

General allegations about what Google Analytics and the Meta Pixel ***may be capable*** of collecting do not sufficiently establish what these technologies ***actually collected*** from Plaintiffs (if anything) during their visits. Courts routinely reject such vague and conclusory allegations, holding that far more detail than Plaintiffs provided in the Complaint is required to determine whether a protectable privacy interest has been alleged. *See, e.g., Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174, 1179 (N.D. Cal. 2025) ("Plaintiffs also allege that Defendant disclosed their 'browser and device data' and 'other identifying information' . . . but fail to provide any more detail. Those allegations are ***too vague to assert a protectable privacy interest***.") (emph. added); *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 864 (S.D. Cal. 2023) ("[C]onclusory allegation that she disclosed 'personal information' does not allow the Court to determine whether [she] has a protectable privacy interest in that information."); *Hartley v. Urb. Outfitters, Inc.*, 740 F. Supp. 3d 410, 422 (E.D. Pa. 2024) ("[A]llegations of what a technology is merely capable of collecting do not equate to sufficient allegations of what that technology actually collected."); *Vivint, Inc.*, 2024 WL 5179916, at *4 (finding no standing where plaintiff did not specify the actual information collected and only alleged what information software "could" capture).

Because Plaintiffs have not alleged concrete harm to their privacy, they have not satisfied the injury in fact requirement for Article III standing. The Court must dismiss Plaintiffs' claims for lack of subject matter jurisdiction. *See Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) ("lack of Article III standing requires dismissal for lack of subject matter jurisdiction").



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

### C. Plaintiffs Fail to State a Claim for Wiretapping (Count I)

A claim under the Wiretap Act "requires a showing that the defendant (1) intentionally (2) intercepted, endeavored to intercept[,] or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication, (5) using a device." *See In re Facebook Internet Tracking Litig.*, 263 F. Supp. 3d 836, 844 (N.D. Cal. 2017) (internal quotation marks omitted), *aff'd in part, rev'd in part, and remanded by* 956 F.3d 589 (9th Cir. 2020). Plaintiffs failed to allege at least the second, third, or fourth elements, and the Wiretap Act claim should be dismissed as a matter of law, without leave to amend.

#### *i. Plaintiffs Fail to Allege Any Unlawful Interception.*

Plaintiffs cannot establish that any communication has been unlawfully "intercepted" by Blue Shield. The Wiretap Act does not make it unlawful for someone to "intercept ... [an] electronic communication where such person is a party to the communication." 18 U.S.C. § 2511(2)(d)) (*see also In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705, 713 (N.D. Cal. 2011) (Because "the communication at issue is one from a user to Defendant, Defendant cannot be liable under the Wiretap Act for divulging it."). Stated differently, a party to a communication cannot unlawfully "intercept" a communication directed to it and cannot be held liable for "eavesdropping" upon itself. 18 U.S.C. § 2511(2)(d)); *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 274 (3d Cir. 2016) (dismissing Wiretap Act claim because defendant "was either a party to all communications with the plaintiff's computers or was permitted to communicate with the plaintiff's computers by Viacom, who was itself a party to all such communications."); *see also In re Google Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 142–43 (3rd Cir. 2015) (dismissing Wiretap Act claim because tracking cookies placed by advertising providers made the advertiser the intended recipient of the electronic transmission); *John Roe, et al. v. Amgen Inc.*, No. 2:23-cv-07448-MCS-SSC, 2024 WL 2873482, at *6 (C.D. Cal. June 5, 2024) (same).

In virtually identical circumstances, district courts in the Ninth Circuit have made clear that users of a health care provider's website cannot state a claim under the Wiretap Act against the healthcare provider, because the health care provider was the intended recipient of any alleged communications via the website and therefore could not have intercepted such communications.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1065 (C.D. Cal. 2024) ("the party exception to Plaintiffs' [Wiretap Act] . . . claim[] exempts Defendants from liability"); *Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1095 (W.D. Wash. 2024) ("Under the [Wiretap Act], it is not unlawful for a person to intercept electronic communications where such person is a party to the communication.") (internal citation and quotations omitted); *Pena v. GameStop, Inc.*, 670 F. Supp. 3d 1112, 1117–18 (S.D. Cal. 2023) (same ruling). Blue Shield is identically situated.

