Adam Polk (No. 273000)
Trevor Tan (No. 281045)
Fatima Ladha (No. 353675)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Tel: (415) 981-4800
Fax: (415) 981-4846
Email: apolk@girardsharp.com
Email: ttan@girardsharp.com
Email: fladha@girardsharp.com

Robert C. Schubert (No. 62684)
Amber L. Schubert (No. 278696)
Daniel L.M. Pulgram (No. 354569)
**SCHUBERT JONCKHEER
& KOLBE LLP**
2001 Union Street, Suite 200
San Francisco, CA 94123
Tel: (415) 788-4220
Fax: (415) 788-0161
Email: rschubert@sjk.law
Email: aschubert@sjk.law
Email: dpulgram@sjk.law

*Interim Co-Lead Class Counsel*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| *In re Blue Shield of California Data Privacy Litigation*<br><br>This Document Relates To:<br><br>All Actions | Case No. 4:25-cv-03209-YGR<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT CALIFORNIA PHYSICIANS' SERVICE d/b/a BLUE SHIELD OF CALIFORNIA'S MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>Date:     February 17, 2026<br>Time:    2:00 p.m.<br>Dept:    Courtroom 1<br><br>Complaint Filed: September 29, 2025 |

# **TABLE OF CONTENTS**

I.    INTRODUCTION ......................................................................................................... 1

II.   FACTUAL AND PROCEDURAL BACKGROUND............................................... 2

    A.    Factual Background ........................................................................................ 2

        1.    Blue Shield Operates a Website Where Enrollees Provide Sensitive
             Health Information........................................................................... 2

        2.    Blue Shield Installed Tracking Technologies to Disclose the PII and
             PHI of its Enrollees to Google and Meta ......................................... 3

        3.    In April 2025, Blue Shield Admitted to Sharing Protected Health
             Information with Google........................................................................ 5

    B.    Procedural Background................................................................................... 6

III.  LEGAL STANDARD................................................................................................. 6

IV.   ARGUMENT ............................................................................................................. 7

    A.    Plaintiffs Have Article III Standing .............................................................. 7

        1.    The Intrusion Upon and Disclosure of Plaintiffs' PII and PHI to
             Google and Meta Was Highly Offensive........................................... 7

        2.    Plaintiffs Sufficiently Allege That Their Medical Information Was
             Transmitted to Google and Meta ..................................................... 9

    B.    Plaintiffs Have Adequately Alleged a Wiretap Act Claim ....................... 12

        1.    The Party Exception Does Not Apply Because Blue Shield's Conduct
             Was Tortious and Violated HIPAA and California Law .............................. 12

        2.    Plaintiffs Allege that Google and Meta Intercepted Their PII and PHI
             While in Transit to Blue Shield's Website ..................................... 18

        3.    The Wiretap Act Imposes Liability on Blue Shield........................... 19

        4.    Plaintiffs Allege Their Communications Conveyed Content ....................... 22

V.    CONCLUSION....................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.D. v. Aspen Dental Mgmt., Inc.,*
2024 WL 4119153 (N.D. Ill. Sept. 9, 2024) ................................................................... 14

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) .......................................................................................................... 6

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007) ..................................................................................................... 6, 10

*Boseovski v. McCloud Healthcare Clinic, Inc.,*
2020 WL 68578 (E.D. Cal. Jan. 7, 2020) ........................................................................ 21

*Brown v. Google LLC,*
525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2024) ................................................................ 17

*Brown v. Google LLC,*
685 F. Supp. 3d 909 (N.D. Cal. 2023) ...................................................... 7, 13, 20, 22, 24

*Byars v. Goodyear Tire & Rubber Co.*
(C.D. Cal. 2023) 654 F. Supp. 3d 1020 .......................................................................... 23

*Byars v. Sterling Jewelers, Inc.,*
2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) ................................................................... 11

*Campbell v. Facebook, Inc.,*
951 F.3d 1106 (9th Cir. 2020) .................................................................................... 21, 22

*Campidoglio LLC v. Wells Fargo & Co.*
870 F.3d 963 (9th Cir. 2017) ............................................................................................ 6

*Castillo v. Costco Wholesale Corp.,*
2024 WL 4785136 (W.D. Wash. Nov. 14, 2024) ....................................................... 14, 16

*Cooper v. Mount Sinai Health Sys., Inc.,*
742 F. Supp. 3d 369 (S.D.N.Y. 2024) ............................................................................. 14

*Cousin v. Sharp Healthcare*
(S.D. Cal. 2023) 702 F. Supp. 3d 967 .......................................................................... 23, 24

*Cousin v. Sharp Healthcare,*
681 F. Supp. 3d 1117 (S.D. Cal. 2023) ........................................................................... 18

*D'Angelo v. FCA US, LLC,*
726 F. Supp. 3d 1179 (S.D. Cal. 2024) ........................................................................... 11

*De Ayora v. Inspire Brands, Inc.,*
2025 WL 3707561 (N.D. Cal. Dec. 22, 2025) ................................................................. 7, 9

*Dellasala v. Samba TV, Inc.,*
2025 LX 463598 (N.D. Cal. Oct. 30, 2025) ...................................................................... 8

*DISH Network L.L.C. v. Vicxon Corp.,*
923 F. Supp. 2d 1259 (S.D. Cal. 2013) ........................................................................... 19

*Doe v. GTE Corp.*,
  347 F.3d 655 (7th Cir. 2003) ........................................................................................ 21

*Doe v. Kaiser Found. Health Plan, Inc.*,
  2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) ................................................................ 15

*Doe v. Meta Platforms, Inc.*,
  690 F. Supp. 3d 1064 (N.D. Cal. 2023) ................................................................... 13, 24

*Doe v. Tenet Healthcare Corp.*,
  789 F. Supp. 3d 814 (E.D. Cal. 2025) ............................................................................ 8

*Eminence Capital, LL v. Aspeon, Inc.*,
  316 F.3d 1048 (9th Cir. 2003) ...................................................................................... 25

*Facebook Internet Tracking Litig.*,
  263 F. Supp. 3d 836 (N.D. Cal. 2017) .......................................................................... 12

*Facebook Internet Tracking Litigation*
  (N.D. Cal. 2015) 140 F. Supp. 3d 922 ........................................................................ 25

*Gabrielli v. Haleon US Inc.*,
  2025 WL 2494368 (N.D. Cal. Aug. 29, 2025) .......................................................... 8, 25

*Gabrielli v. Motorola Mobility LLC*,
  2025 WL 1939957 (N.D. Cal. July 14, 2025) ................................................................ 11

*Gaige v. Exer Holding Co., LLC*,
  2025 WL 559719 (C.D. Cal. Mar. 2, 2025) ................................................................... 9

*Gay v. Garnet Health*,
  2024 WL 4203263 (S.D.N.Y. Sept. 16, 2024) .............................................................. 15

*Greenley v. Kochava, Inc.*,
  684 F. Supp. 3d 1024 (S.D. Cal. 2023) ........................................................................ 10

*Hartley v. Urb. Outfitters, Inc.*,
  740 F. Supp. 3d 410 (E.D. Pa. 2024) ........................................................................... 12

*Hazel v. Prudential Fin., Inc.*,
  2023 WL 3933073 (N.D. Cal. June 9, 2023) ................................................................ 18

*Heerde v. Learfield Commc'ns, LLC*,
  741 F. Supp. 3d 849 (C.D. Cal. 2024) ......................................................................... 18

*Heiting v. Taro Pharms. USA, Inc.*,
  2024 WL 3738055 (C.D. Cal. 2024) ............................................................................. 19

*Hughes v. Vivint, Inc.*,
  2024 WL 5179916 (C.D. Cal. July 12, 2024) ............................................................... 11

*I.T. v. ChoicePoint LLC*,
  2025 WL 2495079 (W.D. Wash. Aug. 29, 2025) .......................................................... 15

*In re Accellion, Inc. Data Breach Litig.*,
  2025 WL 2799102 (N.D. Cal. Sept. 30, 2025) ............................................................... 9

*In re BetterHelp, Inc. Data Disclosure Cases*,
  2024 WL 3416511 (N.D. Cal. July 15, 2024) ............................................................... 17

*In re Carrier IQ, Inc.*,
  78 F. Supp. 3d 1051 (N.D. Cal. 2015) ................................................................ 21

*In re Facebook, Inc. Internet Tracking Litig.*,
  956 F.3d 589 (9th Cir. 2020) ............................................................... 7, 12, 23

*In re Google Assistant Priv. Litig.*,
  457 F. Supp. 3d 814 (N.D. Cal. 2020) ................................................................ 21

*In re Google Assistant Privacy Litig.*,
  546 F. Supp. 3d 945 (N.D. Cal. 2021) ................................................................ 20

*In re Google Cookie Placement Consumer Priv., Litig.*,
  806 F.3d 125 (3d Cir. 2015) ............................................................................ 15

*In re Google RTB Consumer Priv. Litig.*,
  606 F. Supp. 3d 935 (N.D. Cal. 2022) ................................................... 10, 22, 24

*In re Meta Pixel Healthcare Litig.*,
   647 F. Supp. 3d 778 (N.D. Cal. 2022) ........................................................ 24, 25

*In re Meta Pixel Tax Filing Cases*,
  724 F. Supp. 3d 1004 (N.D. Cal. 2024) .............................................................. 23

*In re Toys R Us, Inc. Privacy Litig.*,
  2001 WL 34517252 (N.D. Cal. Oct. 9, 2001) ..................................................... 21

*In re Zynga Privacy Litig.*,
  750 F.3d 1098 (9th Cir. 2014) ..................................................................... 24, 25

*Kane v. Univ. of Rochester*
  (W.D.N.Y. Mar. 19, 2024) 2024 WL 1178340 .................................................. 24

