TERESA C. CHOW (SBN 237694)
CIARA N. WESTBROOKS (SBN 348637)
**BAKER & HOSTETLER LLP**
1900 Avenue of the Stars, Suite 2700
Los Angeles, CA 90067-4301
Telephone:  (310) 820-8800
Facsimile:  (310) 820-8859
Emails:  *tchow@bakerlaw.com*
  *cwestbrooks@bakerlaw.com*

SEAN P. KILLEEN (SBN 320644)
**BAKER & HOSTETLER LLP**
600 Montgomery Street, Suite 3100
San Francisco, CA 94111
Telephone:  (415) 659-2600
Facsimile:  (415) 659-2601
Emails:  *skilleen@bakerlaw.com*

*Attorneys for Defendant*
California Physicians' Service
d/b/a Blue Shield of California

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**(OAKLAND DIVISION)**

| | |
|---|---|
| *In re Blue Shield of California Privacy Litigation*<br><br>This Document Relates To:<br><br>All Actions | Case No.: 4:25-cv-03209-YGR<br><br>**DEFENDANT CALIFORNIA PHYSICIANS' SERVICE d/b/a BLUE SHIELD OF CALIFORNIA'S REPLY IN SUPPORT OF MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>Date:  **February 17, 2026**<br>Time:  **2:00 p.m.**<br>Dept:  **Courtroom 1**<br><br>CCAC Filed:  September 29, 2025 |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ...................................................................................................... - 6 -

II. ARGUMENT ............................................................................................................. - 6 -

    A. Plaintiffs Lack Article III Standing ............................................................... - 6 -

        i. Allegations of collection of PII are devoid of any connection to Plaintiffs .............................................................................................. - 7 -

        ii. The allegedly disclosed data is not PHI ................................................ - 10 -

    B. Plaintiffs Fail to Adequately Allege a Wiretap Act Claim .............................. - 13 -

        i. Plaintiffs' Wiretap Act Claim is Barred Because Blue Shield Was a Party to Any Allegedly Intercepted Communication ............................ - 13 -

        ii. Plaintiffs Fail to Allege that Google or Meta Intercepted their PII or PHI While it was in Transit to Blue Shield's Website .......................... - 16 -

        iii. Blue Shield is Not Liable under the Wiretap Act ................................. - 17 -

III. CONCLUSION ......................................................................................................... - 19 -

- 2 -

DEFENDANT CALIFORNIA PHYSICIANS' SERVICE D/B/A BLUE SHIELD OF CALIFORNIA'S
REPLY IN SUPPORT OF MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO.: 4:25-CV-03209-YGR

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Hosp. Assn. v. Becerra*,
738 F. Supp. 3d 780 (N.D. Tex. 2024) ............................................................................. 11, 13

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024) ..................................................................................... 14

*Boseovski v. McCloud Healthcare Clinic, Inc.*,
No. 2:16-CV-2491-DMC, 2020 WL 68578 (E.D. Cal. Jan. 7, 2020) ...................................... 18

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) ..................................................................................... 17

*Campbell v. Facebook, Inc.*,
951 F.3d 1106 (9th Cir. 2020) ................................................................................................. 17

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) ..................................................................................... 17

*Castillo v. Costco Wholesale Corp.*,
No. 2:23-CV-01548-JHC, 2024 WL 4785136 (W.D. Wash. Nov. 14, 2024) .......................... 16

*Doe v. MKS Instruments, Inc.*,
No. SACV 23-00868-CJC, 2023 WL 9421115 (C.D. Cal. Nov. 3, 2023) ............................... 12

*Doe v. Tenet Healthcare Corp.*,
789 F. Supp. 3d 814 (E.D. Cal. 2025) ..................................................................................... 18

*Eisenhower Med. Ctr. v. Super. Ct.*,
172 Cal. Rptr. 3d 165 (Cal. App. 4th Dist. 2014) .................................................................... 12

*In re Facebook Privacy Litig.*,
791 F. Supp. 2d 705 (N.D. Cal. 2011) ..................................................................................... 13

*In re Google Asst. Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) ..................................................................................... 18

*In re Google RTB Consumer Priv. Litig.*,
606 F. Supp. 3d 935 (N.D. Cal. 2022) ....................................................................................... 9

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) ..................................................................................... 9

*Hartley v. Urb. Outfitters, Inc.*,
740 F. Supp. 3d 410 (E.D. Pa. 2024) ......................................................................................... 8

*Hazel v. Prudential Fin., Inc.*,
  No. 22-CV-07465-CRB, 2023 WL 3933073 (N.D. Cal. June 9, 2023) .................................. 16

*Hughes v. Vivint, Inc.*,
  No. CV 24-3081-GW-KSX, 2024 WL 5179916 (C.D. Cal. July 12, 2024) ............................ 8

*Katz-Lacabe v. Oracle Am., Inc.*,
  668 F. Supp. 3d 928 (N.D. Cal. 2023) ................................................................................ 15

*Khamooshi v. Politico LLC*,
  786 F. Supp. 3d 1174 (N.D. Cal. 2025) ................................................................................ 8

