TERESA C. CHOW (SBN 237694)
CIARA N. WESTBROOKS (SBN 348637)
**BAKER & HOSTETLER LLP**
1900 Avenue of the Stars, Suite 2700
Los Angeles, CA 90067-4301
Telephone: (310) 820-8800
Facsimile: (310) 820-8859
Emails: *tchow@bakerlaw.com*
*cwestbrooks@bakerlaw.com*

SEAN P. KILLEEN (SBN 320644)
**BAKER & HOSTETLER LLP**
600 Montgomery Street, Suite 3100
San Francisco, CA 94111
Telephone: (415) 659-2600
Facsimile: (415) 659-2601
Emails: *skilleen@bakerlaw.com*

*Attorneys for Defendant*
California Physicians' Service d/b/a Blue Shield of California

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**(OAKLAND DIVISION)**

*In re Blue Shield of California Privacy Litigation*

This Document Relates To:

All Actions

Case no.: 4:25-cv-03209-YGR

**DEFENDANT CALIFORNIA PHYSICIANS' SERVICE d/b/a BLUE SHIELD OF CALIFORNIA'S NOTICE OF MOTION AND MOTION TO DISMISS AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

[Filed concurrently with [Proposed] Order]

Date: October 20, 2026
Time: 9:00 a.m.
Dept: Courtroom 1

Amended Consolidated Complaint Filed: July 31, 2026

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**TO THE HONORABLE COURT, AND TO PLAINTIFFS AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on October 20, 2026, at 9:00 a.m., or as soon thereafter as this matter may be heard in Courtroom 1 on the 4th floor of the above-captioned court, located at 1301 Clay Street, Oakland, CA 94612, Defendant California Physicians' Service d/b/a Blue Shield of California ("Defendant" or "Blue Shield") will and hereby does move to dismiss with prejudice the Amended Consolidated Class Action Complaint ("Amended Complaint") of Plaintiffs Rachel Markovitz, Austin Kahn, and Susan Reiman ("Plaintiffs") [Dkt. No. 136] in the above-captioned action ("Action").

Defendant respectfully submits this Motion pursuant to Fed. R. Civ. P. 12(b)(6) and asks that the Court dismiss the Amended Complaint with prejudice because Plaintiffs fail to allege sufficient facts to plead a violation of the Federal Wiretap Act, 18 U.S.C. § 2510, *et seq.* ("Wiretap Act").

This Motion is based on this Notice, the Memorandum of Points and Authorities, all pleadings, papers and records on file in this Action, Defendant's anticipated reply in support of the Motion, and such other oral argument and documentary evidence as may be presented at or before the time of adjudication of this Motion.

Dated: August 14, 2026,

Respectfully submitted,

**BAKER & HOSTETLER LLP**

By: */s/ Teresa C. Chow*
Teresa C. Chow
Sean P. Killeen
Ciara N. Westbrooks

*Attorneys for Defendant*
California Physicians' Service d/b/a
Blue Shield of California

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF CONTENTS

Page

I. INTRODUCTION .......... 7

II. STATEMENT OF ISSUES TO BE DECIDED .......... 8

III. FACTUAL BACKGROUND .......... 8

IV. LAW AND ARGUMENT .......... 10

a. Legal Standard .......... 10

b. As a Threshold Matter, Blue Shield Cannot Be Liable for Disclosing or Using Information it Received Directly from Plaintiffs. .......... 10

c. As a Threshold Matter, Plaintiffs Fail to Establish Any Underlying Violation of the Wiretap Act by Meta or Google. .......... 12

i. Blue Shield's Consent Bars Any Finding of Unlawful Interception .......... 12

ii. Plaintiffs Fail to Allege Contemporaneous Interception in Transit by Meta or Google. .......... 18

d. Plaintiffs' Disclosure Claim Should be Dismissed Because Plaintiffs Fail to Allege Any Intentional "Disclosure" by Blue Shield Beyond the So-Called "Interception" .......... 18

e. Plaintiffs' Use Claim Should be Dismissed Because Plaintiffs Fail to Allege Blue Shield Used the "Contents" of Their Communications. .......... 19

V. CONCLUSION .......... 21

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 10

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024) .......... 16

*Beckington v. Am. Airlines, Inc.*,
926 F.3d 595 (9th Cir. 2019) .......... 10

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 10

*Caminetti v. United States*,
242 U.S. 470, 37 S. Ct. 192, 61 L. Ed. 442 (1917) .......... 11

*Dellasala v. Samba TV, Inc.*,
No. 3:25-CV-03470-JSC, 2026 WL 1138358 (N.D. Cal. Apr. 21, 2026) .......... 18

*Depot, Inc. v. Caring for Montanans, Inc.*,
915 F.3d 643 (9th Cir. 2019) .......... 10

*Doe 1 v. Chestnut Health Sys., Inc.*,
No. 1:24-CV-01475-JEH-RLH, 2025 WL 1616635 (C.D. Ill. June 6, 2025) .......... 16

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) .......... 13

*Doe v. Genesis Health Sys.*,
No. 4:23-cv-04209-JEH, 2025 WL 1000192 (C.D. Ill. Mar. 18, 2025) .......... 17

*Doe v. Kaiser Found. Health Plan, Inc.*,
No. 23-cv-02865, 2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) .......... 14

*Doe v. LinkedIn Corp.*,
No. 5:25-CV-03737-EJD, 2026 WL 2199526 (N.D. Cal. July 30, 2026) .......... 13

*Doe v. Talkiatry Mgmt. Servs., LLC*,
816 F. Supp. 3d 1206 (C.D. Cal. 2026) .......... 16

