TERESA C. CHOW (SBN 237694)
CIARA N. WESTBROOKS (SBN 348637)
**BAKER & HOSTETLER LLP**
1900 Avenue of the Stars, Suite 2700
Los Angeles, CA 90067-4301
Telephone: (310) 820-8800
Facsimile: (310) 820-8859
Emails: *tchow@bakerlaw.com*
*cwestbrooks@bakerlaw.com*

SEAN P. KILLEEN (SBN 320644)
**BAKER & HOSTETLER LLP**
600 Montgomery Street, Suite 3100
San Francisco, CA 94111
Telephone: (415) 659-2600
Facsimile: (415) 659-2601
Emails: *skilleen@bakerlaw.com*

*Attorneys for Defendant*
California Physicians' Service
d/b/a Blue Shield of California



**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**(OAKLAND DIVISION)**

| | |
|---|---|
| *In re Blue Shield of California Privacy Litigation*<br><br>This Document Relates To:<br><br>All Actions | Case No.: 4:25-cv-03209-YGR<br><br>**DEFENDANT CALIFORNIA PHYSICIANS' SERVICE d/b/a BLUE SHIELD OF CALIFORNIA'S REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>Date: October 20, 2026<br>Time: 9:00 a.m.<br>Dept: Courtroom 1<br><br>Amended Consolidated Complaint Filed: July 31, 2026 |

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

This Amended Complaint does not cure the defect this Court identified. The Wiretap Act draws a line Congress chose: Sections 2511(1)(c) and (d) reach later use or disclosure only when communications were first "obtained through" an unlawful interception. They do not make a website operator liable for using information a user sent it. Here, Plaintiffs allege that they communicated with Blue Shield through Blue Shield's own Website. Blue Shield received that information as the intended recipient—not by wiretap.

So Plaintiffs change labels. They say Blue Shield "used" and "disclosed" intercepted communications because it allegedly installed and configured Google and Meta tools on its Website. But that remains a procurement theory in new dress. This Court already held that Section 2520 does not support private procurement liability. Order Granting Mot. to Dismiss Without Prejudice ("Order") at 10–11, Dkt. No. 134. Nor do Plaintiffs' new allegations supply what the statute demands: an unlawful interception that produced contents Blue Shield later used or disclosed. Google and Meta allegedly received data through the same transmissions Plaintiffs call the interception. Blue Shield allegedly received information because Plaintiffs communicated with Blue Shield. Neither path states a claim under Sections 2511(1)(c) or (d). This case should end.

### II. LAW AND ARGUMENT

#### a. Plaintiffs Allege No Unlawful Interception by Blue Shield.

Plaintiffs begin where they must—by trying to plead that Blue Shield intercepted their communications. They fail. Plaintiffs say Blue Shield configured and used third-party tracking tools. Opp. 4. That may describe installation or facilitation. It does not plead interception by the intended recipient. A website operator does not "intercept" communications that users send to that website. As the Northern District recently put it, a party to a communication "cannot intercept its own communications." *Kady v. Opencare, Inc.*, No. 4:25-cv-05037-KAW, 2026 WL 2574336, at *9 (N.D. Cal. Aug. 31, 2026).

Plaintiffs' amended allegations do not change the theory. Plaintiffs add that Blue Shield selected pages, events, fields, identifiers, Google Signals, Pixel settings, Advanced Matching, and

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

custom events. Amend. Compl. ¶¶ 270, 290. But those allegations still charge Blue Shield with deploying and managing third-party tools. They do not allege that Blue Shield acquired Plaintiffs' communications through a device before it received them as the Website operator. So this Court's prior ruling still controls: "all acts of interception described in the complaint are by non-parties Google and Meta," and Plaintiffs have not alleged that "Blue Shield itself intercepted any communications." Order at 10, 11, 13.

Nor do Plaintiffs dispute the key point: Blue Shield was the direct, intended recipient. They never explain how a party can "intercept" communications sent to it. Their cases do not help. *See United States v. Rodriguez*, 968 F.2d 130, 136 (2d Cir. 1992) (law enforcement officers intercepted the calls, not the intended recipients); *Satchell v. Sonic Notify, Inc.*, 234 F. Supp. 3d 996, 1007 (N.D. Cal. 2017) (Signal360, a third-party technology company, allegedly intercepted the communication); *Backhaut v. Apple, Inc.*, 74 F. Supp. 3d 1033, 1043 (N.D. Cal. 2014) ("Plaintiffs specifically allege that Apple is intercepting and preventing the delivery of messages that are not addressed or directed to Apple"); *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 838 (N.D. Cal. 2014) (Facebook allegedly intercepted private messages users sent to other users). Likewise, *Zarif v. Hwareh.com, Inc.* held only that an interception occurred; it did not hold that the intended recipient intercepted the communication. 789 F. Supp. 3d 880, 894 (S.D. Cal. 2025). And *Smith v. Rack Room Shoes, Inc.* addressed intent, not whether a party can intercept communications sent to that party. No. 24-cv-06709-RFL, 2025 WL 2210002, at *5 (N.D. Cal. Aug. 4, 2025).