Plaintiffs attempt to invoke the "crime-tort exception," which applies only where the interception was made for the purpose of committing a criminal or tortious act. Compl. ¶¶ 204-205. "Under section 2511, the focus is not upon whether the interception itself violated another law; it is upon whether the purpose for the interception—its intended use—was criminal or tortious." *Sussman v. Am. Broad. Cos.*, 186 F.3d 1200, 1202 (9th Cir. 1999) (internal quotations omitted) (emphasis in original). Plaintiffs thus must adequately allege Blue Shield "had an illegal or tortious purpose" that is separate and distinct from the collection and disclosure of Plaintiffs' communications. *Id.* at 1203 (emphases added); *see also Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022) ("This criminal or tortious purpose must be separate and independent from the act of the recording.").

Here, Plaintiffs allege no such separate unlawful purpose. Instead, Plaintiffs broadly assert—without factual support—that the crime-tort exception applies because the same interception also allegedly violated various laws, including HIPAA and the California Invasion of Privacy Act. Compl. ¶ 205. But that is "contrary to *Sussman* which holds that the act of interception itself cannot be the crime or the tort." *Doe v. Kaiser Found. Health Plan, Inc.*, No. 23-cv-02865, 2024 WL 1589982, at *10 (N.D. Cal. Apr. 11, 2024) (violation of HIPAA did not satisfy crime-tort exception). Even where an interception "may well have been a tortious invasion of privacy under state law," it is not a separate illegal or tortious purpose that would trigger the crime-tort exception. *Sussman*, 186 F.3d at 1203; *see also In re Google Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 145 (3d Cir. 2015) (crime-tort exception not triggered where "the tortious conduct is the alleged wiretapping itself.").

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Indeed, Plaintiffs actually allege the opposite of a tortious or illegal purpose, claiming that Blue Shield intercepted their communications "for targeted advertising and marketing purposes." Compl. ¶¶ 136, 151, 166. The Northern District of California has recently held that where "purpose of the interception was not to 'perpetuate torts on millions of Internet users, but to make money,'" the crime-tort exception to the party-exception is not satisfied. *Lakes v. Ubisoft, Inc.,* 777 F. Supp. 3d 1047, 1058 (N.D. Cal. 2025) (Wiretap Act crime-tort exception did not apply); *see also Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023) (dismissing wiretapping claim and collecting cases holding that a defendant's desire to "make money" through use of pixels does not meet the crime-tort exception).

Likewise, courts throughout the Ninth Circuit have held that allegations that communications were transmitted to third parties "'for purposes of targeting advertising to [d]efendant's California website users'" were "insufficient to implicate the crime-tort exception" *Zarif v. Hwareh.com, Inc.*, 789 F. Supp. 3d 880, 896 (S.D. Cal. 2025) (dismissing Wiretap Act claim); *see also B.K.*, 721 F. Supp. 3d at 1065 (although the plaintiffs alleged the defendant "engaged in the allegedly illegal interception of their . . . information" for commercial advantage, plaintiffs failed to allege that purpose "constitute[d] independently illegal or actionable conduct" and the court concluded the "criminal or tortious act" exception to the party exception did not apply); *Nienaber*, 2025 WL 692097, at *13 (dismissing Wiretap Act claim with prejudice and finding the exception did not apply because plaintiff failed to plead "a tortious or criminal use of the acquired communications *separate* from their recording, interception, or transmission"); *Pena*, 670 F. Supp. 3d at 1119 ("Here, while Plaintiff alleges that Defendant engaged in the allegedly illegal interception of his and the proposed class members' communications 'in order to create transcripts that could be shared with third parties to analyze to extract key words for marketing an[d] other purposes' … Plaintiff does not allege that this purpose constitutes independently illegal or actionable conduct such that the party exception is inapplicable.").

Around the country, courts have likewise dismissed Wiretap Act claims where defendant's purpose in intercepting plaintiffs' communications was to facilitate advertising and marketing. *See, e.g., Doe 1 v. Chestnut Health Sys., Inc.*, No. 1:24-CV-01475-JEH-RLH, 2025 WL 1616635, at *12