*Katz-Lacabe v. Oracle America., Inc.*,
  668 F. Supp. 3d 928 (N.D. Cal. 2023) ................................................................ 16

*Khamooshi v. Politico LLC*,
  786 F. Supp. 3d 1174 (N.D. Cal. 2025) ........................................................ 11, 12

*Kishnani v. Royal Caribbean Cruises Ltd.*,
  2025 WL 1745726 (N.D. Cal. June 24, 2025) ..................................................... 10

*Lakes v. Ubisoft, Inc.*,
  777 F. Supp. 3d 1047 (N.D. Cal. 2025) .............................................................. 17

*Licea v. Am. Eagle Outfitters, Inc.*,
  659 F. Supp. 3d 1072 (C.D. Cal. 2023) .............................................................. 19

*Lightoller v. Jetblue Airways Corp.*,
  2023 WL 3963823 (S.D. Cal. June 12, 2023) ...................................................... 11

*Lonegan v. Hasty*,
  436 F. Supp. 2d 419 (E.D.N.Y 2006) ........................................................... 21, 22

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ........................................................................................ 7

*M.R. v. Salem Health Hosps. & Clinics*,
  2024 WL 3970796 (D. Or. Aug. 28, 2024) ........................................................... 8

*Marden v. LMND Medical. Goup., Inc.*,
    2024 WL 4448684 (N.D. Cal. July 3, 2024)............................................................16, 24

*Mastel v. Miniclip SA*,
    549 F. Supp. 3d 1129 (E.D. Cal. 2021) .............................................................................19

*Mekhail v. N. Mem'l Health Care*,
    726 F. Supp. 3d 916 (D. Minn. 2024) ...............................................................................16

*Mikulsky v. Bloomingdale's, LLC*,
    713 F. Supp. 3d 833 (S.D. Cal. 2024)................................................................................25

*Mikulsky v. Noom, Inc.*,
    682 F. Supp. 3d 855 (S.D. Cal. 2023)................................................................................11

*Noel v. Hall*,
    568 F.3d 743 (9th Cir. 2009) ............................................................................................20

*NovelPoster v. Javitch Canfield Grp.*,
    140 F. Supp. 3d 938 (N.D. Cal. 2014)...............................................................................19

*Peavy v. WFAA-TV*,
    221 F.3d 158 (5th Cir. 2000) ............................................................................................21

*Pena v. GameStop, Inc.*,
    670 F. Supp. 3d 1112 (S.D. Cal. 2023)..............................................................................15

*Planned Parenthood Fed'n of Am., Inc. v. Newman*,
    51 F.4th 1125 (9th Cir. 2022) ...........................................................................................14

*Popa v. Microsoft Corp.*,
    153 F.4th 784 (9th Cir. 2025) ....................................................................................7, 8, 9

*Q.J. v. PowerSchool Holdings, LLC*,
    2025 WL 2410472 (N.D. Ill. Aug. 20, 2025) ....................................................................22

*R.C. v. Walgreen Co.*,
    733 F. Supp. 3d 876 (C.D. Cal. 2024)...............................................................................17

*R.S. v. Prime Healthcare Servs., Inc.*,
    2025 WL 103488 (C.D. Cal. Jan. 13, 2025) ................................................................16, 17

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
    442 F.3d 741 (9th Cir. 2006) ..............................................................................................6

*Riganian v. LiveRamp Holdings, Inc.*,
    791 F. Supp. 3d 1075 (N.D. Cal. 2025)..............................................................................16

*Rodriguez v. Culligan International Co.*,
    2025 WL 3064113 (S.D. Cal. Nov. 3, 2025) ......................................................................12

*Scheibe v. Perfect Keto Grp. LLC*,
    700 F. Supp. 3d 928 (S.D. Cal. 2023)..................................................................................9

*Smith v. Rack Room Shoes, Inc.*,
    2025 WL 2210002 (N.D. Cal. Aug. 4, 2025) ...............................................................15, 20

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016)............................................................................................................7

*Stein v. Edward-Elmhurst Health,*
  2025 WL 580556 (N.D. Ill. Feb. 21, 2025) ............................................................. 14, 16

*Strong v. LifeStance Health Grp. Inc.,*
  2025 WL 317552 (D. Ariz. Jan. 28, 2025) ...................................................................... 14

*Sussman v. Am. Broad. Cos., Inc.,*
  186 F.3d 1200 (9th Cir. 1999) ....................................................................................... 14

*Tenet Healthcare Corp.,*
  789 F. Supp. 3d at 848 ....................................................................... 13, 14, 18, 21

*Torres v. Prudential Financial, Inc.,*
  2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) ................................................................ 19

*TransUnion LLC v. Ramirez,*
  594 U.S. 423 (2021) .......................................................................................................... 7

*Yockey v. Salesforce, Inc.,*
  688 F. Supp. 3d 962 (N.D. Cal. 2023) ....................................................................... 7, 11

**Statutes**

18 U.S.C. § 2510 ...................................................................................................................... 1

18 U.S.C. § 2511 .................................................................................................................... 20

18 U.S.C. § 2511(1)(a) .......................................................................................................... 20

18 U.S.C. § 2511(1)(a) .......................................................................................................... 22

18 U.S.C. § 2511(1)(a)–(e) .................................................................................................... 12

18 U.S.C. § 2511(1)(c)-(d) .................................................................................................... 20

18 U.S.C. § 2511(1)(d) .......................................................................................................... 20

18 U.S.C. § 2511(2)(d) .......................................................................................................... 13

18 U.S.C. § 2520 .................................................................................................................... 21

18 U.S.C. § 2520(a) ............................................................................................................... 22

42 U.S.C. § 1302 ...................................................................................................................... 8

42 U.S.C. § 1320d-6 .............................................................................................................. 13

Cal. Penal Code § 631 ........................................................................................................... 17

Cal. Penal Code § 632 ........................................................................................................... 17

**Other Authorities**

S. Rep. No. 95-797 (1986), as reprinted in 1986 U.S.C.C.A.N. 3555 .............................. 22

**Rules**

45 C.F.R. § 160.103 ................................................................................................................. 8

45 C.F.R. § 164.508 .............................................................................................................. 13

Fed. R. Civ. P. 9(b) ............................................................................................................... 10

Fed. R. Evid. 201(d) ................................................................................................................ 6

# I.    <u>INTRODUCTION</u>

This is a privacy class action about Defendant California Physicians' Services' (d/b/a Blue Shield of California) disclosure of the personal and sensitive medical information of its enrollees to Google LLC and Meta Platforms for use in targeted advertising. Blue Shield is a healthcare service plan provider that owns and operates a website, blueshieldca.com, where Plaintiffs and Class members share their personally identifying information ("PII") and protected health information ("PHI"). In April 2025, Blue Shield issued a notice to its plan participants admitting that it allowed Google Analytics to capture the health-related information of its members for years.[1] Plaintiffs Rachel Markovitz, Susan Reiman, and Austin Kahn allege that, in addition to Google Analytics, Blue Shield also installed other third-party tracking technologies like the Meta Pixel to increase its own profits. These tracking tools allowed companies like Google and Meta to intercept the contents of Plaintiffs' communications on Blue Shield's website as they were being transmitted, including the treatments they were seeking and the names of their healthcare providers, and to associate this information with each individual Plaintiff.

Blue Shield now moves to dismiss, first arguing that Plaintiffs cannot establish Article III standing. But Blue Shield's argument inverts the pleading standard by asking the Court to disregard Plaintiffs' allegations and draw inferences in its favor. Plaintiffs allege that Blue Shield allowed Google and Meta to capture sensitive health information, including their searches for medical treatments and conditions. Plaintiffs plead that Blue Shield has infringed on their historically recognized privacy rights. The unauthorized disclosure of their health-related communications constitutes a "concrete" and "particularized" injury sufficient to satisfy Article III standing.

---

[1] The first case related to the tracking technologies on Blue Shield's website was filed in the Alameda County Superior Court in April 2024. *See Gianne v. California Physicians' Service*, Case No. 24CV071744 (Alameda Cty. Super. Ct.). After Blue Shield issued its April 2025 notice, numerous other cases were filed in this district and consolidated before this Court. Dkt. 32. Although the two cases involve overlapping conduct, the claims and classes in the cases are distinct. The state case concerns only claims on behalf of a California class for violations of California law, including violations of state privacy and wiretapping statutes, while this case only involves a claim on behalf of a nationwide class for violations of the federal Wiretap Act, 18 U.S.C. § 2510, *et seq.*

1    The Court should also reject Blue Shield's challenges to the sufficiency of Plaintiffs'

2    allegations under the Wiretap Act. While Blue Shield argues that the party exception applies

3    because it consented to the interception of Plaintiffs' health-related communications, Plaintiffs

4    plausibly allege that its conduct falls within the crime-tort exception. Plaintiffs allege that Blue

5    Shield installed Google's and Meta's tracking technologies for the purpose of violating the Health

6    Insurance Portability and Accountability Act ("HIPAA") to increase its own profits, and courts have

7    repeatedly held that similar allegations are sufficient to invoke the exception. Although Blue Shield

8    insists that Plaintiffs' communications were not intercepted contemporaneously, the *Gianne* court

9    rejected a similar argument after the *Gianne* plaintiffs pled substantially similar facts showing how

10   their communications on Blue Shield's website were intercepted while they were being transmitted.

11   Blue Shield fails to show why this Court should arrive at a different conclusion. Its insistence that

12   there is no secondary liability under the Wiretap Act is also contrary to Ninth Circuit precedent and

13   should be rejected. Finally, the information Plaintiffs input on Blue Shield's website plainly

14   constitutes "contents" under the Wiretap Act because they convey substantive information—such as

15   the medical symptoms Plaintiffs were experiencing and the treatments they received—a fact that

16   Blue Shield itself admitted to its members. Blue Shield's motion to dismiss should be denied.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Factual Background

#### 1.    Blue Shield Operates a Website Where Enrollees Provide Sensitive Health Information

Blue Shield is a major health plan organization with about six million members that is

subject to HIPAA. ¶¶ 5, 13, 21-23.[2] Blue Shield operates a website where its enrollees can create an

account and manage their healthcare, including finding doctors or specialist referrals, researching

symptoms, seeking mental healthcare, filing claims, and scheduling medical treatment. ¶ 20.