*Konop v. Hawaiian Airlines, Inc.*,
  302 F.3d 868 (9th Cir. 2002) .............................................................................................. 16

*Lakes v. Ubisoft, Inc.*,
  777 F. Supp. 3d 1047 (N.D. Cal. 2025) ................................................................... 14, 15, 16

*Licea v. Am. Eagle Outfitters, Inc.*,
  659 F. Supp. 3d 1072 (C.D. Cal. 2023) .......................................................................... 16, 17

*Lightoller v. Jetblue Airways Corp.*,
  No. 3:23-cv-00361-H-KSC, 2023 WL 3963823 (S.D. Cal. June 12, 2023) .......................... 9

*Mikulsky v. Bloomingdale's, LLC*,
  No. 3:23-cv-00425-L-VET, 2024 WL 337180 (S.D. Cal. Jan. 25, 2024) ............................ 10

*Mikulsky v. Noom, Inc.*,
  682 F. Supp. 3d 855 (S.D. Cal. 2023) ................................................................................... 8

*Nienaber v. Overlake Hosp. Med. Ctr.*,
  No. 2:23-CV-01159-TL, 2025 WL 692097 (W.D. Wash. Mar. 4, 2025) ............................ 14

*Pena v. GameStop, Inc.*,
  670 F. Supp. 3d 1112 (S.D. Cal. 2023) ............................................................................... 14

*Popa v. Microsoft Corp.*,
  153 F.4th 784 (9th Cir. 2025) .................................................................................. 7, 10, 12

*Riganian v. LiveRamp Holdings, Inc.*,
  791 F. Supp. 3d 1075 (N.D. Cal. 2025) ......................................................................... 15, 16

*Rodriguez v. Google LLC*,
  No. 20-CV-04688-RS, 2021 WL 2026726 (N.D. Cal. May 21, 2021) ................................ 15

*Rodriguez v. Google LLC*,
  No. 20-CV-04688-RS, 2022 WL 214552 (N.D. Cal. Jan. 25, 2022) ................................... 16

*Smith v. Facebook, Inc.*,
  262 F. Supp. 3d 943 (N.D. Cal. 2017) ................................................................................ 11

*Smith v. Facebook, Inc.*,
  745 Fed. Appx. 8 (9th Cir. 2018) ............................................................................................... 11

*Smith v. Rack Room Shoes, Inc.*,
  No. 24-CV-06709-RFL, 2025 WL 1085169 (N.D. Cal. Apr. 4, 2025) ............................. 18, 19

*Sussman v. Am. Broad. Companies, Inc.*,
  186 F.3d 1200 (9th Cir. 1999) .................................................................................................. 14

*In re Toys R Us, Inc., Priv. Litig.*,
  No. 00-CV-2746, 2001 WL 34517252 (N.D. Cal. Oct. 9, 2001) ............................................. 17

*Wilson v. Rater8, LLC*,
  No. 20-CV-1515-DMS-LL, 2021 WL 4865930 (S.D. Cal. Oct. 18, 2021) ............................. 12

*Zarif v. Hwareh.com, Inc.*,
  789 F. Supp. 3d 880 (S.D. Cal. 2025) ....................................................................................... 13

**Statutes**

18 U.S.C. § 2511(1)(a) .................................................................................................................. 17, 18

18 U.S.C. § 2511(2)(d) ........................................................................................................................ 13

18 U.S.C. § 2511(4) ............................................................................................................................ 17

18 U.S.C. § 2511(5) ............................................................................................................................ 17

18 U.S.C. § 2520(a) ...................................................................................................................... 17, 18

**Other Authorities**

45 C.F.R. § 160.103 ............................................................................................................................ 11

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Plaintiffs' Opposition to Defendant California Physicians' Service d/b/a Blue Shield of California's ("Blue Shield" or "Defendant") Motion to Dismiss ("Opposition" or "Opp.") offers no valid basis for Plaintiffs' claims to survive. Blue Shield's Motion should be granted, and the Complaint dismissed with prejudice.

*First*, Plaintiffs still cannot establish Article III standing. In their Opposition, Plaintiffs merely restate their conclusory allegation that "Blue Shield unlawfully disclosed their medical information." Plaintiffs do not identify the factual basis for this allegation, relying instead on the theoretical disclosure of an anonymous "user's" search terms on Blue Shield's "find a doctor" search page. Plaintiffs do not identify any actionable disclosure of personal information analogous to any harm traditionally recognized as the basis for a lawsuit, including intrusion upon seclusion or public disclosure of private facts.

*Second*, Plaintiffs' Wiretap Act claim remains deficient. Blue Shield was a party to the alleged communications and thus exempt under the statute's one-party consent rule. Data collection for the purpose of targeted advertising does not trigger the crime-tort exception, and Plaintiffs' Opposition fails to allege the requisite intent for liability. Moreover, Plaintiffs allege no interception of "contents," no contemporaneous transmission, and no facts showing Blue Shield itself intercepted communications. The Wiretap Act creates a private right of action only against direct interceptors, not entities embedding third-party code.