*In re Facebook Priv. Litig.*,
791 F. Supp. 2d 705 (N.D. Cal. 2011), *aff'd*, 572 F. App'x 494 (9th Cir. 2014) .......... 12

*Gabrielli v. Haleon US Inc.*,
815 F. Supp. 3d 852 (N.D. Cal. 2025) .......... 20

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Garcia v. Anschutz Ent. Grp., Inc.*,
No. 5:25-CV-02282-SSS-DTBX, 2026 WL 1278912 (C.D. Cal. May 5, 2026) .................... 16

*In re Google Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015) .................... 15

*In re Google Inc. Street View Electronic Communications Litig.*,
794 F. Supp. 2d 1067 (N.D. Cal. 2011) .................... 11

*Goulart v. Cape Cod Healthcare, Inc.*,
No. 25-10445-RGS, 2025 WL 1745732 (D. Mass. June 24, 2025), appeal docketed, No. 25-1672 (1st Cir. July 23, 2025) .................... 17

*Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*,
530 U.S. 1, 6, 120 S. Ct. 1942, 147 L. Ed. 2d 1 (2000) .................... 11

*J.S. v. Spring Fertility Holdings, LLC*,
No. 5:24-CV-07374-EJD, 2026 WL 1483490 (N.D. Cal. May 27, 2026) .................... 15

*Karen McManus v. Tufts Med. Ctr., Inc.*,
No. 25-cv-10008-ADB, 2025 WL 2778025 (D. Mass. Sept. 29, 2025) .................... 17

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) .................... 13, 16

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) .................... 18

*Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025) .................... 15

*Marsh v. Zaazoom Sols., LLC*,
No. C-11-05226-YGR, 2012 WL 952226 (N.D. Cal. Mar. 20, 2012) (Gonzalez Rogers, J.) .................... 10, 11

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) .................... 13

*Nienaber v. Overlake Hosp. Med. Ctr.*,
No. 2:23-CV-01159-TL, 2025 WL 692097 (W.D. Wash. Mar. 4, 2025) .................... 16

*Pena v. GameStop, Inc.*,
670 F. Supp. 3d 1112 (S.D. Cal. 2023) .................... 16

*Planned Parenthood Fed'n of Am., Inc. v. Newman*,
51 F.4th 1125 (9th Cir. 2022) .................... 13

*Rodriguez v. Google LLC*,
No. 20-CV-04688-RS, 2022 WL 214552 (N.D. Cal. Jan. 25, 2022) .................... 18

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Rusow v. Skinspirit Essential LLC*,
No. 24-CV-09317-CRB, 2025 WL 4657637 (N.D. Cal. Oct. 15, 2025) ................................ 15

*Satchell v. Sonic Notify, Inc.*,
234 F. Supp. 3d 996 (N.D. Cal. 2017) ................................................................................ 21

*Smith v. Rack Room Shoes, Inc.*,
No. 24-CV-06709-RFL, 2025 WL 1085169 (N.D. Cal. Apr. 4, 2025) .................................. 14

*So v. Hyatt Hotels Corp.*,
No. 25 C 10483, 2026 WL 1235036 (N.D. Ill. May 5, 2026)................................................ 12

*Sussman v. Am. Broad. Cos.*,
186 F.3d 1200 (9th Cir. 1999)........................................................................................ 13, 14

*Sweat v. Houston Methodist Hosp.*,
No. H-24-775, 2025 WL 2697111 (S.D. Tex. Sept. 22, 2025) ............................................... 17

*United States v. Ron Pair Enterprises, Inc.*,
489 U.S. 235, 109 S. Ct. 1026, 103 L. Ed. 2d 290 (1989) .................................................... 10

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) .................................................................................. 12

*Zocco v. Nelnet, Inc.*,
No. 25-CV-04470-NW, 2026 WL 242037 (N.D. Cal. Jan. 29, 2026) ................................... 14

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014)............................................................................................. 20

**Statutes**

18 U.S.C. § 2511(1)(c)............................................................................................... *passim*

18 U.S.C. § 2511(1)(d)............................................................................................... *passim*

18 U.S.C. § 2511(2)(d)........................................................................................... 12, 13, 14

**Rules**

Fed. R. Civ. P. 12(b)(6)............................................................................................... 8, 10



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

After the Court held that "Plaintiffs' procurement-based theory of liability is not cognizable," Plaintiffs now try to plead around that ruling by recasting the same alleged conduct as two new Wiretap Act theories: disclosure under 18 U.S.C. § 2511(1)(c) and use under 18 U.S.C. § 2511(1)(d). Order Granting Mot. to Dismiss Without Prejudice at 10, Dkt. No. 134. But the amended labels do not cure the legal defect the Court identified. Plaintiffs still allege that they communicated through Blue Shield's Website "with Blue Shield" (Amend. Compl. ¶ 167), and that Google and Meta—not Blue Shield—obtained the communications through the alleged interceptions. Amend. Compl. ¶¶ 263, 282. Thus, even taking Plaintiffs' allegations as true, Plaintiffs provided the alleged communications at issue directly to Blue Shield. Blue Shield did not disclose or use information it obtained "through the interception of a wire, oral, or electronic communication in violation of this subsection," as Sections 2511(1)(c) and (d) require. 18 U.S.C. § 2511(1)(c), (d).