Because Blue Shield "merely received the information transferred to it by [Plaintiffs], an act without which there would be no transfer," Blue Shield "acted as no more than the second party to a communication." *Crowley v. CyberSource Corp.*, 166 F. Supp. 2d 1263, 1269 (N.D. Cal. 2001). "This is not an interception as defined by the Wiretap Act." *Id.*

**b. <u>Plaintiffs Cannot Premise Their Use and Disclosure Claims on Blue Shield's Alleged Procurement.</u>**

So Plaintiffs ask procurement to do work Congress barred in civil suits. It cannot. Sections 2511(1)(c) and (d) require contents obtained through an unlawful interception. Plaintiffs

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

cannot plead around Section 2520 by saying alleged procurement later became "use" or "disclosure."

To be clear, Blue Shield does not dispute that procurement remains unlawful in the criminal context where Congress left it intact. But the civil point is narrow and dispositive: Congress removed procurement from the private right of action. Order at 10–11. Plaintiffs cannot restore it by recasting the same conduct as the predicate for a private use-or-disclosure claim. Their rule would erase Congress's edit.

*Peavy v. WFAA-TV, Inc.* does not help Plaintiffs. It recognized that procurement may be unlawful even though Section 2520 creates no private action for procurement itself. 221 F.3d 158, 169 (5th Cir. 2000). But it did not hold that alleged procurement alone satisfies the separate requirement that contents be "obtained through" an unlawful interception. Without an unlawful interception, no derivative use or disclosure claim can lie. Plaintiffs plead none.

**c. <u>Consent Bars Any Finding of Unlawful Interception.</u>**[1]

Consent defeats the claims too. Plaintiffs allege that Blue Shield was a party to the communications and installed Google and Meta tools on its own Website. Amend. Compl. ¶¶ 167, 180, 196, 204, 218, 233. If Google or Meta acted as the alleged interceptors, consent defeats the predicate unlawful interception unless Plaintiffs plausibly plead the crime-tort exception. They do not.

That exception is narrow. It applies only when the actor intercepts the communication to commit a separate crime or tort. *Sussman v. Am. Broad. Cos.*, 186 F.3d 1200, 1202 (9th Cir. 1999); *Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022). Plaintiffs collapse that line. They say the same tracking and transmission constituted both the alleged interception and the independent crime or tort. That is not enough. *Doe v. Kaiser Found. Health Plan, Inc.*, No. 23-cv-02865, 2024 WL 1589982, at *10 (N.D. Cal. Apr. 11, 2024).

---

[1] Plaintiffs also argue that "[t]he Wiretap Act prohibits the disclosure or use of unlawfully intercepted communications, regardless of whether the same entity both intercepted and disclosed or used the communications." Opp. 8. Blue Shield concedes this point but not its relevance. Blue Shield's argument in its Motion is not that unlawful interception by Google or Meta could not be the predicate for Plaintiffs' use and disclosure claims, but that Plaintiffs failed to allege that any unlawful interception by Meta or Google occurred or violated the Wiretap Act.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

They also target the wrong actor. This Court held that Plaintiffs had not pleaded interception by Blue Shield. Order at 13. If Google and Meta intercepted the communications, Plaintiffs must plead that Google or Meta acted with a separate unlawful purpose. But the Amended Complaint does not do so. It alleges that Google warned HIPAA-covered customers not to let Google Analytics access or collect PHI and that Meta's terms barred transmission of health or other sensitive information. Amend. Compl. ¶¶ 102, 105, 188. Those allegations may show that Google and Meta imposed restrictions on customers' use of their tools; they do not plausibly allege that Google or Meta intercepted communications for the purpose of committing a HIPAA violation or privacy tort.