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

(C.D. Ill. June 6, 2025) (dismissing Wiretap Act claim where plaintiff failed to allege that defendant's purpose in using third-party technology was to violate the law rather than facilitating advertising and marketing); *Karen McManus v. Tufts Med. Ctr., Inc.*, No. 25-cv-10008-ADB, 2025 WL 2778025, at *3 (D. Mass. Sept. 29, 2025) (dismissing plaintiff's Wiretap Act claim because allegations that the defendant "specifically used tracking technologies to intercept and disclose Plaintiff's and Class Members Private Information for financial gain,…sought to increase revenue from existing patients and gain new patients, … and thus chose to put its business interests over the privacy of its patients,… are [] insufficient to satisfy the crime-tort exception.") (quotations and citation omitted); *Goulart v. Cape Code Healthcare, Inc.*, No. 25-10445-RGS, 2025 WL 1745732, at *3 (D. Mass. June 24, 2025) appeal docketed, No. 25-1672 (1st Cir. July 23, 2025) (dismissing Wiretap Act claim and finding the crime-tort exception did not apply because plaintiffs' complaint "fails to plausibly allege that [the defendant's] 'primary motivation' or 'determinative factor' in disclosing plaintiffs' personal health information through the software-tracking technology to Facebook and Google was for the purpose of committing a criminal violation or tort, as opposed to commercial gain or convenience."); *Doe v. Genesis Health Sys.*, No. 4:23-cv-04209-JEH, 2025 WL 1000192, at *9 (C.D. Ill. Mar. 18, 2025) (dismissing Wiretap Act claim and reasoning "[b]y [p]laintiff's own account, the 'trackers' were 'used by the [d]efendant to benefit [the defendant] and its marketing and advertising purposes,'…not for the purpose of knowingly committing a violation of the HIPAA.") (internal citation omitted); *Sweat v. Houston Methodist Hosp.*, No. H-24-775, 2025 WL 2697111, at *7 (S.D. Tex. Sept. 22, 2025) (granting summary judgment to defendant on the plaintiff's Wiretap Act claim and reasoning "[t]he disclosure of what was not known to be personally identifiable health information, but instead believed to be aggregate data, for a commercial purpose, is not a crime or a tort.").

#### *ii. Plaintiffs fail to Allege Contemporaneous Interception.*

Plaintiffs also fail to allege contemporaneous interception of the alleged "content" in transit, as required by the Wiretap Act. *See Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002) (For a communication to be intercepted "in violation of the Wiretap Act, it must be acquired during transmission, not while it is in electronic storage"). Courts consistently dismiss claims where

data is accessed after reaching a server. *See Rodriguez v. Google LLC*, No. 20-cv-04688, 2021 WL 2026726, at *6 (N.D. Cal. May 21, 2021); *In re Google Inc. Gmail Litig.,* No. 13-MD-02430, 2014 WL 1102660, at *11 (N.D. Cal. Mar. 18, 2014). Given the speed of internet communications, the Wiretap Act's application to such transmissions is "undoubtedly limited" and rarely met. *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 951-52 (N.D. Cal. 2014); *see also Mintz v. Mark Bartelstein & Assocs. Inc.*, 906 F. Supp. 2d 1017, 1031 (C.D. Cal. 2012); *Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1077-78 (C.D. Cal. 2023); *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1137 (E.D. Cal. 2021); *Torres v. Prudential Financial, Inc.*, No. 22-cv-7465, 2025 WL 1135088, at *5-7 (N.D. Cal. Apr. 17, 2025) (finding a defendant cannot "read" (or attempt to read) session replay data "in transit"). Plaintiffs offer no facts to suggest a third-party intercepted communications before they reached Blue Shield.

***iii. There Can Be No Civil Liability for Allegedly "Procur[ing]" or Aiding and Abetting an Alleged Interception Through Google Analytics or Meta Pixel.***

Plaintiffs also claim that Blue Shield "procured Google and Meta to intercept or endeavor to intercept Plaintiffs' and Class members' electronic communications." Compl. ¶ 194. Indeed, all of Plaintiffs' underlying allegations identify Google or Meta – not Blue Shield – as the party that allegedly intercepted Plaintiffs' communications through its source code on Blue Shield's Website. *Id*. ¶¶ 4, 7, 26, 58, 121, 170. Plaintiffs' Wiretap Act claim is not saved by their alternative characterization of the claim as one for aiding and abetting.

The Wiretap Act's private right of action is found in 18 U.S.C. § 2520, which creates a scope of civil liability that is narrower than the criminal liability provision codified in Section 2511. Section 2520(a)'s plain, unambiguous language creates a private civil cause of action only against the person who engages in an unlawful interception, disclosure, or intentional use of electronic communication – not against any other person for procuring, enabling, aiding or abetting another's interception of such. *See, e.g., Kirch v. Embarq Mgmt. Co.*, 702 F.3d 1245, 1246–47 (10th Cir. 2012) (holding that there is no civil Wiretap Act claim for "procur[ing]" or "aiding and abetting" an interception); *see also Peavy v. WFAA-TV, Inc.*, 221 F.3d 158, 169 (5th Cir. 2000) (same).