Enrollees disclose highly sensitive details about their health conditions and illnesses on Blue

Shield's website to obtain care. ¶ 21.

---

[2] All "¶" references are to the Consolidated Class Action Complaint ("CCAC"). Dkt. 102.

Blue Shield has recognized the importance of protecting the information its enrollees provide from disclosure, such as in its Online and Mobile Privacy Notice ("Privacy Policy") and "Notice of Privacy Practices" ("HIPAA Notice"). ¶¶ 23-25, 57-59. Blue Shield promised in its HIPAA Notice that it "will not use your PHI for marketing purposes without your prior written authorization." *See* HIPAA Notice. The Privacy Policy states that the website automatically gathered identifying information, including "internet protocol (IP) addresses, browser type[s] . . . [and] device identifier[s]" which "may [be] combine[d] . . . with other information we collect about you" to "improve marketing, analytics, or site functionality." *See* Privacy Policy. Blue Shield did not disclose to Plaintiffs that it would share —or facilitate the sharing of—their confidential communications regarding their health conditions with third parties like Google and Meta, who paired that information with Plaintiffs' unique identifying information.

Plaintiffs are current and former enrollees in health insurance plans managed by Blue Shield. ¶ 20. They each created an account on Blue Shield's website and logged in to locate or contact health specialists, find clinical locations, search for information about various medical treatments and their personal, private health conditions, and pay bills. ¶¶ 20, 126-129, 141-144, 156-159. Given the highly sensitive nature of the communications and information Plaintiffs shared with Blue Shield, Plaintiffs reasonably expected that it would keep their PII and PHI private.

### 2. Blue Shield Installed Tracking Technologies to Disclose the PII and PHI of its Enrollees to Google and Meta

Despite its assurances that it would protect its enrollees' private information, Blue Shield has for years deployed third-party tracking technologies on its website, including Google Analytics, which allows Google and website owners to gain insight into the website's users by capturing detailed information about them. ¶¶ 3, 30-32, 48. Google Analytics is a powerful tracking tool because it can be used alongside Google Ads, which allows website owners to purchase targeted, personalized advertisements directed to end users. ¶ 32.

Google Analytics works by intercepting Plaintiffs' communications as they were being transmitted. For example, if an enrollee searched for a specific term on the website, Google Analytics attached a string of code to the resulting web address so that the enrollee's search terms

were sent not only to the website, but also to Google. ¶ 31. In other words, Google intercepted any information Plaintiffs provided on Blue Shield's website—such as their specific healthcare needs—and matched it with information used to identify Plaintiffs specifically, including Google-assigned unique cookies and identifiers pertaining to each Plaintiff, as well as information about their specific devices and browsers, such as IP address and User-Agent.[3] ¶ 54. Blue Shield also affirmatively switched on Google Signals, a setting that allowed Google to tie the PII and PHI it received about users on Blue Shield's website to their Google accounts, so Blue Shield and Google could further individually identify enrollees. ¶ 47.

Separately, Blue Shield installed the Meta Pixel on its website to allow Meta to capture enrollees' PII and PHI. Like Google Analytics, the Meta Pixel is a snippet of code that can be inserted onto a website that allows Meta to collect information that Plaintiffs provided, including through "Button Click Data," which tracked when site visitors clicked buttons, the labels on those buttons, and the resulting pages users landed on. For example, when an enrollee clicks on the "Obstetrics/Gynecology" button, Meta automatically learns this information without the user's knowledge or consent. ¶ 103. The Meta Pixel also collects the content of form fields, so if a user fills out a form with information about their healthcare plan, Meta receives that information. ¶ 106. Blue Shield also affirmatively configured the Meta Pixel code to transmit custom data and enrollee information to Meta, including Plaintiffs' insurance plans, membership information, doctor and specialty searches, and potential health conditions. ¶ 107.

Meta individually identified Plaintiffs and enrollees through various methods, including first-party (owned by the website owner) and third-party (owned by companies such as Meta) cookies on Blue Shield's website. ¶¶ 80-83. Blue Shield and Meta placed these cookies on Plaintiffs' web browsers and associated each cookie with unique identifiers so that each user was distinguishable. ¶ 66. The Meta Pixel on Blue Shield's website also collected identifying information about individual enrollees' devices, browsers, geolocations, timestamps, IP addresses,

---

[3] A User-Agent is a string contained in the HTTP header that provides information about a user's browser and operating system to the server. When combined with the IP address, it enables servers to uniquely identify a user, even if cookies are blocked or disabled.

User-Agents, and device properties. *Id*. Finally, Meta has a tool called Advanced Matching, which collects PII (including contact information like names, email addresses, and phone numbers, plus other data, like gender, city, and zip code) alongside information about the actions a user takes on a website, including "Button Click Data," as described above, and "Event Data." *Id*. For instance, if an enrollee selected the option to call a healthcare provider, which is an "event," Meta immediately intercepted that information along with the identifying information about that enrollee. ¶¶ 104-108. And, while Blue Shield affirmatively had to turn on Google Signals to allow Google to associate an enrollee with his or her Google account, the Meta Pixel automatically used the PII and PHI collected from Plaintiffs to associate that information with their Facebook or Instagram accounts. ¶¶ 66, 95. Blue Shield used the Meta Pixel to target and personalize advertisements to existing and potential customers on Facebook and Instagram. ¶¶ 70-74.

### 3.    In April 2025, Blue Shield Admitted to Sharing Protected Health Information with Google

On April 9, 2025, Blue Shield issued a "Notice of Data Breach," disclosing that Google Analytics "was configured in a way that allowed certain member data to be shared with Google's advertising product, Google Ads, that likely included protected health information." ¶ 27. Blue Shield acknowledged that "Google may have used this data to conduct focused ad campaigns back to those individual members." ¶ 27. It subsequently sent notices to members, including Plaintiffs, whose information may have been disclosed. *Id.* The Notice revealed that Blue Shield disclosed several categories of information with Google, including Plaintiffs' "medical claim service date and service provider, patient name, and patient financial responsibility; and 'Find a Doctor' search criteria and results (location, plan name and type, provider name and type)." ¶¶ 3, 28, 62.

The Notice, however, omitted significant information. Although Blue Shield framed its use of Google Analytics as an inadvertent "breach" of its systems, it had installed Google Analytics on its website since 2012 and the Meta Pixel since 2018. ¶¶ 62, 172. The Notice was also contradictory. While Blue Shield claimed that it discovered the "breach" on February 11, 2025, it also claimed that it "severed the connection between Google Analytics and Google Ads on its websites in January 2024." ¶ 27. Blue Shield did not explain how it could have severed the

1   connection a month before it discovered its own conduct. The Notice also omitted other tracking

2   technologies in use on Blue Shield's website, including the Meta Pixel. *Id.*

3   **B.    Procedural Background**

4   The *Gianne* court overruled Blue Shield's demurrer to the state plaintiffs' claims under

5   California law, including wiretapping claims, on April 22, 2025. The court concluded that based on

6   similar allegations, the plaintiffs had adequately alleged that the contents of their communications

7   on Blue Shield's website had been intercepted while in transit. Declaration of Adam Polk, Ex. A,

8   ORDER re: Ruling on Submitted Matter (Apr. 22, 2025).[4]

9   After Blue Shield issued its Notice of Data Breach, and shortly after the *Gianne* court's

10  ruling on Blue Shield's demurrer, 19 related cases were filed in this District. The cases were

11  consolidated before this Court on June 2, 2025, and the Court appointed Interim Co-Lead Class

12  Counsel on August 6. Dkt. Nos. 32, 72.[5] Plaintiffs filed the CCAC on September 29, which asserts

13  a single claim for violation of the Wiretap Act. Dkt. 102.

14  **III.    <u>LEGAL STANDARD</u>**

15  When ruling on a motion to dismiss, the Court accepts all factual allegations in the

16  complaint as true and construes them together and in the light most favorable to Plaintiffs.

17  *Campidoglio LLC v. Wells Fargo & Co.*, 870 F.3d 963, 970 (9th Cir. 2017). Plaintiffs need not

18  plead "detailed factual allegations" under Rule 8 but need only set forth enough facts to state a

19  plausible entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard

20  requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*,

21  556 U.S. 662, 678 (2009) (citation omitted).

22

23

24

25

26  ───────────────

[4] Courts "may take judicial notice of court filings and other matters of public record." *Reyn's Pasta
27  Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n. 6 (9th Cir. 2006); *see* Fed. R. Evid. 201(d).
[5] The cases filed in Alameda County have since been consolidated as *In re Blue Shield of California
28  Data Privacy Litigation*, no. 24CV071744 (Alameda Cty, Super. Ct.).