For these reasons, and those stated in Blue Shield's Motion, the Complaint should be dismissed with prejudice.

### II. ARGUMENT

#### A. Plaintiffs Lack Article III Standing.

Plaintiffs' Opposition confirms that they cannot establish standing under Article III. Rather than identifying a concrete injury, Plaintiffs' arguments rely on their vague and conclusory allegations that Blue Shield "disclosed their medical information." Opp. 9. Plaintiffs' Opposition does not factually allege any injury with "a 'close relationship' to a harm 'traditionally' recognized

as providing a basis for a lawsuit in American courts," i.e., "a close historical or common-law analogue for their asserted injury," as required by the Ninth Circuit to confer standing. *Popa v. Microsoft Corp.*, 153 F.4th 784, 789 (9th Cir. 2025).

In their Opposition, Plaintiffs argue that they sufficiently alleged a concrete injury based on "the disclosure of sensitive PHI and PII." Opp. 7. Plaintiffs claim that they "allege in detail the specific medical information that Blue Shield collected and disclosed to Google and Meta through tracking technologies," citing thirty-three paragraphs from their Complaint in support. Opp. 9 (citing Compl. ¶¶ 48, 51-54, 65-6, 79-104). But on closer examination, these paragraphs only serve one of three functions: describing how, from the "find a doctor" page on the Blue Shield website or the site's search bar, a **hypothetical** user's theoretical search parameters and terms **could** be disclosed to third parties, Compl. ¶¶ 51-54; 103-104; describing how cookies can be used by a website to remember information about user's device and browser, Compl. ¶¶ 65-66; 79-102; or the simple fact that when a user is logged into Blue Shield's website, the website is aware of the user's status as an enrollee, Compl. ¶ 48. Across these thirty-three paragraphs, there is no description of how or whether *Plaintiffs'* information or anyone's *medical information* was disclosed.

For example, Plaintiffs manufacture an example wherein "an enrollee" clicks on the "Obstetrics/Gynecology" button on the "search doctors" landing page, purporting to show that Meta automatically received this button click data. Compl. ¶ 103. Elsewhere, they claim that when a "user" searches for "mental health" and "child psychiatry," Google collects this search, along with the user's health plan type and zip code (although notably, not the user's name). Compl. ¶ 51. These examples fail to establish a concrete privacy injury for two reasons: 1) they are devoid of any connection to Plaintiffs; and 2) they do not involve any protected health information.

> **i.    Allegations of collection of PII are devoid of any connection to Plaintiffs.**

The "enrollee" and "user" in Plaintiffs' Complaint are not Plaintiffs; their identities are unknown. Allegations specific to Plaintiffs Kahn, Markovitz, and Reiman are limited to paragraphs 123-167 of the Complaint, and they are devoid of any factual allegations regarding what "intimate and sensitive health data" Plaintiffs communicated to Blue Shield, or how this data was

- 7 -

DEFENDANT CALIFORNIA PHYSICIANS' SERVICE D/B/A BLUE SHIELD OF CALIFORNIA'S
REPLY IN SUPPORT OF MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO.: 4:25-CV-03209-YGR

communicated in such a way as to be "automatically sent to Google." Compl. ¶¶ 126, 130. "[A]llegations of what a technology is merely capable of collecting do not equate to sufficient allegations of what that technology actually collected." *Hartley v. Urb. Outfitters, Inc.*, 740 F. Supp. 3d 410, 422 (E.D. Pa. 2024); *Hughes v. Vivint, Inc.*, No. CV 24-3081-GW-KSX, 2024 WL 5179916, at *4 (C.D. Cal. July 12, 2024) (finding no standing where plaintiff did not specify the actual information collected and only alleged what information software "could" capture).

Plaintiffs argue that their "search inputs and selections" revealed their "sensitive PHI," but this allegation is conclusory, unsupported by any details to explain how search inputs and selections constitute "sensitive PHI." Opp. 9. All three Plaintiffs claim they used the "find a doctor" feature to search for in-network providers, but none explain the contents of their searches, or what qualities of these searches rendered the search terms "intimate and sensitive health data." Compl. ¶¶ 127, 142, 156. And nowhere in the Complaint do Plaintiffs allege that the purported "tracking technologies" had the capability to capture the other activities Plaintiffs alleged they engaged in on Blue Shield's website, such as registering for an account, using telehealth services, completing online forms, making payments, reviewing billing statements or claim summaries, or searching for member discounts. Compl. ¶¶ 127, 142, 156. Likewise, Plaintiffs do not explain what information they provided during these activities, leaving their allegations that their data was collected entirely vague as to the type of information allegedly collected. Without more, an allegation that Blue Shield disclosed Plaintiffs "intimate and sensitive health data" is insufficient to confer standing. *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 864 (S.D. Cal. 2023) (Dismissing complaint for lack of standing because "Plaintiff's conclusory allegation that she disclosed 'personal information' does not allow the Court to determine whether Plaintiff has a protectable privacy interest in that information.").