Dismissal is warranted for four independent reasons. First, Plaintiffs cannot plead disclosure or use liability against Blue Shield based on information Plaintiffs allegedly sent directly to Blue Shield as the intended recipient. Second, Plaintiffs do not plausibly allege any underlying unlawful interception by Google or Meta because Blue Shield's consent defeats any claimed interception absent application of the crime-tort exception. Third, Plaintiffs' disclosure theory identifies no post-interception disclosure separate from the same transmission that allegedly allowed Google and Meta to receive data in the first place; it is procurement by another name. Fourth, Plaintiffs' use theory fails because any Plaintiff's information vis à vis Blue Shield is not contents obtained through an unlawful interception; and even if Plaintiffs could plead an underlying unlawful interception, they do not plausibly allege that Blue Shield used the contents of Plaintiffs' purported communications rather than analytics, audience membership, website activity, or other non-content information. Because Plaintiffs already amended after a detailed dismissal order, further amendment would be futile and dismissal should now be granted with prejudice.

The Amended Complaint changes labels, not the controlling facts. Plaintiffs added more detail about Blue Shield's alleged configuration of Google Analytics and the Meta Pixel, analytics dashboards, advertising tools, audience creation, and campaign optimization. But what matters under the statute remains unchanged: Plaintiffs allege they communicated directly with Blue Shield through Blue Shield's Website; Plaintiffs allege Google and Meta obtained the information through the supposed interceptions; and Plaintiffs still premise Blue Shield's liability on Blue Shield's installation, configuration, and management of third-party analytics tools. Those allegations are still procurement by another name, not disclosure or use of contents obtained by Blue Shield through an unlawful interception.

## II. STATEMENT OF ISSUES TO BE DECIDED

Have Plaintiffs satisfied Rule 12(b)(6) by plausibly alleging that the contents of their communications were unlawfully intercepted and that Blue Shield disclosed or used those communications in violation of the Wiretap Act?

## III. FACTUAL BACKGROUND

The Amended Complaint confirms that this case concerns interactions Plaintiffs allegedly had directly with Blue Shield through Blue Shield's own Website. Plaintiffs allege that Blue Shield's Website allowed visitors to review information about plans, search for doctors, and access health and health-insurance resources. Amend. Compl. ¶¶ 71–72. The named Plaintiffs likewise allege that they "communicated with Blue Shield" or "with Blue Shield and its agents" through the Website. Amend. Compl. ¶¶ 204, 218, 233.

Plaintiffs still do not plead that Blue Shield itself unlawfully intercepted anything. Instead, they allege that "Google and Meta obtained those contents through 'interception'" via Google Analytics and the Meta Pixel. Amend. Compl. ¶ 282. They also allege that Blue Shield selected, installed, and configured those tools on its own Website, and that Blue Shield "knew and controlled what data was being intercepted from its Website and disclosed to Google and Meta," and that Blue Shield was the "architect" of the challenged tracking because it installed, monitored, and managed those tools. Amend. Compl. ¶¶ 3, 11, 30–33, 180.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Plaintiffs do not plead facts showing that Google's or Meta's alleged acquisition was unlawful despite Blue Shield's consent. Instead, Plaintiffs' allegations regarding Google and Meta undercut their conclusion that "at least one primary purpose of the interceptions was to commit criminal or tortious acts," including violations or HIPAA or tortious invasions of privacy. Amend. Compl. ¶¶ 265, 284. As to Google, Plaintiffs allege that Google warned customers—including HIPAA-covered customers—not to use Google Analytics in a way that would implicate Google's access to or collection of PHI. Amend. Compl. ¶¶ 102, 105. As to Meta, Plaintiffs allege that Meta's terms prohibited developers from using the Meta Pixel to share health, financial, or other sensitive information. Amend. Compl. ¶¶ 144, 188. And when Plaintiffs describe the alleged purpose of Google's and Meta's conduct, they allege that the data was used for advertising, analytics, audience creation, campaign measurement, and other commercial marketing functions. Amend. Compl. ¶¶ 47–65, 123–25, 138–43.

Plaintiffs' reliance on Blue Shield's Notice of Data Breach does not plausibly support any disclosure or use in violation of Section 2511(1)(c) or (d). The Notice, as quoted in the Amended Complaint, states that Google Analytics was configured in a way that allowed certain member data to be shared with Google Ads and that the data likely included PHI. Amend. Compl. ¶¶ 84–86. But the Notice does not establish that Blue Shield disclosed or used "contents" obtained through an unlawful interception. At most, it describes data sharing with Google Ads.

The Amended Complaint also relies on conclusory allegations of contemporaneous interception rather than facts showing acquisition of contents while in transit. Plaintiffs allege that once tracking technology is installed and configured, data is "contemporaneously intercepted" and redirected to Google or Meta. Amend. Compl. ¶ 46. But the factual allegations describe code that executes when a user views pages, clicks buttons, enters search terms, selects filters, or submits forms, and then sends analytics or event data to Google or Meta. Amend. Compl. ¶¶ 34–46, 94–96, 111–16, 168–76. Plaintiffs do not allege facts showing that Google or Meta acquired the alleged contents before the communications reached Blue Shield's Website.

The amended "use" allegations claim, at most, that Blue Shield used website activity, audience membership, page visits, and analytics after receiving communications as the intended

Website operator. While Plaintiffs conclude that Blue Shield "used [their] data to serve highly targeted advertisements," Plaintiffs do not allege that Blue Shield used any Plaintiff's search terms, descriptive URLs, provider selections, claim details, or other alleged contents to serve a particular advertisement or make any specific advertising decision. Any allegations of "use" of the data Plaintiffs provided directly to Blue Shield is limited to use of record information: aggregated tracking of website page views, Amend. Compl. ¶¶ 49, 50, and creating custom audiences of website visitors, Amend. Compl. ¶ 58. Plaintiffs omit any allegations connecting their claim that Blue Shield created custom audiences for advertisements based on age or family status with Blue Shield's alleged use of the Meta Pixel or Google Analytics. Amend. Compl. ¶ 57. Plaintiffs Kahn, Markovitz, and Reiman never allege they received a single targeted advertisement from Blue Shield, much less one related to their use of the "Find a Doctor" tool or other activity on the Blue Shield Website. *See* Amend. Compl. ¶¶ 199–241.