Nor does profit change that rule. Courts in this District hold that a moneymaking or advertising purpose does not itself trigger the crime-tort exception. Plaintiffs must plead that the actor's primary motive, or a determining factor, was to commit a separate crime or tort. *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1057–58 (N.D. Cal. 2025); *Ramirez v. Trusper, Inc.*, No. 5:24-cv-02012-EJD, 2026 WL 2351235, at *8 (N.D. Cal. Aug. 13, 2026); *Rusow v. Skinspirit Essential LLC*, No. 24-cv-09317-CRB, 2025 WL 4657637, at *2, *15 (N.D. Cal. Oct. 15, 2025); *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023); *Rodriguez v. Google LLC*, No. 20-cv-04688-RS, 2021 WL 2026726, at *6 n.8 (N.D. Cal. May 21, 2021); *In re Google Inc. Gmail Litig.*, No. 13-md-02430-LHK, 2014 WL 1102660, at *18 n.13 (N.D. Cal. Mar. 18, 2014); *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 843 n.4 (N.D. Cal. 2024).

Nor do Plaintiffs' HIPAA allegations change the analysis. Even assuming some alleged transmissions involved information Plaintiffs call PHI, Plaintiffs still must plead that the alleged interceptor acted to commit a separate crime or tort. They do not. Their theory remains that the same tracking and transmission both created the supposed Wiretap Act violation and supplied the independent unlawful purpose. The crime-tort exception does not stretch that far. *See Sussman v. Am. Broad. Cos.*, 186 F.3d 1200, 1202 (9th Cir. 1999); *Doe v. Kaiser Found. Health Plan, Inc.*, No. 23-cv-02865, 2024 WL 1589982, at *10 (N.D. Cal. Apr. 11, 2024) (Plaintiff's argument that crime-tort exception was met by "a violation of HIPAA… is contrary to *Sussman* which holds that the act of interception itself cannot be the crime or the tort"); *J.S. v. Spring Fertility Holdings, LLC*, No.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

5:24-cv-07374-EJD, 2026 WL 1483490, at *3 (N.D. Cal. May 27, 2026) (HIPAA violation "not sufficiently pled" to establish crime-tort exception).

Nor does the Notice change the result. Plaintiffs quote it as saying that Google Analytics was configured to let certain member data reach Google Ads and that the data likely included PHI. Amend. Compl. ¶ 85. That may explain why Plaintiffs call the data sensitive. It does not plead that Google or Meta intercepted communications to commit an independent crime or tort. The exception turns on purpose, not labels.

Nor can a state-court demurrer order supply missing federal elements. This Court already held that Plaintiffs had standing but failed to plead a cognizable Wiretap Act claim against Blue Shield. Order at 9–15. The question now is whether the Amended Complaint cures that federal defect. It does not.

At most, Plaintiffs allege marketing use of analytics and advertising tools, then conclude that the conduct violated HIPAA or privacy laws. That does not plead that the alleged interceptors acted with a separate criminal or tortious purpose that is required to trigger the crime-tort exception. Absent this exception, party consent defeats the predicate unlawful interception. Without that predicate, Plaintiffs' use and disclosure claims fail.

**d. <u>Plaintiffs Fail to Allege Any Interception Was Contemporaneous.</u>**

The contemporaneity issue provides an additional reason for dismissal, but the Court need not reach it if it agrees with the threshold statutory defects above. Even if the Court does reach the issue, Plaintiffs' new allegations still do not plead facts showing acquisition while the alleged communications were in transit. The Wiretap Act requires more than labels such as "in real time" and "contemporaneously"; it requires acquisition before the communication reaches its destination and enters electronic storage. *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002). Courts reject allegations that recite contemporaneity while the pleaded facts describe logging, copying, or transmitting data after a user interacts with a website. *Dellasala v. Samba TV, Inc.*, No. 3:25-CV-03470-JSC, 2026 WL 1138358, at *6 (N.D. Cal. Apr. 21, 2026); *Rodriguez v. Google LLC*, No. 20-CV-04688-RS, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022).

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

That is what Plaintiffs plead here. They allege that tracking technologies recorded activity when users interacted with the Website, then redirected, processed, analyzed, or stored the data. Amend. Compl. ¶¶ 7, 46, 116, 176. Those allegations do not show acquisition before the communication reached Blue Shield. In any event, contemporaneity is not necessary to the Court's ruling if the Court agrees that Plaintiffs have not pleaded use or disclosure of contents obtained by Blue Sheild through an unlawful interception.

**e. <u>Plaintiffs Fail to Allege Any Intentional "Disclosure" by Blue Shield Beyond the So-Called "Interception."</u>**

The disclosure theory has the same flaw. Plaintiffs claim that that Google Analytics and the Meta Pixel "returned" intercepted contents to Blue Shield through dashboards and advertising interfaces, Opp. 16, and that Blue Shield later disclosed or re-disclosed those contents to Google Ads and Meta advertising services. Amend. Compl. ¶ 270. But a disclosure claim requires contents already obtained through an unlawful interception. Plaintiffs instead use the same alleged data flow twice—first as interception, then as disclosure.