When Congress enacted the Wiretap Act in 1986, it specifically excluded civil liability for procurement of an interception (*i.e.*, aiding and abetting), which previously existed under the 1968 predecessor to the Wiretap Act. *See Kirch*, 702 F.3d at 1246-47 (addressing the statutory distinctions between civil and criminal liability under the Wiretap Act). The Northern District of California is in accord. *In re Toys R Us, Inc., Privacy Litig.*, No. 00-CV-2746, 2001 WL 34517252, at *7 (N.D. Cal. Oct. 9, 2001) ("The Court finds that § 2520(a) does not provide a cause of action against aiders and abetters, and, accordingly, that plaintiffs may not proceed against Toys R Us on such theory."); *In re Carrier IQ, Inc., Consumer Privacy Litig.*, 78 F. Supp. 3d 1051, 1089 (N.D. Cal. 2015) (explaining "there is simply no secondary liability (such as aiding and abetting) under the [Wiretap Act.]"); *see also Weston v. Lefiti*, No. 23-cv-0896-L-DDL, 2023 WL 8458249, at *3 (S.D. Cal. Dec. 5, 2023) (noting there is no aider and abettor liability available under the Wiretap Act and concluding that defendants could not be liable under section 2520(a)); *Herzer v. Redstone*, No. 17-CV-7545 PSG (KSx), 2018 WL 5094933, at *7 (C.D. Cal. July 10, 2018) (agreeing "that secondary liability is not recognized under the [Wiretap Act.]" and finding plaintiff had failed to state a claim); *In re Easysaver Rewards Litig*., 737 F. Supp. 2d 1159, 1183–84 (S.D. Cal. 2010) (dismissing Wiretap Act claim with prejudice as to defendant who received information but did not intercept it because the Wiretap Act liability is limited to the person who engaged in the violation).

Because the Wiretap Act does not provide a private cause of action against an entity that is alleged to have procured or aided and abetted another party to intercept a communication, Plaintiffs' Wiretap Act claim should be dismissed as a matter of law.

***iv. Plaintiffs Fail to Allege any Plausible Interception of "Contents."***

Plaintiffs' Wiretap Act claim further fails because Plaintiffs have not pleaded facts showing that the "contents" of any communications were disclosed to Google or any other third party. Under the Wiretap Act, "contents" of a communication are defined as "any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8). "Content" information "refers to the intended message conveyed by the communication" and is therefore distinct from "record" information, which relates to "the characteristics of the message that is generated in the course of the communication," such as a name, address, or the identity of a

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

subscriber or customer. *See In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106–07 (9th Cir. 2014). Here, the alleged "contents" at issue are vague references to Plaintiffs' "PII and PHI" and "strictly confidential communications." *See, e.g.*, Compl. ¶¶ 3, 26, 30, 33. The Complaint contains no specific "content" allegedly collected from Plaintiffs during their visits.

In regard to the threshold question of whether browsing activity on a public website may even constitute "legally protected PII and PHI," *i.e.*, the "contents" of a communication, "the disclosure of browsing activity on a publicly available website that does not relate to 'to the past, present or future physical or mental health or condition of an individual' is not actionable." *Nienaber*, 733 F. Supp. 3d at 1082 (internal quotations omitted); *see also Smith v. Facebook, Inc.*, 745 F. App'x 8, 9 (9th Cir. 2018) ("*Smith II*") ("the connection between a person's browsing history [on a public hospital website] and his or her own state of health is too tenuous."); *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 954–55 (N.D. Cal. 2017) ("*Smith I*") (same).

In *Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922, 930–31 (N.D. Cal. 2015), the court held that a URL sent to Meta by a user's browser does not qualify as "contents" of a "communication" under the Wiretap Act because it is nothing more than "record information regarding the characteristics of the message that is generated in the course of the communication.'" *Id.* at 935 (quoting *In re Zynga*, 750 F.3d at 1106–07). By definition, a URL does not convey the "meaning" of the communication with the host server; it simply identifies the location of the requested webpage on the Internet. *Id.* at 935-6.

In *In re Zynga*, the Ninth Circuit explained that even though a URL could disclose that a person viewed the "page of a gay support group," such URLs "function[] like an 'address,'" not "contents" of a communication. 750 F.3d at 1107-8; *see also Mikulsky v. Bloomingdale's, LLC*, No. 3:23-cv-00425-L-VET, 2024 WL 337180, at *7 (S.D. Cal. Jan. 25, 2024) ("button clicks, mouse movements, scrolling, resizing, touches (for mobile browsers), key presses, page navigation" were "more akin to the 'record' information that the Ninth Circuit held not to be contents"); *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 275 (3d Cir. 2016) (URL that revealed which specific video a child watched was more like telephone number than substantive conversation); *Kishnani*, 2025 WL 1745726, at *4-5 (collection of metadata like IP address or

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

general location does not implicate a privacy interest; if only metadata is alleged, plaintiff lacks standing; and if content is collected, the statute does not apply).