1

## IV.    ARGUMENT

2

### A.    Plaintiffs Have Article III Standing

3

#### 1.    The Intrusion Upon and Disclosure of Plaintiffs' PII and PHI to Google and Meta Was Highly Offensive

4

5    To establish Article III standing, Plaintiffs must have (1) suffered an injury in fact that is

6    concrete and particularized, (2) that is fairly traceable to Blue Shield's conduct, and (3) that is likely

7    to be redressed by a favorable judicial decision. *Popa v. Microsoft Corp.*, 153 F.4th 784, 788 (9th

8    Cir. 2025) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). Blue Shield only

9    disputes whether Plaintiffs have suffered a concrete injury (Mot. at 12) which "'must actually exist';

10    put differently, it must be 'real, and not abstract.'" *Popa*, 153 F.4th at 788 (quoting *Spokeo, Inc. v.*

11    *Robins*, 578 U.S. 330, 340 (2016)). An injury-in-fact cannot be a mere statutory violation, and

12    instead, a court must "assess whether an individual plaintiff has suffered a harm that has

13    traditionally been actionable in our nation's legal system." *Id.* (citing *TransUnion LLC v. Ramirez*,

14    594 U.S. 423-24 (2021)). Plaintiffs have suffered a concrete injury because, as this Court has

15    recognized, the disclosure of private facts is highly offensive to a reasonable person and has been

16    traditionally recognized as actionable. *See Brown v. Google LLC*, 685 F. Supp. 3d 909, 924 (N.D.

17    Cal. 2023) (Gonzalez Rogers, J.) (collection of private information sufficient to confer standing).

18    Allegations that a privacy intrusion is highly offensive can be rejected at the pleading stage

19    "[o]nly if the allegations show no reasonable expectation of privacy or an insubstantial impact on

20    privacy interests. . . ." *De Ayora v. Inspire Brands, Inc.*, 2025 WL 3707561, at *3 (N.D. Cal. Dec.

21    22, 2025) (quotation marks and citation omitted); *see In re Facebook, Inc. Internet Tracking Litig.*,

22    956 F.3d 589, 606 (9th Cir. 2020) ("*Facebook Tracking Litig. I*"). That is not the case here and Blue

23    Shield's insistence that the disclosure of sensitive PHI and PII is insufficient to constitute a concrete

24    injury is contrary to the holdings of numerous courts. *See, e.g.*, *Yockey v. Salesforce, Inc.*, 688 F.

25    Supp. 3d 962, 970 (N.D. Cal. 2023) ("Plaintiffs allege that they disclosed personal health

26    information over Chat and that Salesforce collected the communications containing that information

27    … [t]hese allegations give rise to a concrete injury because Salesforce's collection of those

28    communications necessarily deprived Plaintiffs of their control of their information contained

therein"); *Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 844 (E.D. Cal. 2025) (allegations that "Defendants invaded [plaintiffs] privacy rights by disclosing their information to third parties without consent through the use of tracking technology embedded on Defendants' Web Properties" sufficient for standing).

The U.S. Department of Health and Human Services' "Privacy Rule" safeguarding PHI and individually identifiable health information under HIPAA reinforces the conclusion that health information is especially sensitive. 45 C.F.R. § 160.103; 42 U.S.C. §§ 1302, *et seq*. The Privacy Rule protects information that (1) is "created or received by a health care provider"; (2) relates to "the past, present, or future physical or mental health or condition of an individual" or "the provision of health care to an individual"; and (3) that either "identifies the individual" or reasonably "can be used to identify the individual." 45 C.F.R. § 160.103. As other courts have recognized, the Privacy Rule exists because of the importance of safeguarding individuals' health data. *See M.R. v. Salem Health Hosps. & Clinics*, 2024 WL 3970796, at *2 (D. Or. Aug. 28, 2024).

Blue Shield's standing argument relies heavily on *Popa*, but that case is consistent with other cases that have held that the disclosure of health information is sufficient to confer standing under *TransUnion* because it gives rise to a concrete injury stemming from the infringement of a traditional privacy interest. *See Dellasala v. Samba TV, Inc.*, 2025 LX 463598, at *6 (N.D. Cal. Oct. 30, 2025) ("*Popa* did not set forth a new rule of law—the issue of whether a privacy violation gives rise to an injury-in-fact for purposes of Article III standing is a frequent feature in these cases."); *Gabrielli v. Haleon US Inc.*, 2025 WL 2494368, at *7 (N.D. Cal. Aug. 29, 2025) (rejecting argument that *Popa* held that the collection of information through tracking technologies was insufficient for Article III standing).

The *Popa* plaintiff could not identify any "embarrassing, invasive, or otherwise private information" that was collected about her visiting a pet supplies website so did "not m[e]et her burden to demonstrate that she ha[d] standing" because her alleged injuries were not sufficiently analogous to the common law torts of intrusion upon seclusion and public disclosure of private facts. 153 F.4th at 791. *Popa*, however, distinguished the case before it from cases like this one involving the collection of "sensitive medical . . . information . . . ." *Id.* The recognition that

1  disclosure of truly private facts—including medical information—is highly offensive and

2  historically actionable is consistent with *TransUnion*, where the Supreme Court "specifically called

3  out disclosure of private information as a common law cause of action that can support an Article

4  III injury." *In re Accellion, Inc. Data Breach Litig.,* 2025 WL 2799102, at *13 (N.D. Cal. Sept. 30,

5  2025) (noting that in *Popa*, "the Ninth Circuit has explained that the crux of this cause of action is

6  the disclosure of information that is '*highly offensive* to a reasonable person.'") (quoting *Popa*, 153

7  F.4th at 791 (emphasis in original)); *see also De Ayora*, 2025 WL 3707561, at *2.

8        Plaintiffs allege that Blue Shield unlawfully disclosed their medical information. Those

9  allegations establish a concrete and particularized injury sufficient to satisfy Article III standing

10  because the intrusion was highly offensive. *See Gaige v. Exer Holding Co., LLC*, 2025 WL 559719,

11  at *8 (C.D. Cal. Mar. 2, 2025) ("[A]llegations that Defendant used his PHI for targeted advertising

12  is enough to survive a motion to dismiss on the issue of whether this conduct is highly offensive").

### 2.   Plaintiffs Sufficiently Allege That Their Medical Information Was Transmitted to Google and Meta

13
14

15        This case is about the unauthorized disclosure of Plaintiffs' medical information. Blue

16  Shield, however, asks the Court to read the complaint in isolation, cherry-picking examples of

device information like IP addresses that were also transmitted to Google and Meta to argue that the

17  information it disclosed was not sensitive. Mot. at 14. But, as explained earlier, Plaintiffs allege in

18  detail the specific medical information that Blue Shield collected and disclosed to Google and Meta

19  through tracking technologies—and how that information was individually linked with Plaintiffs. ¶¶

20  48, 51-54, 65-6, 79-104. On a motion to dismiss, "[c]ourts are obliged to read the complaint as a

21  whole rather than isolating allegations and taking them out of context." *Scheibe v. Perfect Keto Grp.*

22  *LLC*, 700 F. Supp. 3d 928, 934 (S.D. Cal. 2023) (citation omitted). Blue Shield's insistence that

23  neither Google nor Meta captured information about Plaintiffs' medical diagnoses and treatment

24  (Mot. at 14) directly contradicts the complaint and should be rejected.

25        Specifically, Plaintiffs allege that the "search inputs and selections" that Google and Meta

26  captured through Google Analytics and the Meta Pixel, respectively, revealed their sensitive PHI,

27  including the names of Plaintiffs' doctors, the medical treatments Plaintiffs were receiving or

28

1    seeking treatment for, the locations where treatment was sought, symptoms Plaintiffs were

2    experiencing, and provider specialties. ¶¶ 48, 54, 66, 79-102, 104. Google and Meta could associate

3    Plaintiffs' medical and health-related communications on Blue Shield's website to them

4    individually through user identifying information, such as enrollees' devices and browsers, IP

5    addresses, User-Agents, and other personal identifiers, ¶¶ 48, 51-54, 65, 104.

6        Blue Shield now asserts that these allegations are insufficient to allege a concrete injury

7    because Plaintiffs only suggest the types of health information that Google and Meta *could* have

8    intercepted. Mot. at 16. It further objects that the screenshots in the CCAC are from an "unknown

9    user" at an "unknown date and time." Mot. at 10, 15. But the screenshots illustrate how Google

10   Analytics and the Meta Pixel function and demonstrate the kinds of information transmitted to third

11   parties via Blue Shield's website. Because the screenshots show how the tracking technologies

12   work, they underscore that Plaintiffs' allegations are not vague or equivocal like the plaintiff's in

13   *Kishnani v. Royal Caribbean Cruises Ltd.*, 2025 WL 1745726, at *4 (N.D. Cal. June 24, 2025)

14   (plaintiff alleged only the disclosure of basic contact information and vaguely suggested the

15   defendant "could" have gained additional information). Rather, they "have alleged enough facts to

16   draw a reasonable inference that they have been injured by [defendant's] conduct." *In re Google

17   RTB Consumer Priv. Litig.*, 606 F. Supp. 3d 935, 942 (N.D. Cal. 2022) (Gonzalez Rogers, J.)

18   (holding plaintiffs satisfied Article III standing based on similar privacy allegations).

19       At bottom, Plaintiffs' allegations are subject to Rule 8, not the heightened pleading

20   standards of Rule 9(b), and Plaintiffs are entitled to all reasonable inferences on a motion to

21   dismiss. *Twombly*, 550 U.S. at 555-56. Courts—including this one—have therefore rejected similar

22   arguments that plaintiffs have not shown that their data was collected. *See In re Google RTB*, 606 F.

23   Supp. at 943 (allegations about how Google's technology functioned together with the fact plaintiffs

24   were Google users sufficient to establish standing); *Greenley v. Kochava, Inc.,* 684 F. Supp. 3d

25   1024, 1038 (S.D. Cal. 2023) (reasonable to infer that the defendant collected plaintiff's data based

26   on allegations explaining how the technology at issue worked and the fact that the plaintiff used a

27   cellular device containing the defendant's app). Together with Plaintiffs' allegations that they used

28   Blue Shield's website to schedule and receive treatment for medical issues and that they are Google

or Meta accountholders (¶¶ 128, 131, 139, 146, 156, 161), it is reasonable to infer from Plaintiffs' allegations above that their medical information was captured by Google and Meta. *See Gabrielli v. Motorola Mobility LLC*, 2025 WL 1939957, at \*10 (N.D. Cal. July 14, 2025) (rejecting similar argument that the complaint only showed what the defendant's "cookies could track"); *D'Angelo v. FCA US, LLC*, 726 F. Supp. 3d 1179, 1193 (S.D. Cal. 2024) ("single allegation" that the plaintiff "engaged" with the defendant's "Chat Feature" was sufficient to establish a protected privacy interest); *Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 970 (N.D. Cal. 2023) (collection of private communications sufficient to allege a concrete injury).