Courts routinely reject such vague and conclusory allegations, holding that far more detail than Plaintiffs provided in the Complaint is required to determine whether a protectable privacy interest has been alleged. *See, e.g., Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174, 1179 (N.D. Cal. 2025) ("Plaintiffs also allege that Defendant disclosed their 'browser and device data' and 'other identifying information' . . . but fail to provide any more detail. Those allegations are ***too vague to assert a protectable privacy interest***.") (emph. added); *Hughes v. Vivint, Inc.*, No. CV 24-

- 8 -

DEFENDANT CALIFORNIA PHYSICIANS' SERVICE D/B/A BLUE SHIELD OF CALIFORNIA'S
REPLY IN SUPPORT OF MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO.: 4:25-CV-03209-YGR

3081-GW-KSX, 2024 WL 5179916, at *4-5 (C.D. Cal. July 12, 2024) ("Plaintiff's Complaint is vague as to many, if not all, of the details surrounding her use of the Website and what specific information was captured by the TikTok Software… As Plaintiff does not clearly allege what personalized information of hers was actually collected, she does not identify any harm to her privacy."); *Lightoller v. Jetblue Airways Corp.*, No. 3:23-cv-00361-H-KSC, 2023 WL 3963823, at *4 (S.D. Cal. June 12, 2023) (finding "Plaintiff has failed to adequately allege that she suffered any concrete harm that bears a close relationship to the right to control personal information" when alleging "that while visiting Defendant's website, her communications were monitored, recorded, and collected" and Defendant could "intercept and record a website visitor's electronic communications, including her mouse movements, clicks, keystrokes (such as text being entered into an information field or text box), URLs of webpages visited, and/or other electronic communications in real-time").

In their Opposition, Plaintiffs cite two cases to support their argument that at the pleading stage, it is reasonable to infer that Defendant collected Plaintiff's data based on allegations of how the technology at issue functions. Opp. 10 (citing *In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d 935 (N.D. Cal. 2022); *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024 (S.D. Cal. 2023)). As the court explained in *Kochava,* there is "no standing if Plaintiff fails to allege that Defendant collected his data." 684 F. Supp. 3d at 1038. But, in that case, plaintiff's injury was based on the collection of geolocation data, and plaintiff alleged that he carried a device which surreptitiously operated geolocation tracking technology. *Id.* Likewise, plaintiff in *In re Google RTB Consumer Priv. Litig.*'s injury was based on defendant's use of real time bidding (a process through which defendant "solicits participants to bid on sending an ad to a specific individual," typically placed on online audio-visual materials), and plaintiffs did indeed allege they viewed online audio-video materials "from publishers from which plaintiffs allege, on information and belief, that Google sold and shared plaintiffs' personal information through [real-time bidding.]" 606 F. Supp. 3d at 939, 943.

On the other hand, Plaintiffs in this case base their injury on the disclosure of "intimate and sensitive health data" in the form of their "search inputs and selections" while omitting any

explanation of how their search inputs constituted intimate or sensitive health data. At bottom, Plaintiffs' reliance on hypotheticals and speculation to show that their medical information was disclosed by Google Analytics or Meta is insufficient establish an injury in fact.

### ii. The allegedly disclosed data is not PHI.

Plaintiffs attempt to distinguish from *Popa* on the basis that "[t]he *Popa* plaintiff could not identify any 'embarrassing, invasive, or otherwise private information' that was collected about her visiting a pet supplies website so did 'not m[e]et her burden to demonstrate that she ha[d] standing' because her alleged injuries were not sufficiently analogous to the common law torts of intrusion upon seclusion and public disclosure of private facts." Opp. 8 (citing 153 F.4th at 791). However, like plaintiff in *Popa,* Plaintiffs fail to establish that a user's search inputs are "embarrassing, invasive, or otherwise private" such that their disclosure constitutes an injury with "a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts. *Popa*, 153 F.4th at 790 (9th Cir. 2025).

Instead, Plaintiffs' allegations are limited to the claim that the "tracking technologies" captured the search terms they inputted (without providing any details on the search terms themselves): searches they may have made on behalf of themselves or others, which may or may not have been made for the purpose of receiving treatment, and which may or may not have led to the receipt of any medical services, or the diagnosis or treatment of any conditions. In light of this omission, Plaintiffs are both without standing and unable to allege an essential element of their wiretapping claim: that a *communication* was disclosed. *See Mikulsky v. Bloomingdale's, LLC*, No. 3:23-cv-00425-L-VET, 2024 WL 337180, at *7 (S.D. Cal. Jan. 25, 2024) ("button clicks, mouse movements, scrolling, resizing, touches (for mobile browsers), key presses, page navigation" were "more akin to the 'record' information that the Ninth Circuit has held not to be contents" for the purpose of alleging a Wiretap Act claim).