## IV. <u>LAW AND ARGUMENT</u>

### a. <u>Legal Standard.</u>

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal if a complaint fails to state a claim upon which relief can be granted. To survive a motion to dismiss, the complaint "must contain sufficient 'well-pleaded, nonconclusory factual allegation[s],' accepted as true, to state 'a plausible claim for relief.'" *Beckington v. Am. Airlines, Inc.*, 926 F.3d 595, 604 (9th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679–80 (2009)). Factual allegations must be enough to raise a right to relief above the speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Dismissal is appropriate when the complaint lacks a "cognizable legal theory" or sufficient factual allegations to "support a cognizable legal theory." *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 652–53 (9th Cir. 2019).

### b. <u>As a Threshold Matter, Blue Shield Cannot Be Liable for Disclosing or Using Information it Received Directly from Plaintiffs.</u>

As this Court has explained, analysis of the Wiretap Act begins "where all such inquiries must begin: with the language of the statute itself." *Marsh v. Zaazoom Sols., LLC*, No. C-11-05226-YGR, 2012 WL 952226, at *17 (N.D. Cal. Mar. 20, 2012) (Gonzalez Rogers, J.) (citing *United*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S. Ct. 1026, 103 L. Ed. 2d 290 (1989); *In re Google Inc. Street View Electronic Communications Litig.,* 794 F. Supp. 2d 1067, 1074–75 (N.D. Cal. 2011)). "Where the language of the statute is plain, it is also where the inquiry should end: 'the sole function of the courts is to enforce [the statute] according to its terms,' assuming that an absurd interpretation does not result." *Id.* (citing *Caminetti v. United States,* 242 U.S. 470, 485, 37 S. Ct. 192, 61 L. Ed. 442 (1917); *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6, 120 S. Ct. 1942, 147 L. Ed. 2d 1 (2000)).

Plaintiffs now bring two claims against Blue Shield, for violation of 18 U.S.C. § 2511(1)(c) and 18 U.S.C. § 2511(1)(d). The language of those sections is plain. They prohibit, in the case of subsection (c), the intentional disclosure, and in the case of subsection (d), the intentional use, of "the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection." 18 U.S.C. § 2511(1)(c), (d). Under the plain text of the statute, Sections 2511(1)(c) and (d) apply only when a defendant discloses or uses contents while actually or constructively knowing that the information was obtained through an unlawful interception—not when the defendant later uses information it received directly from the communicator.

As the Court concluded in its July 10, 2026 Order, "plaintiffs have not alleged that Blue Shield itself intercepted the contents of communications." Order Granting Mot. to Dismiss Without Prejudice at 10, Dkt. No. 134. Nothing in the Amended Complaint alters this conclusion. If anything, Plaintiffs' amended allegations clarify that their claims against Blue Shield are premised on alleged interceptions by Meta and Google, not Blue Shield. Amend. Compl. ¶¶ 263–64, 282–83. Plaintiffs' disclosure and use theories rest on their allegations that because Blue Shield added the Meta Pixel and Google Analytics to its Website's code, Amend. Compl. ¶¶ 272, 290, such an addition constitutes a "disclosure" to Meta and Google or a "use" of information intercepted by Meta or Google. Amend. Compl. ¶¶ 273, 291.

Plaintiffs' own allegations defeat their claims. Blue Shield was the intended and direct recipient of Plaintiffs' alleged communications. Amend. Compl. ¶ 167 (referring to Plaintiffs'





BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

"communications with Blue Shield"); ¶ 196 ("Plaintiffs' communications with Blue Shield's Website"); ¶ 204 (Plaintiff Kahn "communicated with Blue Shield and its agents via Blue Shield's Website"); ¶ 218 (Plaintiff Markovitz "communicated with Blue Shield and its agents via the Website"); ¶ 233 (Plaintiff Reiman "communicated with Blue Shield and its agents via the Website"). Having pleaded that Plaintiffs sent their alleged communications to Blue Shield, Plaintiffs cannot plausibly allege that Blue Shield itself "obtained [those same communications] through [an] interception", as required by the sections of the Wiretap Act under which Plaintiffs bring their claims. 18 U.S.C. § 2511(1)(c) (covering disclosure of electronic communications "obtained through [] interception"), (d) (covering use of electronic communications "obtained through [] interception"). At most, Plaintiffs allege that Blue Shield disclosed or used information it received directly from Plaintiffs. But because "the communication at issue is one from a user *to* Defendant, Defendant cannot be liable under the Wiretap Act for divulging it." *In re Facebook Priv. Litig.*, 791 F. Supp. 2d 705, 713 (N.D. Cal. 2011), *aff'd*, 572 F. App'x 494 (9th Cir. 2014). The Amended Complaint therefore fails as a threshold matter.

**c. <u>As a Threshold Matter, Plaintiffs Fail to Establish Any Underlying Violation of the Wiretap Act by Meta or Google.</u>**

Even if Plaintiffs had alleged Blue Shield disclosed or used communications obtained through Meta or Google's interceptions, they fail to allege Meta or Google's interceptions were "in violation of this subsection." 18 U.S.C. § 2511(1)(c), (d). Because there is no underlying unlawful interception, Plaintiffs' Wiretap Act claims fail as a matter of law.