That cannot satisfy the statute. If Google and Meta received the data in real time, Blue Shield's later use of Google Ads or Meta advertising tools did not disclose contents to a new "other person"; it involved the same entities that supposedly already had the data. If Google or Meta did not receive the data until that later advertising step, the alleged acquisition was not contemporaneous. Plaintiffs cannot have it both ways.

*Peavy* shows the difference. There, the intercepted communications were later shared with different recipients. 221 F.3d at 164, 176. That was a post-interception disclosure. Plaintiffs allege nothing comparable. Their "disclosure" is either the same transmission they call the interception or later use of data within the same Google and Meta advertising systems. Section 2511(1)(c) does not turn that circular theory into a claim.

**f. <u>Plaintiffs Fail to Allege Any Use of "Contents" by Blue Shield.</u>**

The use claim fails for the same reason. Section 2511(1)(d) requires use of communication contents, with knowledge that an unlawful interception produced those contents. The Amended Complaint never pleads the required chain: which contents from which named Plaintiff; obtained



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

through which unlawful interception; disclosed to Blue Shield in what form; and used by Blue Shield in what specific advertising, analytics, or business decision.

Instead, Plaintiffs list tools and outputs—dashboards, reports, event-level data, audience tools, conversion-flow analyses, and advertising interfaces. Amend. Compl. ¶¶ 269, 288. Those allegations do not show that Blue Shield used a named Plaintiff's search terms, form submissions, provider selections, descriptive URLs, claim details, or other alleged contents in any particular campaign or decision. Even accepting Plaintiffs' allegation that such information was unlawfully intercepted, capability and access are not use.

The demographic, plan, and audience allegations only underscore the gap. Amend. Compl. ¶ 57. Plaintiffs do not plausibly allege that Google's or Meta's alleged interception gave Blue Shield that information, rather than Blue Shield's having that information from its existing member relationship or Plaintiffs' direct transmission to Blue Shield. Nor do they allege that any targeted advertisement they received was served by Blue Shield or because Blue Shield used that Plaintiff's intercepted Website contents. Amend. Compl. ¶¶ 125, 212, 226, 241.

The "Find a Doctor" allegations do not close the gap. Plaintiffs identify alleged tracking of searches for conditions, doctors, locations, plan information, and identifiers. Opp. 20–21. But they do not allege that Blue Shield used any named Plaintiff's particular search term, provider selection, or descriptive URL to create an audience, select an ad, target that Plaintiff, or make any other decision. The statute requires use of unlawfully intercepted contents, not access to separately sourced data.

At most, Plaintiffs allege Blue Shield used page-view data, conversion flows, audience membership, and aggregated or event-level analytics. Amend. Compl. ¶¶ 49, 50, 58, 288. Those allegations concern analytics and audience attributes, not the substance, purport, or meaning of any named Plaintiff's communication. *See Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d 852, 871 (N.D. Cal. 2025) ("information that is limited to [] webpage addresses or personally identifying information that identifies a webpage user[] does not constitute 'contents' because neither qualify as the 'substance, purport, or meaning of' a communication"). The rest of Plaintiffs' allegations describe what Blue Shield allegedly could have done with data, not what it plausibly did with any



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

named Plaintiff's contents. Amend. Compl. ¶¶ 143, 170, 176. Because Plaintiffs do not plausibly allege that Blue Shield used contents of communications obtained through an unlawful interception, the Section 2511(1)(d) claim fails.

## III. CONCLUSION

The Amended Complaint was Plaintiffs' chance to cure the defect this Court identified. They did not. Plaintiffs still allege that they communicated with Blue Shield, that Google and Meta allegedly received data through tools on Blue Shield's Website, and that Blue Shield later used analytics and advertising tools. That is not a Wiretap Act claim against Blue Shield. It is the same procurement theory the Court already rejected, now paired with fatally flawed use and disclosure allegations. Because Plaintiffs have again tried and failed to sufficiently plead contents obtained through an unlawful interception and later used or disclosed by Blue Shield, further amendment would be futile. Blue Shield respectfully asks the Court to dismiss the Amended Consolidated Class Action Complaint with prejudice.

Dated: September 4, 2026.

Respectfully submitted,

**BAKER & HOSTETLER LLP**

By: *__/s/ Sean P. Killeen__*
Teresa C. Chow
Sean P. Killeen
Ciara N. Westbrooks

*Attorneys for Defendant*
California Physicians' Service d/b/a
Blue Shield of California