Here, Plaintiffs' Complaint fails to allege facts showing that the substance of their alleged communications to anyone at Blue Shield have ever been transmitted to Google or Meta. Plaintiffs' threadbare conclusions that their "sensitive and confidential communications" and "sensitive PHI" are transmitted to Google and Meta, Compl. ¶¶ 56, 111, are bereft of facts and therefore insufficient as a matter of law. *See, e.g., Iqbal*, 556 U.S. at 678 (mere conclusions are insufficient); *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 225 (3d Cir. 2011) (rejecting allegations that the defendant "regularly and unlawfully shared highly confidential information" related to customers as conclusory in nature); *B.K.*, 721 F. Supp. 3d at 1064 (dismissing claim for failure "to allege what, if any, medical information or medical records were transmitted or disclosed" and that the plaintiffs' "vague allegations about [them] and their experiences with [the defendant]" and the complaint's "conjectures and hypothetical scenarios and patients" did not allege with "any specificity as to what medical information was allegedly disclosed or when it was disclosed.").

Plaintiffs do not allege they ever engaged in a doctor-patient communication using the Blue Shield Website and indeed, they cannot, because Blue Shield is not a health care provider and does not facilitate doctor-patient correspondence. Instead, Plaintiffs seek to blur the very bright line between online browsing information and "medical information" by resting their claims solely on allegations that they browsed Blue Shield's website and self-serving legal conclusions that their "sensitive and confidential communications," "specific data," and "sensitive PII and PHI" were transmitted to Google and Meta. *See, e.g.*, Compl. ¶¶ 35, 48, 57, 78, 87, 111, 136. Plaintiffs fail to plead *any* facts showing the substantive contents of their "communications."

The limited allegations relating to Plaintiffs' interactions with Blue Shield's website show only that Plaintiffs used Blue Shield's publicly available "Find a Doctor" tool, Compl. ¶¶ 127, 142, 157, that Plaintiff Kahn searched for alternative plans, reviewed explanations of benefits, and looked for billing information, *id.* ¶ 127, that Plaintiff Markovitz registered for an account and reviewed billing statements and claim summaries, *id.* ¶ 141, and that Plaintiff Reiman completed online forms and searched for member discounts, *id.* ¶ 157. But Plaintiffs do not provide any details

about the information they claim was recorded or intercepted, and they fail to allege facts establishing their PHI was disclosed. *See generally*, Compl. And, while Plaintiff Kahn alleges he used unspecified telehealth services, *id.* ¶ 126, and Plaintiff Reiman alleges she "used the NurseHelp 24/7 tool to ask a registered nurse a question", *id.* ¶ 157, Plaintiffs do not allege that these activities occurred on the Blue Shield Website or that analytics tools were operating in connection with the separate telehealth or the NurseHelp 24/7 service.

Plaintiffs have not alleged, and cannot allege, "contents" of their communications were intercepted by Google or Meta. Absent allegations specifying substantive contents of Plaintiffs' communications, the Complaint is left with hypothetical examples of information theoretically disclosed, i.e., page views and URLs. *See, e.g.*, Compl. ¶¶ 30-61; 63-111. But as *Zynga* makes clear, such information is "record information" that cannot support a Wiretap Act claim. 750 F.3d at 1107. Similarly, actions on a webpage (e.g., button clicks, page navigation, and keystrokes (inputting search terms for a search query)) are record information, not contents of a communication. *Mikulsky*, 2024 WL 337180, at *7. As such, Plaintiffs have not alleged sufficient facts to state their Wiretap Act claim.

## V. <u>CONCLUSION</u>

Because amendment would be futile, Blue Shield respectfully asks the Court to grant its motion to dismiss Plaintiffs' Complaint with prejudice.

Dated: November 17, 2025,

Respectfully submitted,

**BAKER & HOSTETLER LLP**

By: */s/ Teresa C. Chow*
Teresa C. Chow
Alexandra R. Rahimi
Ciara N. Westbrooks
Sean P. Killeen

*Attorneys for Defendant*
California Physicians' Service d/b/a
Blue Shield of California