None of the cases Blue Shield cites suggest that Plaintiffs' allegations are insufficient for Article III standing. Blue Shield relies on several instances where the plaintiffs lacked standing because they never alleged that they provided *any sensitive information* that could have been captured. In *Byars v. Sterling Jewelers, Inc.*, the court held that the plaintiff failed to allege "that she disclosed any sensitive information to Defendant, much less identify any specific personal information she disclosed that implicates a protectable privacy interest." 2023 WL 2996686, at \*3 (C.D. Cal. Apr. 5, 2023); *see also Hughes v. Vivint, Inc.*, 2024 WL 5179916, at \*4 (C.D. Cal. July 12, 2024) ("Plaintiff never alleges in her Complaint that she entered her email address or phone number into any fields on the Website so that the Advanced Matching feature of the TikTok Software could capture her personalized information"); *Lightoller v. Jetblue Airways Corp.*, 2023 WL 3963823, at \*4 (S.D. Cal. June 12, 2023) (similar).

In other cases, the plaintiffs claimed sensitive information was disclosed without any supporting facts. *See Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 865 (S.D. Cal. 2023) (dismissing complaint because "Plaintiff alleges that Defendant recorded her 'personal information' without specifying what type of information" was recorded); *Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174, 1179 (N.D. Cal. 2025) (plaintiffs claimed their IP addresses and "browser and device data" were "identifying information" but did not "provide any more detail"). In contrast, Plaintiffs here explain that they provided their PII and PHI on Blue Shield's website and how Google Analytics and the Meta Pixel captured it. ¶¶ 126-128, 134, 141-143, 148, 156-158, 163.

1    Blue Shield's remaining authorities are similarly distinguishable because they are limited to

2    technical statutory violations based on the disclosure of device information. For example, in

3    *Rodriguez v. Culligan International Co.*, the court held that the plaintiff failed to plead a

4    particularized privacy injury and, instead, "broadly contend[ed] that any invasion of a statutorily

5    recognized privacy interest [was] sufficient to constitute an Article III injury." 2025 WL 3064113,

6    at *3 (S.D. Cal. Nov. 3, 2025). The court held that the plaintiff did not have standing since "internet

7    users have no expectation of privacy in their IP addresses." *Id*; *see also Khamooshi*, 786 F. Supp. 3d

8    at 1179 ("Thus, the question presented is whether disclosure of IP addresses gives rise to a privacy

9    injury. It does not."); *Hartley v. Urb. Outfitters, Inc.*, 740 F. Supp. 3d 410, 422 (E.D. Pa. 2024)

10   (allegations of collection of IP addresses and location data insufficient). The information Blue

11   Shield disclosed to Google and Meta here was not limited to only device and browser information,

12   but rather included Plaintiffs' PII and PHI. Accordingly, Plaintiffs have sufficiently alleged a

13   concrete injury to their privacy interests to satisfy Article III standing.

14       **B.    Plaintiffs Have Adequately Alleged a Wiretap Act Claim**

15       "The Wiretap Act prohibits the unauthorized 'interception,'" of an 'electronic

16   communication.'" *Facebook Tracking Litig. I*, 956 F.3d at 606-07 (quoting 18 U.S.C. § 2511(1)(a)–

17   (e)). To state a claim under the Wiretap Act, a plaintiff must plead "that the defendant (1)

18   intentionally (2) intercepted, endeavored to intercept[,] or procured another person to intercept or

19   endeavor to intercept (3) the contents of (4) an electronic communication, (5) using a device."

20   *Facebook Internet Tracking Litig.*, 263 F. Supp. 3d 836, 844 (N.D. Cal. 2017).

21       Blue Shield argues that (1) the party exception exempts it from liability; (2) Plaintiffs do not

22   allege that their communications were contemporaneously intercepted; (3) it cannot be liable for

23   procuring Google and Meta to intercept Plaintiffs' communications; and (4) the communications

24   Google and Meta intercepted do not constitute contents. Each argument fails.

25       **1.    The Party Exception Does Not Apply Because Blue Shield's Conduct
              Was Tortious and Violated HIPAA and California Law**

26

27       Blue Shield invokes the party exception, arguing that because it was a party to the

28   communications, its consent defeats Plaintiffs' Wiretap Act claim. Mot. at 17 (citing 18 U.S.C.

1   § 2511(2)(d)). But "a party to a communication is still liable under the ECPA when a

2   communication 'is intercepted for the purpose of committing any criminal or tortious act in

3   violation of the Constitution or laws of the United States or of any State.'" *Tenet Healthcare Corp.*,

4   789 F. Supp. 3d at 848 (quoting 18 U.S.C. § 2511(2)(d)). "The focus … is upon whether the

5   purpose of the interception—its intended use—was criminal or tortious." *Id.*

6        As an affirmative defense to liability, Blue Shield bears the burden of showing that the party

7   exception to the Wiretap Act applies. *Doe v. Meta Platforms*, 690 F. Supp. 3d 1064, 1077-78 (N.D.

8   Cal. 2023) (subsequent history omitted). It has not met that burden. *See Brown*, 685 F. Supp. 3d at

9   933-34. Even if Blue Shield were a party to the communications, it cannot invoke the party

10  exception because, independent of the interception itself, its conduct was tortious and unlawful.

11  Blue Shield used Plaintiffs' intercepted data for targeted advertising in violation of HIPAA and

12  Plaintiffs' reasonable expectation of privacy under common law and the California Constitution.

13  *See* ¶¶ 59, 60, 112, 200, 206. In particular, HIPAA regulations require Blue Shield to "obtain an

14  authorization for any *use* or disclosure of protected health information for *marketing*." 45 C.F.R. §

15  164.508 (emphasis added). Violating that HIPAA prohibition against unauthorized marketing is

16  criminal. 42 U.S.C. § 1320d-6 ("A person who knowingly and in violation of this part … uses or

17  causes to be used a unique health identifier … or discloses individually identifiable health

18  information to another person [including 'for commercial advantage'], shall be punished.").

19        Plaintiffs allege that Blue Shield entered into arrangements with Google and Meta to "*use*"

20  Plaintiffs' PII and PHI "in targeted advertising." ¶¶ 7, 32, 61, 107, 117. "Blue Shield did it to

21  purchase advertising, optimize its advertising, and target new and existing customers." ¶ 112; *see

22  also* ¶¶ 84, 88, 113, 135, 151, 166. In sum, "Blue Shield was able to use enrollees' PII and PHI for

23  targeted advertising campaigns via Google Ads and on Facebook and Instagram." ¶ 211. Blue

24  Shield admitted all this in its Notice to its enrollees (at least as to Google), stating: "Google

25  Analytics was configured in a way that allowed certain member data to be shared with Google's

26  advertising product, Google Ads." ¶ 27. Blue Shield also admitted that Google "may have used

27  [members'] data to conduct focused ad campaigns back to [Blue Shield's] individual members." *Id.*

28

1   These allegations therefore show that Blue Shield not only unlawfully *disclosed* Plaintiffs' data to

2   Google and Meta, but also separately *used* that data for digital marketing in violation of HIPAA.

3          Blue Shield argues that the crime-tort exception applies only if a defendant had an

4   independent criminal or tortious purpose at the time of the interception. Mot. at 18; *see Planned*

5   *Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022) ("[T]he independent

6   criminal or tortious purpose [must exist] at the time the recording was made."). That is exactly what

7   Plaintiffs allege here. When Blue Shield installed Google Analytics and the Meta Pixel, it did so

8   intending to use Plaintiffs' communications for targeted advertising in violation of HIPAA.

9          Courts have consistently held that the disclosure of PHI for use in targeted advertising "in

10  violation of HIPAA, may satisfy the crime-tort exception" because it constitutes a tort beyond the

11  act of interception itself. *Cooper v. Mount Sinai Health Sys., Inc.*, 742 F. Supp. 3d 369, 380

12  (S.D.N.Y. 2024). Indeed, "[c]ourts from coast to coast have recognized that a violation of HIPAA

13  can give rise to the crime-tort exception under the ECPA." *Stein v. Edward-Elmhurst Health*, 2025

14  WL 580556, at *5 (N.D. Ill. Feb. 21, 2025); *see also Tenet Healthcare Corp.*, 789 F. Supp. 3d at

15  849; *Strong v. LifeStance Health Grp. Inc.*, 2025 WL 317552, at *5 (D. Ariz. Jan. 28, 2025)

16  ("[P]laintiffs plausibly pleaded LifeStance intercepted the communications for the purpose of

17  violating HIPAA."); *Castillo v. Costco Wholesale Corp.*, 2024 WL 4785136, at *6 (W.D. Wash.

18  Nov. 14, 2024) ("The Court concludes that alleging a defendant intercepted data to use the data in

19  violation of criminal or tort laws [including HIPAA] suffices to invoke the crime-tort exception.");

20  *A.D. v. Aspen Dental Mgmt., Inc.*, 2024 WL 4119153, at *3 (N.D. Ill. Sept. 9, 2024) ("Plaintiffs

21  allegations are sufficient to invoke HIPAA for purposes of the ECPA's crime-tort exception."). In

22  short, Blue Shield's conduct had an independently illegal and tortious purpose.