In their Opposition, Plaintiffs cite to the HIPAA Privacy Rule to support their argument that "health information is especially sensitive." Opp. 8. However, Plaintiffs do not allege that information protected by the Privacy Rule was disclosed. Plaintiffs do not allege their search terms were "created or received by a health care provider;" nor do they allege with any specificity that

- 10 -

DEFENDANT CALIFORNIA PHYSICIANS' SERVICE D/B/A BLUE SHIELD OF CALIFORNIA'S
REPLY IN SUPPORT OF MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO.: 4:25-CV-03209-YGR

the webpages they visited and search terms they entered relate to their "the past, present, or future physical or mental health or condition of an individual." *Id.* (citing 45 C.F.R. § 160.103). Still, Plaintiffs argue that the webpages they viewed and the search terms they entered, combined with allegedly identifying information such as IP addresses, constitute "intimate and sensitive health data." Compl. ¶ 126. But as federal courts have explained, just because in individual makes a search on a website about a health condition (such as a search on Blue Shield's "find a doctor" webpage), a court cannot infer that the individual has that health condition. *See Am. Hosp. Assn. v. Becerra*, 738 F. Supp. 3d 780, 803 (N.D. Tex. 2024) ("Identity (Person A) + Query (Condition B) ≠ [individually identifiable health information] (Person A has Condition B)"). As a result, the contents of an individual's search, despite being about a medical condition or treatment, is not, in and of itself, health information under HIPAA. "Without knowing information that's never received—i.e., the visitor's subjective motive—the resulting metadata could never identify that individual's PHI." *Id.*

The Northern District of California is in accord. In *Smith v. Facebook, Inc.*, the Northern District of California explained that although plaintiffs alleged Facebook collected URLs which "point to pages containing information about treatment options for melanoma, information about a specific doctor, search results related to the phrase 'intestine transplant,' a wife's blog post about her husband's cancer diagnosis, and other publicly available medical information," because these pages "contain general health information that is accessible to the public at large," the collection of this data did not relate to "the past, present, or future physical or mental health or condition of an individual." 262 F. Supp. 3d 943, 954-55 (N.D. Cal. 2017) ("*Smith I*"). In affirming *Smith I*, the Ninth Circuit stated that "[i]nformation available on publicly accessible websites stands in stark contrast to the personally identifiable patient records and medical histories protected by [HIPAA]—information that unequivocally provides a window into an individual's personal medical history." *Smith v. Facebook, Inc.*, 745 Fed. Appx. 8 (9th Cir. 2018). This is because "[t]he data show only that Plaintiffs searched and viewed publicly available health information that cannot, in and of itself, reveal details of an individual's health status or medical history." *Id.* Likewise, here,

Plaintiffs' allegations that they searched for physicians on a publicly accessible tool does not reveal any details of their medical information.

And, Plaintiffs' allegations that they researched doctors on Blue Shield's website reveals nothing about Plaintiffs' actual medical history, because "the mere fact that a person may have been a patient" is not itself medical information. *Eisenhower Med. Ctr. v. Super. Ct.*, 172 Cal. Rptr. 3d 165 (Cal. App. 4th Dist. 2014). Plaintiffs' allegations are flimsier than those in *Eisenhower*: Plaintiffs merely alleged that they *searched* for a doctor; whether they ever booked an appointment or received treatment is completely unknown. At bottom, Plaintiffs' searches on Blue Shield's "find a doctor" page are not medical information. *See Doe v. MKS Instruments, Inc.*, No. SACV 23-00868-CJC (KESX), 2023 WL 9421115, at *2 (C.D. Cal. Nov. 3, 2023) (Allegation that plaintiff gave defendant "medical information" including "information about disabilities, health and medical conditions," without specific details of what information defendant possessed, was not sufficient to allege defendant possessed plaintiff's medical information); *Wilson v. Rater8, LLC*, No. 20-CV-1515-DMS-LL, 2021 WL 4865930, at *5 (S.D. Cal. Oct. 18, 2021) (name, phone number, treating physician names, treatment appointment information and discharge dates and times did not constitute "medical information").[1]

Because Plaintiffs do not provide any facts to support their conclusory allegation that Defendant disclosed their "protected health information," and likewise do not describe any other "intimate and sensitive health data" they provided to Defendant on its webpages, Plaintiffs do not identify any alleged injury with "a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts," and therefore allege no injury sufficient to confer standing. *Popa*, 153 F.4th at 789 (9th Cir. 2025).

---

[1] These holdings from *Eisenhower, MKS Instruments,* and *Rater8* were each made in the context of determining whether plaintiffs had adequately pled their medical information was disclosed as required to state a claim for breach of the Confidentiality of Medical Information Act ("CMIA"). Although Plaintiffs do not bring a CMIA claim, Blue Shield cites to these cases now in support of its argument that Plaintiffs lack Article III standing because Plaintiffs have based their argument for standing on their conclusory allegation that Blue Shield disclosed their health information, which they argue constitutes an infringement of a traditional privacy interest. Opp. 8.

### B. Plaintiffs Fail to Adequately Allege a Wiretap Act Claim.

In their Opposition, Plaintiffs fail to demonstrate how they pled each of the required elements of a Wiretap Act claim. As explained above, Plaintiffs do not allege the "contents" of their communications were disclosed. And, as discussed below, Plaintiffs cannot allege that there was any interception that was 1) without consent, 2) contemporaneous with transmission, and 3) by Blue Shield.