***i. Blue Shield's Consent Bars Any Finding of Unlawful Interception.***

There is no violation of § 2511(1)(c) or (d) "where the underlying interception is not unlawful under the consent defense." *So v. Hyatt Hotels Corp.*, No. 25 C 10483, 2026 WL 1235036, at *6 (N.D. Ill. May 5, 2026). The Wiretap Act does not make it unlawful for Google or Meta to "intercept ... [an] electronic communication… where one of the parties to the communication has given prior consent to such interception." 18 U.S.C. § 2511(2)(d). Because Blue Shield deployed Google and Meta's activity on its Website and "the consent of one party is a complete defense to a

Wiretap Act claim," Plaintiffs cannot establish an underlying Wiretap Act violation by Meta or Google. *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1026 (N.D. Cal. 2014).

In a case alleging that Oracle violated the Wiretap Act by creating web tracking products deployed on its customers' websites, the Northern District of California explained that "[a]s [Oracle's] customers must have chosen to deploy [Oracle's] tools on their websites, it necessarily follows that 'one of the parties to the communication'—the websites themselves—gave 'prior consent to such interception.'" *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023) (quoting 18 U.S.C. § 2511(2)(d)). Where a website owner "chose to install" an entity's tracking pixel, claims against the creator of the tracking pixel are repeatedly dismissed in light of the website owner's consent. *Doe v. LinkedIn Corp.*, No. 5:25-CV-03737-EJD, 2026 WL 2199526, at *7 (N.D. Cal. July 30, 2026); *see also Doe I v. Google LLC*, 741 F. Supp. 3d 828, 842 (N.D. Cal. 2024) ("because the health care providers choose to install Google source code on their web properties… the providers consented to the operation of Google source code").

As explained herein, Plaintiffs have alleged that Blue Shield was a party to their communications. Amend. Compl. ¶¶ 167, 196, 204, 218, 233. Throughout the Amended Complaint, Plaintiffs allege that Blue Shield knowingly and intentionally installed the Meta Pixel and Google Analytics on its Website. Amend. Compl. ¶¶ 11 ("Blue Shield intentionally used these tracking technologies"); 180 ("Blue Shield knew and controlled what data was being intercepted from its Website and disclosed to Google and Meta"). Thus, Plaintiffs have pled that any alleged interception by Meta or Google was performed with Blue Shield's consent.

Plaintiffs attempt to avoid Blue Shield's consent by invoking the crime-tort exception. Amend. Compl. ¶¶ 265, 284. That exception is narrow. It applies only when the communication is intercepted "for the purpose of committing any criminal or tortious act," 18 U.S.C. § 2511(2)(d); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022) ("to ultimately succeed on this claim, plaintiffs must show that the purpose for Meta's interception was to injure plaintiffs tortiously"). And the alleged criminal or tortious purpose must be independent of the interception itself. *Sussman v. Am. Broad. Cos.*, 186 F.3d 1200, 1202–03 (9th Cir. 1999); *Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022) ("criminal or





BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

tortious purpose must be separate and independent from the act of the recording."). The exception therefore cannot be satisfied merely by alleging that the interception, transmission, or disclosure was wrongful; the "focus is not upon whether the interception itself violated another law; it is upon whether the *purpose* for the interception—its intended use—was criminal or tortious." *Sussman*, 186 F.3d at 1202 (emphasis in original).

Only the purpose of the alleged interceptors is relevant. Plaintiffs still allege that Google and Meta—not Blue Shield—obtained the communications through interception. Amend. Compl. ¶¶ 263, 282. Thus, to establish an interception "in violation of this subsection" despite Blue Shield's consent, Plaintiffs must plausibly allege that Google or Meta intercepted the communications for a separate criminal or tortious purpose. *See Zocco v. Nelnet, Inc.*, No. 25-CV-04470-NW, 2026 WL 242037, at *5 (N.D. Cal. Jan. 29, 2026) (crime-tort exception not applicable where plaintiffs alleged defendant violated several statutes "but fail[ed] to state how Nelnet allegedly violated these laws and that the violation was the purpose for the interception").

Allegations about Blue Shield's alleged purpose in installing or configuring third-party tools cannot supply the missing unlawful purpose by the alleged interceptors. As this Court already explained, because "plaintiffs have not alleged that Blue Shield itself intercepted any communications," "plaintiffs have not alleged a factual basis for applying Section 2511(2)(d) to their claim against Blue Shield." Order Granting Mot. to Dismiss Without Prejudice at 13-14, Dkt. No. 134; *see also Smith v. Rack Room Shoes, Inc.*, No. 24-CV-06709-RFL, 2025 WL 1085169, at *7 (N.D. Cal. Apr. 4, 2025) (crime-tort exception not pleaded where plaintiffs did not allege defendant intercepted communications).

Plaintiffs still do not plead that separate unlawful purpose. They assert that "at least one primary purpose of the interceptions" was to commit HIPAA violations and privacy torts, Amend. Compl. ¶¶ 265, 284, but the alleged criminal or tortious acts are the same alleged disclosure and commercial use that Plaintiffs say resulted from the challenged tracking. That is not enough. Courts applying *Sussman* reject attempts to satisfy the crime-tort exception by recharacterizing the alleged interception or transmission itself as the independent crime or tort. *Doe v. Kaiser Found. Health Plan, Inc.*, No. 23-cv-02865, 2024 WL 1589982, at *10 (N.D. Cal. Apr. 11, 2024) (alleged HIPAA



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

violation did not satisfy the exception because the act of interception itself cannot be the crime or tort); *In re Google Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 145 (3d Cir. 2015) (crime-tort exception not triggered where "the tortious conduct is the alleged wiretapping itself").