23         Blue Shield's independent use of Plaintiffs' intercepted PHI in advertising campaigns

24  through Google and Meta—targeting its own members and new customers despite its assurances

25  that it would comply with HIPAA—distinguishes this case from those Blue Shield relies on. In

26  those cases, the plaintiffs asserted that the interception itself, rather than the subsequent advertising,

27  was the illegal act supporting the crime-tort exception. *See Sussman v. Am. Broad. Cos., Inc.*, 186

28  F.3d 1200, 1202 (9th Cir. 1999) ("[Plaintiffs] do [not] … argue that the tape was made for the

1    purpose of committing some other *subsequent* crime or tort. Rather, [they] argue that the taping

2    itself was tortious.") (emphasis added); *In re Google Cookie Placement Consumer Priv., Litig.*, 806

3    F.3d 125, 145 (3d Cir. 2015) (requiring allegations of "a … criminal act that is independent of the

4    intentional act of recording" and noting "the plaintiffs plead no tortious or criminal *use* of the

5    acquired internet histories"); *Doe v. Kaiser Found. Health Plan, Inc.*, 2024 WL 1589982, at *10

6    (N.D. Cal. Apr. 11, 2024) ("Violation of HIPAA was not the purpose of the alleged interception.").[6]

7        By contrast, Plaintiffs allege here what those cases lacked: a subsequent, separate, and

8    unlawful use of previously intercepted health information for targeted advertising. ¶¶ 205-12. *See*

9    *I.T. v. ChoicePoint LLC*, 2025 WL 2495079, at *8 (W.D. Wash. Aug. 29, 2025) ("Multiple courts

10   have rejected this argument, concluding that an intent to disclose or use private information in

11   violation of HIPAA is distinct from the interception of the private information."); *Gay v. Garnet*

12   *Health*, 2024 WL 4203263, at *4 (S.D.N.Y. Sept. 16, 2024) (similar). Blue Shield also promised

13   enrollees in its HIPAA Notice that it "will not use your PHI for marketing purposes without your

14   prior written authorization." ¶¶ 23-25, 57-59; *see Smith v. Rack Room Shoes, Inc.*, 2025 WL

15   2210002, at *13 (N.D. Cal. Aug. 4, 2025) ("Rack Room's alleged disclosure and use of Plaintiffs'

16   personally identifiable information for advertising, in contradiction [of] the commitments it made in

17   its privacy policy, can plausibly constitute a further invasion of privacy beyond the act of

18   intercepting the information alone."). Courts therefore consistently hold that engaging in a HIPAA

19   violation "constitutes an independent prohibited purpose." *Smith*, 2025 WL 2210002, at *13.

20       Blue Shield argues that intercepting communications "for targeted advertising and

21   marketing purposes" is not illegal or tortious for purposes of the crime-tort exception. Mot. at 19-

22   20. Although there is a split of authority on whether a financial motivation immunizes a defendant

23   under the crime-tort exception, "the majority [of] courts … have held a monetary purpose does not

24   insulate a party from liability under the Wiretap Act, at least at the motion to dismiss stage." *Smith*,

25   2025 WL 2210002, at *15. For example, in *Marden v. LMND Medical. Group., Inc.*, the plaintiffs

26

27   _____
     [6] *See also Pena v. GameStop, Inc.*, 670 F. Supp. 3d 1112, 1120 (S.D. Cal. 2023) ("Plaintiff does not
28   allege that this purpose constitutes independently illegal or actionable conduct such that the party
     exception is inapplicable.").

1   alleged that the defendant "purposefully configured its website to intercept individually identifiable

2   information about highly sensitive health issues (such as mental health disorders and erectile

3   dysfunction) and intentionally programmed the websites to send the information to Google and

4   Facebook." 2024 WL 4448684, at *3 (N.D. Cal. July 3, 2024). They also alleged that "Google and

5   Facebook benefited from this interception by using the information to sell ads to other third-party

6   advertisers." *Id*. The court held that the plaintiffs "plausibly allege[d] tortious intent." *Id*.; *see also*

7   *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1091 (N.D. Cal. 2025) ("The existence

8   of an underlying financial motivation does not mean that the act lacked a criminal or a tortious

9   purpose. That's like saying that a bank robber's purpose was not to commit a crime—it was to make

10  money.") (quoting *Stein*, 2025 WL 580556, at *6).

11          Other courts likewise agree that exempting profit-driven conduct from liability under the

12  Wiretap Act is illogical and departs from the statutory text. As the *Riganian* court explained,

13  "committing a tort and seeking a profit are not mutually exclusive (if anything, the latter is often the

14  reason for the former)." 791 F. Supp. 3d at 1090. Exempting financially motivated conduct is

15  "difficult to square with the statutory text. The language of the statute gives no hint that conduct

16  falls outside the reach of the statute if a person acted based on financial motivations." *Stein*, 2025

17  WL 580556, at *5; *see also R.S. v. Prime Healthcare Servs., Inc*., 2025 WL 103488, at *7 (C.D.

18  Cal. Jan. 13, 2025) ("Prime Healthcare's financial gain was contingent on disclosing HIPAA-

19  protected information to third parties. Legitimate objectives, like increasing revenue, do not shield a

20  party from liability for crimes or torts committed in the process."); *Castillo v. Costco Wholesale

21  Corp.*, 2024 WL 4785136, at *5 (W.D. Wash. Nov. 14, 2024) (similar); *Mekhail v. N. Mem'l Health

22  Care*, 726 F. Supp. 3d 916, 928 n.4 (D. Minn. 2024) ("[I]t defies common sense that a clearly

23  harmful act could escape liability as long as it was done for profit."). Because the "drive to make

24  money is an all-too-human, hard-to-avoid motivation," exempting financially motivated conduct is

25  likely to "swallow the rule." *Stein*, 2025 WL 580556, at *6.

26          The cases on which Blue Shield relies are distinguishable. For instance, Blue Shield cites

27  Judge Seeborg's decision in *Katz-Lacabe v. Oracle America., Inc.*, 668 F. Supp. 3d 928, 945 (N.D.

28  Cal. 2023), for the proposition that a desire to "make money" through targeted advertising is not

1    tortious. But Plaintiffs here do not merely allege that Blue Shield sought to "make money" in

2    isolation; they plead that Blue Shield committed a HIPAA violation by entering into arrangements

3    with Google and Meta to disclose Plaintiffs' PHI without their prior consent or authorization. ¶¶

4    205-13. In fact, Judge Seeborg subsequently reached a different conclusion where a defendant

5    "arguably was committing the tort/crime of disclosing its customer's sensitive mental health-related

6    information in violation of HIPAA." *In re BetterHelp, Inc. Data Disclosure Cases*, 2024 WL

7    3416511, at *4 (N.D. Cal. July 15, 2024). The court held that this distinction from *Katz-Lacabe*,

8    which did not implicate HIPAA, was "sufficient to permit the claim to go forward." *Id.* In another

9    case Blue Shield relies on, *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1057–58 (N.D. Cal. 2025),

10   the court similarly distinguished the facts before it from cases involving HIPAA violations. In short,

11   Blue Shield's alleged criminal violations of HIPAA—even if motivated by profit—cannot shield it

12   from liability under the Wiretap Act. *See Prime Healthcare Servs., Inc.*, 2025 WL 103488, at *7

13   ("While [defendant's] goal in violating HIPAA may have been to make money . . . its purpose of

14   intercepting R.S.'s Private Information . . . was to disclose it to third parties.").

15          Even if the Court were to conclude that the crime-tort exception does not apply where a

16   defendant's violation of HIPAA was primarily motivated by profit, the exception still applies where

17   the conduct independently violates state law. As the *Gianne* court's order overruling Blue Shield's

18   demurrer under similar facts demonstrates, Blue Shield's conduct plausibly violates California law,

19   including the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 631 and 632, the

20   California Confidentiality of Medical Information Act, and constitutes common-law invasion of

21   privacy. Polk Decl., Ex. A; *see also Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1067 (N.D. Cal.

22   2024) (Gonzalez Rogers, J.) ("Plaintiffs have adequately alleged that Google's association of their

23   data with preexisting user profiles violated state law, including CDAFA, intrusion upon seclusion,

24   and invasion of privacy. Accordingly, consent is not a defense to Plaintiffs' Wiretap Act claims.")

25   (citation omitted); *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 901 (C.D. Cal. 2024) (crime-tort

26   exception applies where defendant's conduct violated state law, "including state law privacy

27   claims"). Thus, Blue Shield cannot establish that the party exception applies because its conduct is

28   plausibly tortious and unlawful.

## 2. Plaintiffs Allege that Google and Meta Intercepted Their PII and PHI While in Transit to Blue Shield's Website

Blue Shield also argues that the contents of Plaintiffs' communications were not intercepted before they reached it. Mot. at 20-21. "Under the Wiretap Act … for data to be 'intercepted,' 'it must be acquired during transmission, not while it is in electronic storage.'" *Hazel v. Prudential Fin., Inc.*, 2023 WL 3933073, at *2 (N.D. Cal. June 9, 2023) (citations omitted). Plaintiffs allege exactly that. Blue Shield's arguments again disregard the pleading standard and should be rejected.

Plaintiffs detail how the contents of their communications were intercepted in transit. They allege that Google Analytics "received and recorded users' activities on Blue Shield's website by attaching a particular string of code to communications between users and the website," which "caus[ed] the user's search terms to be sent not only to the website, but also to Google." ¶ 32; *see also* ¶ 131 ("the contents of [Plaintiff's] communications were automatically sent to Google"), ¶ 145 (similar); ¶ 192 ("during transmission"). Plaintiffs further allege that "[w]hen an enrollee clicks the link to log into Blue Shield's website, Blue Shield enables Google to intercept that log in *contemporaneously* together with specific information about the enrollee." ¶ 46 (emphasis added).