#### i. Plaintiffs' Wiretap Act Claim is Barred Because Blue Shield Was a Party to Any Allegedly Intercepted Communication.

The Wiretap Act does not make it unlawful for someone to "intercept ... [an] electronic communication where such person is a party to the communication." 18 U.S.C. § 2511(2)(d)) (*see also In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705, 713 (N.D. Cal. 2011) (Because "the communication at issue is one from a user to Defendant, Defendant cannot be liable under the Wiretap Act for divulging it."). In their Opposition, Plaintiffs argue that Defendant did not bear its burden of showing that it "was a party to the communication," Opp. 13, despite Plaintiffs' Complaint's frequent allegations that Plaintiffs' communications were "with Blue Shield." *See* Compl. ¶¶ 32, 102, 121, 134, 135, 149, 150, 164, 165, 170, 176(c), 195, 199.

Plaintiffs next attempt to invoke the crime-tort exception, reasoning that "Blue Shield used Plaintiffs' intercepted data for targeted advertising in violation of HIPAA and Plaintiffs' reasonable expectation of privacy under common law and the California Constitution." Opp. at 13. This argument fails for several reasons.

First, as explained in the prior section, Plaintiffs do not allege that any of the information Blue Shield allegedly disclosed was "Health Information" as defined by HIPAA. *See Becerra*, 738 F. Supp. 3d 780, 803 (finding that the combination of an individual's IP address with record of their visit to a healthcare-related webpage is not protected health information under HIPAA). Accordingly, Plaintiffs' allegations are more similar to those in the myriad of California cases where the court held that where the communications were transmitted to third parties "'for purposes of targeting advertising to [d]efendant's California website users'" such allegations were "insufficient to implicate the crime-tort exception." *Zarif v. Hwareh.com, Inc.*, 789 F. Supp. 3d 880, 896 (S.D. Cal. 2025) (dismissing Wiretap Act claim); *see also Pena v. GameStop, Inc.*, 670 F.

- 13 -

DEFENDANT CALIFORNIA PHYSICIANS' SERVICE D/B/A BLUE SHIELD OF CALIFORNIA'S
REPLY IN SUPPORT OF MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO.: 4:25-CV-03209-YGR

Supp. 3d 1112, 1120 (S.D. Cal. 2023) ("Here, while Plaintiff alleges that Defendant engaged in the allegedly illegal interception of his and the proposed class members' communications 'in order to create transcripts that could be shared with third parties to analyze to extract key words for marketing an[d] other purposes' … Plaintiff does not allege that this purpose constitutes independently illegal or actionable conduct such that the party exception is inapplicable.").

Second, Courts in the Ninth Circuit have refused to apply the crime-tort exception **even where plaintiffs alleged the interception violated HIPAA**. *See Nienaber v. Overlake Hosp. Med. Ctr.*, No. 2:23-CV-01159-TL, 2025 WL 692097, at *13 (W.D. Wash. Mar. 4, 2025) (dismissing Wiretap Act claim with prejudice despite plaintiff's allegation that her communications were intercepted in violation of "HIPAA's criminal prohibitions against disclosing 'individually identifiable health information' without authorization" because plaintiff failed to plead "a tortious or criminal use of the acquired communications separate from their recording, interception, or transmission"). Likewise, in *B.K. v. Eisenhower Med. Ctr.*, the court found the crime-tort exception inapplicable despite plaintiffs' allegation that defendant disclosed their medical information for commercial advantage in violation of the CMIA, because plaintiffs failed to allege that purpose "constitute[d] independently illegal or actionable conduct." 721 F. Supp. 3d 1056, 1065 (C.D. Cal. 2024)

Plaintiffs further argue that the crime-tort exception applies because Defendant's conduct violated the California Invasion of Privacy Act and the CMIA, as alleged in *Gianne v. California Physicians' Service*, Case No. 24CV071744 (Alameda Cty. Super. Ct.). But, "Plaintiffs cannot assert the crime-tort exception simply by arguing that Defendant's conduct was illegal or tortious." *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1057 (N.D. Cal. 2025) (citing *Sussman v. Am. Broad. Companies, Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999)). "[T]he focus is not upon whether the interception itself violated another law; it is upon whether the purpose for the interception—its intended use—was criminal or tortious." *Id.* (citing *Sussman*, 186 F.3d at 1202).

Indeed, Plaintiffs actually allege the opposite of a tortious or illegal purpose, claiming that Blue Shield intercepted their communications "for targeted advertising and marketing purposes." Compl. ¶¶ 136, 151, 166. The Northern District of California has recently held that where "purpose

of the interception was not 'to perpetuate torts on millions of Internet users, but to make money,'" the crime-tort exception to the party-exception is not satisfied. *Lakes*, 777 F. Supp. 3d at 1058; *see also Rodriguez v. Google LLC*, No. 20-CV-04688-RS, 2021 WL 2026726, at *6 n. 8 (N.D. Cal. May 21, 2021) ("crime-tort exception to the Wiretap Act's consent defense[]… only where the primary motivation or a determining factor in the interceptor's actions has been to injure plaintiffs tortiously, ... [and] cannot apply where the interceptor's purpose has plainly not been to perpetuate torts on millions of Internet users, but to make money." (internal citations and quotations omitted)).