Plaintiffs' own allegations affirmatively negate any plausible unlawful purpose by Google or Meta. As to Google, Plaintiffs allege that Google warned HIPAA-covered customers that they "must not use Google Analytics in a way that implicates Google's access to, or collection of, PHI." Amend. Compl. ¶ 105. Plaintiffs also allege that Google urged customers—including Blue Shield—to take steps to prevent protected data from being collected through Google Analytics. Amend. Compl. ¶ 102. As to Meta, Plaintiffs allege that Meta's terms prohibited Blue Shield from using the Meta Pixel to share health, financial, or other sensitive information. Amend. Compl. ¶ 188. These allegations are inconsistent with an inference that Google or Meta intercepted communications for the purpose of committing a HIPAA violation or privacy tort. They show the opposite: Plaintiffs allege that Google and Meta warned customers not to send the very categories of information Plaintiffs claim were transmitted.

At most, Plaintiffs plead ordinary commercial and analytics purposes. Plaintiffs allege that Google, Meta, and Blue Shield used the tools for "targeted advertising and marketing purposes." Amend. Compl. ¶¶ 210, 224, 239. But courts in this District have repeatedly held that a money-making or advertising purpose does not itself trigger the crime-tort exception; the plaintiff must plead that the primary motivation or determining factor was to commit a separate crime or tort. *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1057-58 (N.D. Cal. 2025); *see also J.S. v. Spring Fertility Holdings, LLC*, No. 5:24-CV-07374-EJD, 2026 WL 1483490, at *3 (N.D. Cal. May 27, 2026) (despite plaintiffs' argument "that the primary unlawful purpose here was to violate HIPAA and invade [plaintiff's] privacy," "the Court agrees with multiple others in this district that have found the crime-tort exception is inapplicable where the defendant's primary motivation was to make money, not to injure plaintiffs tortiously."); *Rusow v. Skinspirit Essential LLC*, No. 24-CV-09317-CRB, 2025 WL 4657637, at *2, *15 (N.D. Cal. Oct. 15, 2025) (allegations that defendant "committed an invasion of privacy tort" through its use of Google Analytics in order to "mak[e] use of targeted advertising to increase their advertising's efficacy," fail to allege defendant "did so

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

for the express purpose of committing that tort"); *Katz-Lacabe*, 668 F. Supp. 3d at 945 (dismissing wiretapping claim and collecting cases holding that a defendant's desire to "make money" through use of pixels does not meet the crime-tort exception).

Courts throughout the Ninth Circuit agree that where the plaintiff does not "suggest that Defendant intercepted and/or disclosed… information with violations of HIPAA as the 'primary motivation or a determining factor,'" plaintiff "does not adequately allege Defendant's purpose to commit an independent criminal or tortious act to overcome the party exemption." *Doe v. Talkiatry Mgmt. Servs., LLC*, 816 F. Supp. 3d 1206, 1210 (C.D. Cal. 2026); *see also B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1065 (C.D. Cal. 2024) (although the plaintiffs alleged the defendant "engaged in the allegedly illegal interception of their . . . information" for commercial advantage, plaintiffs failed to allege that purpose "constitute[d] independently illegal or actionable conduct" and the court concluded the "criminal or tortious act" exception to the party exception did not apply); *Nienaber v. Overlake Hosp. Med. Ctr.*, No. 2:23-CV-01159-TL, 2025 WL 692097, at *13 (W.D. Wash. Mar. 4, 2025) (dismissing Wiretap Act claim with prejudice and finding the exception did not apply because plaintiff failed to plead "a tortious or criminal use of the acquired communications *separate* from their recording, interception, or transmission"); *Pena v. GameStop, Inc.*, 670 F. Supp. 3d 1112, 1120 (S.D. Cal. 2023) ("Here, while Plaintiff alleges that Defendant engaged in the allegedly illegal interception of his and the proposed class members' communications 'in order to create transcripts that could be shared with third parties to analyze to extract key words for marketing an[d] other purposes' … Plaintiff does not allege that this purpose constitutes independently illegal or actionable conduct such that the party exception is inapplicable."); *Garcia v. Anschutz Ent. Grp., Inc.*, No. 5:25-CV-02282-SSS-DTBX, 2026 WL 1278912, at *6 (C.D. Cal. May 5, 2026) ("a plaintiff must plead sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is independent of the intentional act of recording or interception itself.").

Around the country, courts have likewise dismissed Wiretap Act claims where defendant's purpose in intercepting plaintiffs' communications was to facilitate advertising and marketing. *See, e.g., Doe 1 v. Chestnut Health Sys., Inc.*, No. 1:24-CV-01475-JEH-RLH, 2025 WL 1616635, at *12