With respect to Meta, Plaintiffs allege Blue Shield "helped Meta automatically intercept … enrollees' sensitive medical information and confidential communications," allowing Meta to "*in real-time*, associate that enrollee with Facebook or Instagram accounts." ¶ 104; *see also* ¶¶ 106-08. More broadly, Plaintiffs allege that Blue Shield "enabled third parties Google and Meta to intercept the contents of Plaintiffs' and Class members' confidential health communications during transmission, and *prior to* entering electronic storage." ¶ 192. In short, Plaintiffs allege that Google and Meta acquired the contents of Plaintiffs' communications contemporaneously, as those communications were being transmitted in real time. ¶¶ 49-54, 103-08.

Courts regularly hold that similar allegations are sufficient to establish interception. *See, e.g.*, *Heerde v. Learfield Commc'ns, LLC*, 741 F. Supp. 3d 849, 862 (C.D. Cal. 2024) (allegations that communications were "replicated and sent in parallel to … tracking entities" sufficient); *see also Cousin v. Sharp Healthcare ("Cousin I")*, 681 F. Supp. 3d 1117, 1131 (S.D. Cal. 2023); *cf. Tenet Healthcare Corp.*, 789 F. Supp. 3d at 838 (interpreting identical requirement under state law).

None of the cases Blue Shield cites undermine Plaintiffs' well-pled allegations that their communications were intercepted in transit. Mot. at 21. Some are wholly irrelevant. *Torres v. Prudential Financial, Inc.* involved the specific language of CIPA, not the Wiretap Act, and was decided on summary judgment. 2025 WL 1135088, at *6 (N.D. Cal. Apr. 17, 2025). Several of the others involved emails that had already been received and were therefore not covered by the Act. *See, e.g.*, *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 951-52 (N.D. Cal. 2014). Other cases turned on conclusory claims of interception. The complaint in *Mastel v. Miniclip SA* "[did] not contain any allegations that [defendant] intercepted any communications while they were 'in transit.'" 549 F. Supp. 3d 1129, 1136 (E.D. Cal. 2021); *contra* ¶¶ 49-54, 103-08. Similarly, in *Licea v. Am. Eagle Outfitters, Inc.*, the plaintiff "repeatedly" used the word "intercept" with no supporting facts. 659 F. Supp. 3d 1072, 1077-78 (C.D. Cal. 2023).

Blue Shield also suggests that internet communications are too fast to be intercepted. Mot. at 21 (citing *NovelPoster*, 140 F. Supp. 3d at 951-52). But *NovelPoster* acknowledged that interception can occur if "some type of automatic routing software is used," *id.* at 952—which is what Plaintiffs allege here. ¶¶ 4, 51, 52, 59, 82, 86, 102-108. Blue Shield simply ignores that Plaintiffs describe in detail the technologies at issue and how they rerouted data to third parties while in transit. ¶ 192; *see also* ¶¶ 49-54, 103-08. Blue Shield identifies no judicially noticeable facts to the contrary and, in any event, how the communications were captured is a highly factual question that cannot be resolved on the pleadings. *See, e.g., Heiting v. Taro Pharms. USA, Inc.*, 2024 WL 3738055, at *4 n.6 (C.D. Cal. 2024) ("Defendant is pointing to a technical, factual contention that would require the Court to disavow the facts in the SAC—which the Court cannot do at this stage of the proceedings."). Plaintiffs' interception allegations are sufficient.

### 3. The Wiretap Act Imposes Liability on Blue Shield

The Wiretap Act "provides plaintiffs whose electronic communications are intercepted in violation of § 2511 with a civil action for damages." *DISH Network L.L.C. v. Vicxon Corp.*, 923 F. Supp. 2d 1259, 1268 (S.D. Cal. 2013). Plaintiffs allege that Blue Shield violated the Act "[b]y intentionally installing Google Analytics and Meta Pixel on its website," which "enabled Google and Meta to intercept the contents of Plaintiffs' and Class members' highly sensitive, health related

1    electronic communications for use in targeted advertising without their consent." ¶ 7. Plaintiffs also

2    allege that Blue Shield violated the Act because it subsequently "disclosed the contents of

3    communications to Google and Meta without Plaintiffs' and Class members' authorization" and

4    "use[d] enrollees' PII and PHI for targeted advertising campaigns via Google Ads and on Facebook

5    and Instagram" in violation of 18 U.S.C. § 2511(1)(c)-(d). ¶¶ 185, 208, 211; *see Smith*, 2025 WL

6    2210002, at *11 (allegations that the defendant installed third-party interception code "to guide its

7    targeted advertisements" through the third party were sufficient to allege intentional use in violation

8    of § 2511(1)(d)); *In re Google Assistant Privacy Litig.*, 546 F. Supp. 3d 945, 960 (N.D. Cal. 2021)

9    ("The Wiretap Act also imposes liability on any person who 'intentionally discloses' to 'any other

10   person the contents of any wire, oral, or electronic communication,' or 'intentionally uses' the

11   'contents of any wire, oral or electronic communication' while 'knowing or having reason to know

12   that the information was obtained through the [unlawful] interception ….") (quoting 18 U.S.C. §

13   2511(1)(c)-(d)). The Ninth Circuit has explained that "[a]ny subsequent use of the recorded

14   conversation is governed not by the prohibition on interception, but by the prohibition in § 2511(c)

15   and (d) on the 'use' and 'disclos[ure]' of intercepted wire communications." *Noel v. Hall*, 568 F.3d

16   743, 749 (9th Cir. 2009).

17         Plaintiffs also allege that Blue Shield violated the prohibition against "anyone who

18   '*procures any other person* to intercept or endeavor to intercept" electronic communications. ¶ 6

19   (quoting 18 U.S.C. §2511(1)(a)); *see also* ¶ 194 ("Blue Shield intentionally procured Google and

20   Meta to intercept or endeavor to intercept Plaintiffs' and Class members' electronic

21   communications without their authorization or consent."). Blue Shield nevertheless asserts that the

22   Wiretap Act does not provide a private right of action based on "procurement." Mot. at 21. It is

23   wrong. In *Brown*, this Court recognized that the Act "provides a private right of action against any

24   person who 'intentionally intercepts, endeavors to intercept, *or procures any other person to*

25   *intercept* or endeavor to intercept, any wire, oral, or electronic communication." 685 F. Supp. 3d at

26   933 (quoting 18 U.S.C. § 2511(1)(a) and citing 18 U.S.C. § 2520 as "creating a private right of

27   action for Section 2511") (emphasis added). The Ninth Circuit has likewise recognized that the Act

28   "includes a private right of action, 18 U.S.C. § 2520, against anyone who … *procures any other*

1    *person* to intercept or endeavor to intercept, any wire, oral, or electronic communication." *Campbell*

2    *v. Facebook, Inc.*, 951 F.3d 1106, 1117 (9th Cir. 2020) (emphasis added).

3         Accordingly, numerous district courts throughout this Circuit have followed *Campbell* and

4    reiterated that § 2520 provides a private right of action for procuring another person to intercept

5    electronic communications. *See, e.g.*, *Tenet Healthcare Corp.*, 789 F. Supp. 3d at 848; *In re Google*

6    *Assistant Priv. Litig.*, 457 F. Supp. 3d at 814 (N.D. Cal. 2020)). Even Blue Shield concedes this

7    point elsewhere in its brief, acknowledging that a Wiretap Act claim "'requires a showing that,'

8    among other things, 'the defendant … intentionally … intercepted . . . or *procured another person*

9    *to intercept* … the contents of … an electronic communication ….'" Mot. at 17 (emphasis added).

10        Blue Shield relies on two out-of-circuit decisions and a handful of outdated district court

11   decisions to support its argument. Mot. at 22. *See, e.g.*, *In re Toys R Us, Inc. Privacy Litig.*, 2001

12   WL 34517252, at *6 (N.D. Cal. Oct. 9, 2001) (relying on *Peavy v. WFAA-TV*, 221 F.3d 158 (5th

13   Cir. 2000)); *In re Carrier IQ, Inc.,* 78 F. Supp. 3d 1051, 1090 (N.D. Cal. 2015) (relying on *Doe v.*

14   *GTE Corp.*, 347 F.3d 655 (7th Cir. 2003)). Those cases predate *Campbell* and reason that a minor

15   1986 amendment eliminated procurement-based liability from the private right of action. But other

16   courts have rejected that interpretation. As one explained, "the deletion of the procurement language

17   in § 2520(a) is of no moment given that the language remains in the underlying criminal statute."

18   *Boseovski v. McCloud Healthcare Clinic, Inc.*, 2020 WL 68578, at *6 (E.D. Cal. Jan. 7, 2020).

19        Rather, "the more natural reading of the amended statute shows no intent on the part of

20   Congress to eliminate the private right of action for procurement violations." *Lonegan v. Hasty*, 436

21   F. Supp. 2d 419, 428 (E.D.N.Y 2006). Section 2520 authorizes a civil action by "any person whose

22   wire, oral, or electronic communication is intercepted … in violation of this chapter" against "the

23   person or entity which engaged in that violation…." 18 U.S.C. § 2520(a). In turn, § 2511(1)(a)

24   defines violations of the Act to include communications that "are intercepted by someone who was

25   procured to do so by a third party." *Lonegan*, 436 F. Supp. 2d at 428. Thus, where a third party

26   procures another to intercept a communication, "both the person who actually intercepted the

27   communications and the person who procured the interception have violated the Act, and the victim

28   is authorized to sue any person or entity who engaged in that violation." *Id.*; *see also Boseovski*,

1    2020 WL 68578, at *6 (explaining that because procurement remains a violation of § 2511(1)(a), an

2    entity "may be civilly liable under § 2520(a) … if it violated the underlying criminal statute by way

3    of procurement."); *Q.J. v. PowerSchool Holdings, LLC*, 2025 WL 2410472, at *6 (N.D. Ill. Aug.