Plaintiffs' attempt to invoke the crime-tort exception "require[es] them to plead sufficient facts to show that 'the primary motivation or a determining factor in the interceptor's actions has been to injure plaintiffs tortiously,' does not apply to a case such as this, where Defendant's 'purpose has plainly not been to perpetuate torts on millions of Internet users, but to make money.'" *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023) (citing *Rodriguez*, 2021 WL 2026726, at *6 n.8). Plaintiffs attempt to distinguish from *Katz-Lacabe* by reasoning that "Plaintiffs here do not merely allege that Blue Shield sought to 'make money' in isolation; they plead that Blue Shield committed a HIPAA violation." Opp. 17. Plaintiffs make the same argument in an attempt to distinguish from *Lakes v. Ubisoft, Inc. Id.* As addressed above, Plaintiffs have not alleged sufficient information to plausibly allege that Defendant committed a HIPAA violation. And, in both *Katz-Lacabe* and *Lakes*, plaintiffs alleged defendants' alleged tracking activities violated other state statutes, and nonetheless, the courts concluded that the crime-tort exception did not apply and dismissed plaintiff's Wiretap Act claims. *See Katz-Lacabe,* 668 F. Supp. 3d at 938 (alleging violations of California Constitution, CIPA, and California's Unfair Competition law); *Lakes*, 777 F. Supp. 3d 1047 (alleging violations of the Video Privacy Protection Act).

Plaintiffs' reliance on *Riganian v. LiveRamp Holdings, Inc*., 791 F. Supp. 3d 1075 (N.D. Cal. 2025), is misplaced. In that case, the court refused to "adopt any 'bright-line rule insulating financial motives from the crime-tort exception'" where plaintiff alleged that defendant operated a digital marketplace  where "LiveRamp's clients bought and sold 'segments' of digital identifiers associated with people with cancer, union members, Muslims, Jewish people, African Americans, poor people, payday loan prospects, online gamblers, unemployed individuals who were 'seen at

clinics/hospitals' and users of the LGBT dating app Grindr." *Id.* at 1082, 1091 (citing *Castillo v. Costco Wholesale Corp.*, No. 2:23-CV-01548-JHC, 2024 WL 4785136, at *6 (W.D. Wash. Nov. 14, 2024)). Plaintiffs' speculative and conclusory allegations do not rise to such a level. Accordingly, this Court should hold with the courts which have concluded that the crime-tort exception does not apply where the purpose of the alleged interception "was not 'to perpetuate torts on millions of Internet users, but to make money.'" *Lakes,* 777 F. Supp. 3d at 1058 (N.D. Cal. 2025).

    ii. **Plaintiffs Fail to Allege that Google or Meta Intercepted their PII or PHI While it was in Transit to Blue Shield's Website.**

By Plaintiffs' own admission, when interpreting the Wiretap Act, the Northern District of California "define[s] 'interception' narrowly: for data to be 'intercepted,' 'it must be acquired during transmission, not while it is in electronic storage.'" *Hazel v. Prudential Fin., Inc.*, No. 22-CV-07465-CRB, 2023 WL 3933073, at *2 (N.D. Cal. June 9, 2023) (citing *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002)). Plaintiffs attempt to sidestep this standard by pointing to their conclusory allegations: they use the language "contemporaneously," "in real time," and "prior to entering electronic storage" to describe Google and Meta's alleged activities. Opp. 18. But this conclusory language does not change that the *process* Plaintiffs describe does not meet the definition of interception. *See Rodriguez v. Google LLC*, No. 20-CV-04688-RS, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022) ("Using the word "intercept" repeatedly is simply not enough without the addition of specific facts that make it plausible Google is intercepting their data in transit."); *Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1084 (C.D. Cal. 2023) (allegation that a third party "secretly intercepts (during transmission and in real time)" is "conclusory and does not allege specific facts as to how or when the interception takes place").

As the court explained in *Rodriguez,* a description of "how Google records data and then subsequently transmits it," is not a description of an interception. 2022 WL 214552, at *2. "When Plaintiffs do describe the process, they describe misuse of a recording, not interception: Google logs the data, and sends a second copy to itself, even when it is not supposed to." *Id.* Likewise, in *Licea,* the Court explained that the allegation that a third-party "covertly embedded code into its chat feature that automatically intercepts, records, and creates transcripts of all [] conversations"

- 16 -

DEFENDANT CALIFORNIA PHYSICIANS' SERVICE D/B/A BLUE SHIELD OF CALIFORNIA'S
REPLY IN SUPPORT OF MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO.: 4:25-CV-03209-YGR

1  was insufficient to show that messages were "intercepted while in transit." 659 F. Supp. 3d at 1076,
2  1084. The process Plaintiffs allege is the same: Google and Meta use embedded code to record data
3  (Plaintiffs' search parameters and terms), Compl. ¶¶ 53-54, 103, and then sends a copy to itself, to
4  use for "its own purposes, including to provide advertising," Compl. ¶¶ 61, 113. Accordingly,
5  Plaintiffs' allegations are insufficient to demonstrate that their data was intercepted during
6  transmission.