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

(C.D. Ill. June 6, 2025) (dismissing Wiretap Act claim where plaintiff failed to allege that defendant's purpose in using third-party technology was to violate the law rather than facilitating advertising and marketing); *Karen McManus v. Tufts Med. Ctr., Inc.*, No. 25-cv-10008-ADB, 2025 WL 2778025, at *3 (D. Mass. Sept. 29, 2025) (dismissing plaintiff's Wiretap Act claim because allegations that the defendant "specifically used tracking technologies to intercept and disclose Plaintiff's and Class Members Private Information for financial gain, . . . sought to increase revenue from existing patients and gain new patients, . . . and thus chose to put its business interests over the privacy of its patients, . . . are [] insufficient to satisfy the crime-tort exception") (quotations and citation omitted); *Goulart v. Cape Cod Healthcare, Inc.*, No. 25-10445-RGS, 2025 WL 1745732, at *3 (D. Mass. June 24, 2025), appeal docketed, No. 25-1672 (1st Cir. July 23, 2025) (dismissing Wiretap Act claim and finding the crime-tort exception did not apply because plaintiffs' complaint "fails to plausibly allege that [the defendant's] 'primary motivation' or 'determinative factor' in disclosing plaintiffs' personal health information through the software-tracking technology to Facebook and Google was for the purpose of committing a criminal violation or tort, as opposed to commercial gain or convenience."); *Doe v. Genesis Health Sys.*, No. 4:23-cv-04209-JEH, 2025 WL 1000192, at *9 (C.D. Ill. Mar. 18, 2025) (dismissing Wiretap Act claim and reasoning "[b]y [p]laintiff's own account, the 'trackers' were 'used by the [d]efendant to benefit [the defendant] and its marketing and advertising purposes,' . . . not for the purpose of knowingly committing a violation of the HIPAA.") (internal citation omitted); *Sweat v. Houston Methodist Hosp.*, No. H-24-775, 2025 WL 2697111, at *7 (S.D. Tex. Sept. 22, 2025) (granting summary judgment to defendant on the plaintiff's Wiretap Act claim and reasoning "[t]he disclosure of what was not known to be personally identifiable health information, but instead believed to be aggregate data, for a commercial purpose, is not a crime or a tort.").

Accordingly, because Plaintiffs' own allegations of Blue Shield's consent defeat any unlawful interception absent a crime-tort exception, and Plaintiffs do not plausibly allege Meta or Google had any separate criminal or tortious purpose for their alleged interception, Plaintiffs cannot establish an underlying Wiretap Act violation to support their claim that Blue Shield violated either 18 U.S.C § 2511(1)(c) or 18 U.S.C § 2511(1)(d).

***ii. Plaintiffs Fail to Allege Contemporaneous Interception in Transit by Meta or Google.***

Plaintiffs also do not cure any statutory defect by invoking contemporaneous interception. Although adjudication of this issue is not necessary for dismissal if the Court agrees that Blue Shield did not disclose or use contents obtained through unlawful interception, Plaintiffs still must plead an underlying interception "in violation of this subsection." The Wiretap Act requires contemporaneous acquisition during transmission, not *after* the communication enters electronic storage. *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002).

Plaintiffs repeatedly use the words "contemporaneously" and "in real time," but conclusory language is not enough. *See Dellasala v. Samba TV, Inc.*, No. 3:25-CV-03470-JSC, 2026 WL 1138358, at *6 (N.D. Cal. Apr. 21, 2026) (allegations that interception occurred before or at the same time content reached the intended recipient were too conclusory); *Rodriguez v. Google LLC*, No. 20-CV-04688-RS, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022) ("Using the word 'intercept' repeatedly is simply not enough without the addition of specific facts that make it plausible Google is intercepting their data in transit."). The Amended Complaint instead describes code that records or transmits analytics and event data *after* users interact with the Website. Amend. Compl. ¶¶ 34–46, 94–96, 111–16, 168–76. As a result, Plaintiffs have not alleged an underlying "interception" of content "in transit" as required to state a claim under either 18 U.S.C § 2511(1)(c) or 18 U.S.C § 2511(1)(d).

**d. <u>Plaintiffs' Disclosure Claim Should be Dismissed Because Plaintiffs Fail to Allege Any Intentional "Disclosure" by Blue Shield Beyond the So-Called "Interception".</u>**

Even if Plaintiffs had alleged an underlying Wiretap Act violation by Meta or Google, their § 2511(1)(c) disclosure claim remains implausible because Plaintiffs do not allege any actionable disclosure by Blue Shield. The only conduct Plaintiffs allege constitutes Blue Shield's "disclosure" is Blue Shield's alleged installation of the Meta Pixel and Google Analytics in its Website's code, enabling Meta and Google to intercept Plaintiffs' communications. *See* Amend. Compl. ¶ 263

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

("Blue Shield disclosed those contents to Google and Meta, who obtained them through 'interception'").

That circular theory is not a disclosure claim. Section 2511(1)(c) requires a disclosure of contents that the defendant knows were already obtained through an unlawful interception. Plaintiffs instead allege that Blue Shield disclosed the contents to Google and Meta by configuring the very tools through which Google and Meta supposedly obtained them. Amend. Compl. ¶ 263. They also assert that Blue Shield later "re-disclosed" information to Google and Meta, Amend. Compl. ¶ 270, but do not identify any separate act, communication, dataset, or transmission distinct from the initial flow of data to the same entities.

Without alleging any *separate* disclosure of Plaintiff's communications, the disclosure claim simply restates the rejected theory that Blue Shield procured or enabled Google and Meta to intercept communications. At most, Plaintiffs' allegations describe Blue Shield's alleged role in enabling or causing Google and Meta to acquire information. That is the same procurement-based theory the Court already held unavailable in a private Wiretap Act action. Section 2520 does not permit private procurement liability, and Plaintiffs cannot revive that theory by calling it "disclosure."