4    20, 2025) ("The statute does not specify any particular theory by which the 'person or entity' must

5    have violated the statute to be subject to civil liability, nor is the Court aware of any reason, textual

6    or otherwise, to read the statute in such a restrictive fashion.").

7         This understanding is confirmed by the statute's legislative history. *See Lonegan*, 436 F.

8    Supp. 2d at 428. ("Although the Senate report explains most of the statutory changes rendered by

9    the 1986 amendment in meticulous detail, it is silent concerning the portion of Section 2520 at issue

10   here, suggesting that the changes to that portion were cosmetic rather than substantive.") (citing S.

11   Rep. No. 95-797, at 26-27 (1986), as reprinted in 1986 U.S.C.C.A.N. 3555, 3580-81). "[T]he

12   legislative history supports the conclusion that Congress intended to streamline the language of the

13   provision by using the blanket phrase 'person or entity which engaged in that violation' rather than

14   delineating each kind of violation separately—but that it did not, in so doing, intend to eliminate

15   procurement violations from civil liability." *Id.*

16        Blue Shield offers no basis to disturb this Court's—or the Ninth Circuit's—recognition that

17   the Wiretap Act provides a private right of action against a defendant who procures another to

18   intercept electronic communications. *Brown*, 685 F. Supp. 3d at 933; *Campbell*, 951 F.3d at 1117.

### 4.    Plaintiffs Allege Their Communications Conveyed Content

20        Blue Shield next argues that Plaintiffs fail to allege the contents of their communications

21   were intercepted. But, as with its standing challenge, Blue Shield disregards the allegations in the

22   complaint and asks the Court to draw inferences in its favor rather than Plaintiffs'. Mot. at 22.

23        The Wiretap Act "broadly defines 'content' as that which 'includes any information relating

24   to the substance, purport, or meaning' of the communication at issue." *In re Google RTB Consumer

25   Priv. Litig.*, 606 F. Supp. 3d at 949. Plaintiffs allege that their communications conveyed extensive

26   substantive information, including their registration and login activity, searches for specialists and

27   providers, use of telehealth services, review of treatment options and prior-authorization

28   requirements, completion of online forms, payment for healthcare, and review of billing statements

1   and claim summaries. ¶¶ 124, 126-30, 139, 142-43, 154-60. Plaintiffs further allege that Google and

2   Meta intercepted these communications—including the symptoms they looked up, the doctors they

3   searched for, and the specialties and providers Plaintiffs selected (¶¶ 130, 145, 160), and associated

4   that information with unique identifiers, such as Plaintiffs' names (¶ 27), Facebook and Google

5   account IDs (¶¶ 134, 146, 164), and other identifying data (¶ 197). In short, Plaintiffs plausibly

6   allege that Google and Meta obtained detailed information concerning the "substance, import, or

7   meaning" of their communications.

8        Blue Shield characterizes Plaintiffs' allegations as "threadbare." Mot. at 24. But the pleading

9   standard does not require Plaintiffs to reveal highly sensitive health details in a complaint. Courts

10  routinely reject the argument that "[p]laintiffs need to identify specific, sensitive information that

11  [the defendant] collected" to plead a wiretapping claim. *Facebook Tracking Litig. I*, 956 F.3d at

12  603; *Byars v. Goodyear Tire & Rubber Co.*, 654 F. Supp. 3d 1020, 1027 (C.D. Cal. 2023). As the

13  court explained in the parallel state proceeding, "[e]ven under the more stringent federal pleading

14  standard, plaintiffs 'do not need to plead the specific and presumably highly sensitive contents of

15  the communications they say were intercepted in order to plausibly allege that interception

16  occurred.'" Polk Decl., Ex. A at 2 (quoting *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987,

17  1004 (N.D. Cal. 2024)). There is even less of a reason to require such details here when Blue Shield

18  has *admitted* in its Notice that the information Google intercepted constituted the contents of

19  enrollees' communications. ¶ 27. Plaintiffs plausibly allege that Meta intercepted similar

20  information. ¶¶ 62, 103-11.

21       Blue Shield argues that "browsing activity on a public website" cannot rise to the level of

22  "legally protected PII and PHI" where it "does not relate … 'to the past, present, or future physical

23  or mental health or condition of an individual.'" Mot. at 23. But Plaintiffs allege that the information

24  Google and Meta intercepted included the medical conditions Plaintiffs were experiencing and the

25  treatments they sought. ¶¶ 126-128, 141-143, 156-158. Numerous courts have recognized that such

26  information is medical information covered by HIPAA—which, in turn, qualifies as "content" under

27  the Wiretap Act. *See, e.g.*, *Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 967, 973 (S.D. Cal. 2023)

28  ("*Cousin II*"); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 793 (N.D. Cal. 2022); *Kane*

1  *v. Univ. of Rochester*, 2024 WL 1178340, at *6 (W.D.N.Y. Mar. 19, 2024); 45 C.F.R. § 160.103;

2  ¶¶ 23, 197 (Blue Shield has admitted it is covered by HIPAA). In the parallel state action, Blue Shield

3  raised—and the *Gianne* court rejected—the same argument under the analogous state wiretapping

4  law. Polk Decl., Ex. A at 2 (allegations that Blue Shield allowed Google Analytics to capture "search

5  terms for a desired specialty" and enrollees' attempts to "review 'medical claims, bills, and benefits'"

6  were "sufficient to identify the content at issue"); *see also Google RTB*, 606 F. Supp. 3d at 949 ("[T]he

7  meaning of 'contents' of a communication under CIPA is the same under the ECPA.").

8      As the state court recognized, even "browsing activity" constitutes "content" where, as here,

9  it conveys substantive information about a user's communications with a website. Polk Decl., Ex. A

10  at 3. This Court has likewise held that information identifying the section of a website or app a user

11  visited, the content on that page, and the keywords associated with it "fall within the definition of

12  content under the ECPA." *In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d at 949. For

13  example, a URL revealing that a user "was searching for updates on Russia's war against Ukraine

14  on the Washington Post's 'World' section" divulges "a user's personal interests, queries, and

15  habits"—and thus constitutes content under the Wiretap Act. *Brown*, 685 F. Supp. 3d at 936

16  (quoting *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1108 (9th Cir. 2014)). Unlike *Zynga*—Blue

17  Shield's principal authority—this information is not merely like the "outside of an envelope," but

18  instead reveals the contents of the communication itself. *Id.*; *see also Marden*, 2024 WL 4448684,

19  at *10 ("[I]nformation about [plaintiffs'] queries as to treatment for sensitive health issues … is

20  substantive content"); *Doe v. Meta Platforms*, 690 F. Supp. 3d at 1077 (finding URLs revealing

21  specific medical conditions constitute contents); *Cousin II*, 702 F. Supp. 3d at 976 (URLs that

22  include personal search queries such as "specialty healthcare providers and treatments for medical

23  conditions" can convey content); *Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 795 (selection of

24  information conveying a user's search or request constitutes content).

25      The same is true here. Plaintiffs allege that their browsing activities conveyed substantive

26  medical information to Meta and Google. They describe in detail how Blue Shield configured

27  Google Analytics and the Meta Pixel to capture the contents of Plaintiffs' form fills, searches, and

28  other site interactions, including information relating to medical symptoms, treatments and referrals.

¶¶ 101-11, 127-28, 143, 157-58. Blue Shield itself admitted that it disclosed personal medical information to Google, including insurance plan details, medical claim dates and providers, patient names, and financial responsibility. ¶ 27. Blue Shield's insistence that this is mere "record" information is contradicted by both Plaintiffs' well-pled allegations and controlling case law.

Blue Shield's authorities are readily distinguishable. Blue Shield stretches the holdings of *Bloomingdale's* and *Zynga* by ignoring Plaintiffs' allegations that it disclosed the contents of users' search queries and form fields—precisely the type of information the Ninth Circuit recognized constitutes content. *Compare Mikulsky v. Bloomingdale's, LLC*, 713 F. Supp. 3d 833, 845 (S.D. Cal. 2024) (no search terms) with *Zynga*, 750 F.3d at 1108 (distinguishing record information from search terms). Blue Shield's reliance on *Facebook Internet Tracking Litigation* fails for the same reason: that court disregarded *Zynga*'s careful distinction between record information and descriptive URLs revealing the communications' content. 140 F. Supp. 3d 922, 935 (N.D. Cal. 2015) ("*Facebook Tracking Litig. II*"). For that reason, most district courts in this Circuit have declined to follow *Facebook Tracking Litigation II*. *See, e.g.*, *Haleon US Inc.*, 2025 WL 2494368, at *11; *Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 795.

## V.    <u>CONCLUSION</u>

For these reasons, the Court should deny Blue Shield's motion to dismiss. If the motion is granted, Plaintiffs respectfully request leave to amend. *See Eminence Capital, LL v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).


DATED: December 30, 2025                     Respectfully submitted,

                                             By: */s/ Adam Polk*
                                             Adam Polk (SBN 273000)
                                             Trevor Tan (SBN 281045)
                                             Fatima Ladha (SBN 353675)
                                             **GIRARD SHARP LLP**
                                             601 California Street, Suite 1400
                                             San Francisco, California 94108
                                             Telephone: (415) 981-4800
                                             Facsimile: (415) 981-4846
                                             Email: apolk@girardsharp.com
                                             Email: ttan@girardsharp.com
                                             Email: fladha@girardsharp.com

By: */s/ Amber L. Schubert*
Robert C. Schubert (No. 62684)
Amber L. Schubert (No. 278696)
Daniel L.M. Pulgram (No. 354569)
**SCHUBERT JONCKHEER & KOLBE LLP**
2001 Union Street, Suite 200
San Francisco, CA 94123
Telephone: (415) 788-4220
Facsimile: (415) 788-0161
Email: rschubert@sjk.law
Email: aschubert@sjk.law
Email: dpulgram@sjk.law

*Interim Co-Lead Class Counsel*