### iii. Blue Shield is Not Liable under the Wiretap Act.

While under 18 U.S.C. § 2511(1)(a), (4), and (5), any person who "procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication" "shall be fined under this title or imprisoned not more than five years" or "shall be subject to suit by the Federal Government in a court of competent jurisdiction," 18 U.S.C. § 2520(a) only creates a private right of action against those who intercept, disclose, or intentionally used communications in violation of the Wiretap Act. The Northern District of California has held that 18 U.S.C. § 2520(a), under which Plaintiffs bring their Wiretap Act claim, "does not provide a cause of action against aiders and abetters, and, accordingly, that plaintiffs may not proceed [] on such theory." *In re Toys R Us, Inc., Priv. Litig.*, No. 00-CV-2746, 2001 WL 34517252, at *7 (N.D. Cal. Oct. 9, 2001); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1088 (N.D. Cal. 2015) ("Plaintiffs have failed to cite any case that would support the imposition of Wiretap Act liability on a party who merely provided a means through which a third party subsequently intercepts communications"). In their Opposition, Plaintiffs misleadingly suggest that *In re Toys R Us* and *In re Carrier IQ* are "outdated." Opp. 21. In support, Plaintiffs cite two cases for the proposition that the Wiretap Act "provides a private right of action against any person who 'intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." *Id.* at 20 (citing *Brown v. Google LLC*, 685 F. Supp. 3d 909 (N.D. Cal. 2023); *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1117 (9th Cir. 2020)). But neither case makes such a pronouncement.

It is true that both *Brown* and *Campbell* quote the "procurement" language of § 2511 and suggest that § 2520 creates a private right of action for all violations of § 2511. However, in neither

case is this suggestion of any consequence, because in both cases, plaintiffs brought allegations against the entities (Google and Facebook) who plaintiffs allege were directly responsible for the interceptions. Neither case required the courts to actually find that a plaintiff has a private right of action against an entity who "procure[d] any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(a). Likewise, in *In re Google Asst. Priv. Litig.*, 457 F. Supp. 3d 797 (N.D. Cal. 2020) and *Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814 (E.D. Cal. 2025), the courts make passing comments that the Wiretap Act provides a private right of action where any person "intercepts, endeavors to intercept, or procures any other person to intercept," citing 18 U.S.C. § 2511(1)(a), but in neither case does the defendant raise the argument, as Defendant does here, that the private right of action codified in § 2520 makes no mention of procurement.

At bottom, no Ninth Circuit case cited by Plaintiffs disrupts the finding of *In re Toys R Us* or *In re Carrier IQ.* Quite the contrary, *In re Toys R* has been cited recently by the Northern District of California to support its conclusion that "Plaintiffs' claim that [defendant] violated the Wiretap Act when it 'procured' [third parties] to intercept communication fails as a matter of law." *Smith v. Rack Room Shoes, Inc.*, No. 24-CV-06709-RFL, 2025 WL 1085169, *7 (N.D. Cal. Apr. 4, 2025).

The single Ninth Circuit case Plaintiff cites which actually reasons and concludes that § 2520(a) provides a private right of action in cases of procurement rests on the reasoning that "Defendant has not cited any in-circuit authority, and the court is aware of none, which [concludes that] the 1986 amendments to § 2520(a) limit the possible class of defendants in a civil action arising from violation of § 2511(1)(a). *Boseovski v. McCloud Healthcare Clinic, Inc.*, No. 2:16-CV-2491-DMC, 2020 WL 68578, at *6 (E.D. Cal. Jan. 7, 2020). *Boseovski* is easily distinguished: Defendant here points to *In re Toys R Us, Rack Room Shoes,* and *In re Carrier IQ, Inc.* as in-circuit authority which stand for the proposition that the Northern District of California "is in agreement with the majority of courts that have found that defendants cannot be liable under section 2520 for 'procuring' an interception, because in 1986 Congress amended the section to remove the phrase 'or procures any other person to intercept, disclose, or use such communications' as a basis for civil

liability." *Rack Room Shoes, Inc.*, 2025 WL 1085169, at *7. Accordingly, Plaintiffs can state no claim against Blue Shield for violation of the Wiretap Act.

### III. CONCLUSION

Because amendment would be futile, Blue Shield respectfully asks the Court dismiss Plaintiffs' Complaint with prejudice.

Dated: January 30, 2026     Respectfully submitted,

**BAKER & HOSTETLER LLP**

By:  */s/ Teresa C. Chow*
     Teresa C. Chow
     Ciara N. Westbrooks
     Sean P. Killeen

     *Attorneys for Defendant*
     California Physicians' Service
     d/b/a Blue Shield of California