**e. Plaintiffs' Use Claim Should be Dismissed Because Plaintiffs Fail to Allege Blue Shield Used the "Contents" of Their Communications.**

Plaintiffs' use claim initially fails for the threshold reasons already discussed. Plaintiffs allege that they communicated directly with Blue Shield through Blue Shield's Website, and that Google and Meta—not Blue Shield—obtained the communications through the alleged interceptions. Amend. Compl. ¶¶ 204, 218, 233, 263, 282. Plaintiffs cannot satisfy § 2511(1)(d) by relying on Google's or Meta's alleged acquisition because, for the reasons above, Plaintiffs do not plausibly allege any underlying unlawful interception. But even if they could allege a Wiretap Act violation by Google or Meta, the fact remains Blue Shield was a party to the communications and received the information directly from Plaintiffs. Blue Shield's later alleged use of that information cannot be a use of contents obtained through an unlawful interception.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

The use claim also fails for an additional, use-specific reason: Plaintiffs do not plausibly allege that Blue Shield "intentionally use[d]… the *contents* of any… communication." 18 U.S.C. § 2511(1)(d) (emphasis added). As this Court has previously explained, "information that is limited to [] webpage addresses or personally identifying information that identifies a webpage user, does not constitute 'contents' because neither qualify as the 'substance, purport, or meaning of' a communication." *Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d 852, 871 (N.D. Cal. 2025). "Congress has excluded this sort of 'record information' from the definition of 'contents.'" *Id.* (citing *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1107 (9th Cir. 2014)). On the other hand, this Court has found that "search terms and descriptive URLs… constitute 'contents'" of a communication. *Id*.

Plaintiffs do not plausibly allege Blue Shield used "contents." Plaintiffs claim that Blue Shield "used the contents of the interceptions through analytics dashboards, event-level data, reports, audience tools, conversion-flow analyses, and advertising interfaces," and "analyzed individual and aggregate activity; tracked enrollee journeys and conversion flows; segmented enrollees and other website visitors; created custom and retargeting audiences, including authenticated Blue Shield members; designed and deployed ads through Google Ads, Facebook, and Instagram that were informed by that data; and measured and optimized those campaigns for greater engagement." Amend. Compl. ¶ 288. But this allegation conflates Blue Shield's alleged use of "contents" of Plaintiffs' communications with Blue Shield's alleged use of webpage addresses, identifiers, audience membership, page visits, and other non-content analytics.

Even assuming some of Plaintiffs' examples could qualify as contents when allegedly acquired by Google or Meta, Plaintiffs do not plead facts showing Blue Shield used those contents. Paragraph 112, for example, alleges that Google received a descriptive URL reflecting that a user searched for cardiology providers and selected a doctor. But the Amended Complaint does not allege that Blue Shield used that search term, that provider selection, or any comparable content from any named Plaintiff in any specific advertising, analytics, or business decision. Nor do the Plaintiff-specific allegations allege that any named Plaintiff received an advertisement tied to a

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

search term, provider selection, descriptive URL, claim detail, or other alleged content from Blue Shield's Website. Amend. Compl. ¶¶ 199–241.

Instead, Plaintiffs allege that Blue Shield tracks the number of Website visitors and analyzes the pages on which Website visitors left the Website, Amend. Compl. ¶¶ 49, 50, neither of which requires Blue Shield to use Plaintiffs' search terms or descriptive URLs. Retargeting "anyone who visited the Medi-Cal page on Blue Shield's Website," Amend. Compl. ¶ 58, likewise requires only the use of record information, not contents. Plaintiffs also allege Blue Shield targets custom audiences to serve ads based on age and family demographics, Amend. Compl. ¶ 57, but never allege that these campaigns use data Meta obtained through the Meta Pixel, rather than data Plaintiffs provided to Meta or Blue Shield through other means. Moreover, Plaintiffs do not allege whether the custom audiences of the Meta Ad campaigns depicted in paragraph 57 were specifically targeting prior website visitors rather than general audiences.

That omission is dispositive. The Wiretap Act does not impose liability for using generalized website analytics, audience segments, or record information; it imposes liability for intentional use of "contents." 18 U.S.C. § 2511(1)(d). Because Plaintiffs do not plausibly allege that Blue Shield used the contents of their communications—as opposed to page visits, audience membership, identifiers, conversion metrics, demographics, plan categories, or aggregate analytics—the use claim fails. *See Satchell v. Sonic Notify, Inc.*, 234 F. Supp. 3d 996, 1009 (N.D. Cal. 2017) (dismissing use theory where there were no facts showing that contents, rather than beacon signals, were used to send targeted advertising).

## V. <u>CONCLUSION</u>

Plaintiffs' amended pleading still fails to allege that Blue Shield disclosed or used communications obtained through an unlawful interception, or that Meta or Google committed any underlying Wiretap Act violation. Leave to amend should be denied because Plaintiffs have already amended after the Court identified the precise legal defect: Blue Shield was not alleged to have intercepted communications, and procurement liability is unavailable. The Amended Complaint adds detail about Blue Shield's alleged configuration and advertising uses, but those allegations do not change the dispositive facts that Plaintiffs communicated directly with Blue Shield, that Google



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

and Meta are the alleged interceptors, and that no separate criminal or tortious purpose for any alleged interception was or can be plausibly alleged. Further amendment would therefore be futile. Blue Shield respectfully asks the Court to dismiss the Amended Consolidated Class Action Complaint with prejudice.

Dated: August 14, 2026,

Respectfully submitted,

**BAKER & HOSTETLER LLP**

By: */s/ Teresa C. Chow*
Teresa C. Chow
Sean P. Killeen
Ciara N. Westbrooks

*Attorneys for Defendant*
California Physicians' Service d/b/a
Blue Shield of California